UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE APPLICATION )
OF JASON LEOPOLD TO UNSEAL )
CERTAIN ELECTRONIC SURVEILLANCE ) Misc Action No.  _____
APPLICATIONS AND ORDERS )
  )

## PETITION TO UNSEAL RECORDS

Jason Leopold, by and through undersigned counsel, respectfully petitions the

Court, pursuant to Local Rule of Criminal Procedure 57.6, for an Order unsealing certain

records of this Court and implementing a protocol whereby certain sealing and

nondisclosure orders have a presumptive expiration date.  The records Mr. Leopold seeks

to unseal relate to authorization for the installation and use of electronic surveillance

devices and for access to stored communications.  Specifically, Mr. Leopold seeks to

make public all applications, supporting affidavits, and court orders regarding pen

registers, trap and trace devices, tracking devices, cell site location, stored email,

telephone logs, and customer account records from electronic service providers, except

for those which relate to an ongoing investigation.   The court records relating to these

documents are typically sealed in their entirety including even the docket numbers.


In support of this petition, Mr. Leopold avers as follows:


BRIEF FACTUAL BACKGROUND

1.      Petitioner Jason Leopold spent three-and-half years as lead investigative

reporter of Truthout.org, a nonprofit newsroom, and is now a regular contributor to Al

Jazeera English where he covers Guantanamo, national security, counterterrorism, civil liberties, human rights and open government issues. Additionally, he is the editor-at-large for The Public Record.  His reporting has appeared in The Nation, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times and numerous other domestic and international publications.

2.      The court records sought by Mr. Leopold relate to law enforcement agencies' use of pen registers, trap and trace devices, tracking devices, cell site location, stored email, telephone logs, and customer account records from electronic service providers.  Excluded from this request are wiretap applications and orders.

3.      Pen register and trap and trace devices are powerful tools used by law enforcement agencies to intercept non-content information from electronic communications such as the "to" and "from" lines of emails, the telephone numbers a person dials and those from which calls are received, and the IP address of websites a person visits.

4.      Unlike many other government seizures of private records, orders for pen registers and trap and trace devices do not require law enforcement officials to secure a search warrant.  Applications for pen registers and trap and trace devices are governed by the Pen Register Statute, 18 U.S.C. §§ 3121-27.

5.      Law enforcement agencies may also obtain, without a warrant, the contents of wire or electronic communications that have been in electronic storage for more than 180 days; records or other information pertaining to a subscriber to or customer of an electronic communication service or remote computing service; and the name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity,

including any temporarily assigned network address, and means and source of payment for such service (including any credit card or bank account number) of a subscriber to or customer of such service. Applications for an order requiring disclosure of this information are governed by the Stored Communications Act, 18 USCS §§ 2701-2712.

6. As a result of the lack of a warrant requirement, public oversight is a crucial check on the executive's power to use these surveillance tactics.

7. Americans have strong privacy interests in the information that such surveillance techniques capture, including the persons they call on their telephone and the identities of those they email. With such private information at stake, Americans also have a clear interest in knowing the circumstances under which the government is compiling lists of such information. Such government lists reveal a great deal about individuals, including their political associations, their religious beliefs, the identities of their close friends, and what topics interest them during sessions of private research and reading.

8. The precise number of pen register applications and orders is not known to Petitioner. However, information from the Department of Justice reveals that in this Court for calendar year 2010, the Bureau of Alcohol, Tobacco, and Firearm obtained 1 order for a pen register, and subsequently 1 extension of the order; the Drug Enforcement Agency obtained 34 orders for telephone pen registers and 1order for an email pen register; the United States Marshals Service obtained approximately 52 orders for pen registers; and the Federal Bureau of Investigation obtain approximately 167 orders for telephone pen registers, and subsequently extensions of 2 of the orders.

9. The precise number of trap and trace device applications and orders is not known to Petitioner. However, information from the Department of Justice suggests that

almost all pen register applications and orders also contain requests or authorizations to install and use trap and trace devices.

10.     The precise number of applications and orders under the Stored Communications Act is not known to Petitioners.  However, on information and belief, it is the government's practice in some judicial districts to combine pen/trap applications with requests for customer information under the Stored Communications Act.

## RELIEF REQUESTED

11.     By this petition, Mr. Leopold seeks to make public applications to and orders of this Court regarding pen registers, trap and trace devices, tracking devices, cell site location, stored email, telephone logs, and customer account records from electronic service providers.  This petition does not seek applications and orders relating to wiretaps and does not seek applications and orders relating to ongoing law enforcement investigations.

12.     Upon information and belief, each application for a pen register and/or trap and trace device and/or disclosure under the Stored Communications Act was assigned a unique docket number on the miscellaneous docket, but no listing of these docket numbers is publicly available on the Court's website or otherwise.  Mr. Leopold therefore requests that the United States Attorney be directed to provide a list of the specific docket numbers associated with the applications and orders which are the subject of this petition to unseal.

13.     As set forth more fully in the accompanying memorandum, the public has a qualified right of public access and a First Amendment right to these court records, and no proper basis exists for continuing to keep the material under seal.

14.     The public has a legitimate interest in knowing the bases upon which the orders were sought.  The Court should unseal the requested material to allow public access.

15.     Additionally, the Court should change its procedures to provide for a presumptive expiration date of 180 days on all sealing and nondisclosure orders.  The Court should permit an extension of an additional 180 days if the government certifies that the investigation is still active or shows the existence of exceptional circumstances, e.g., danger to the life or physical safety of an individual.  For purposes of certification, a currently inactive or dormant investigation should not qualify for extension based on the mere possibility of reactivation at a later date.  Additional extensions should require a correspondingly greater specificity in the certification for each such extension.  The government should be given 30 days advance notice before the gag orders are lifted and unsealed.


WHEREFORE, for the reasons stated herein and in the accompanying declarations and memorandum of points and authorities in support hereof, Mr. Leopold respectfully requests that the Court enter an order unsealing the requested material and setting presumptive expiration dates on future sealing and nondisclosure orders.

Respectfully Submitted,

_____

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

Dated: July 15, 2013                              *Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of July, 2013, I have served a copy of the foregoing **PETITION TO UNSEAL RECORDS** as well as the Memorandum of Points and Authorities and Proposed Order by Certified Mail on:

United States Attorney's Office
555 4th St., NW
Washington, DC 20530

_____
Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Petitioner*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE APPLICATION )
OF JASON LEOPOLD TO UNSEAL )
CERTAIN ELECTRONIC SURVEILLANCE ) Misc Action No. _____
APPLICATIONS AND ORDERS )
                                          )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO UNSEAL RECORDS

Through this application, Petitioner Jason Leopold seeks to unseal court records concerning authorizations to install and use pen registers and trap and trace devices and authorizations to obtain stored communications. Specifically, Mr. Leopold seeks to make public all applications, supporting affidavits, and court orders regarding pen registers, trap and trace devices, tracking devices, cell site location, stored email, telephone logs, and customer account records from electronic service providers, except for those which relate to an ongoing investigation. Mr. Leopold further requests that the Court implement a protocol whereby certain sealing and nondisclosure orders have a presumptive expiration date

### Background

*Pen Register / Trap and Trace Devices*

A pen register is a device which records numbers called from a particular phone line and is similar to a trap and trace device, which records incoming numbers.[1] The

---

[1] More precisely, a "pen register" is a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a

terms, often used together, also cover the recording of Internet routing information and

addresses are often used together. *See* USA PATRIOT Act of 2001, 107 P.L. 56, §

216(c)(2) and (3).

Because the installation and use of a pen register does not constitute a search

under the Fourth Amendment, the government need not obtain a warrant. *Smith v.*

*Maryland*, 442 U.S. 735, 744 (1979).  Congress responded by enacting the Pen Register

and Trap and Trace Statute, 18 USC §§ 3121-3127 (hereinafter "Pen Register Statute") as

part of the Electronic Communications Privacy Act of 1986.

The Pen Register Statute requires law enforcement to obtain a court order prior to

using a pen register and/or trap and trace device.  To obtain an order, an attorney for the

Government or a state law enforcement officer or investigator makes an application in

writing under oath or equivalent affirmation, to a court of competent jurisdiction.  18

USC § 3122(a).  The application must identify the applicant and the law enforcement

agency conducting the investigation, and certify that the information likely to be obtained

is relevant to an ongoing criminal investigation being conducted by that agency.  18 USC

§ 3122(b).  Upon submission of the application with proper certification, "the court shall

enter an ex parte order authorizing the installation and use of a pen register or trap and

trace device[.]"  18 USC § 3123(a).  The court's order may only initially authorize the

---

wire or electronic communication service for billing, or recording as an incident to
billing, for communications services provided by such provider or any device or process
used by a provider or customer of a wire communication service for cost accounting or
other like purposes in the ordinary course of its business." 18 USC § 3127(3).

A "trap and trace device" is "a device or process which captures the incoming electronic
or other impulses which identify the originating number or other dialing, routing,
addressing, and signaling information reasonably likely to identify the source of a wire or
electronic communication, provided, however, that such information shall not include the
contents of any communication."  18 USC § 3127(4).

use of a pen register and trap and trace device for up to 60 days, but additional extensions of 60 days may be granted upon application.  18 USCS § 3123(c).

Significantly for present purposes, the Pen Register Statute contains a nondisclosure provision requiring that the "order be sealed until otherwise ordered by the court."  18 USCS § 3123(d)(1).  Further, the Internet service company or telephone carrier may not "disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court."  18 USCS § 3123(d)(2).  A typical order from this Court granting an application under the Pen Register Statute concludes with, "this Order and Application shall be sealed until otherwise ordered by the Court and that the Service Provider, its agents, employees, and affiliates, shall not disclose the existence of the pen register and trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the Court."  *See e.g., In the Matter of the Application of the United States of America for an Order Authorizing Pen Register and Trap and Trace on Cellular Telephone Number 571-991-0811*, Misc. No. 1:11-mc-31 (DAR) (D.D.C. Jan. 25, 2011).

*Stored Communications and Transactional Records*

Congress enacted the Stored Communications Act, 18 USC §§ 2701, *et seq.* (hereinafter "Stored Communications Act") as Title II of the Electronic Communications Privacy Act of 1986.  The Stored Communications Act permits the government, without a warrant, to require disclosure by a service provider "of the contents of a wire or electronic communication that has been in electronic storage in an electronic

communications system for more than one hundred and eighty days[.]" 18 U.S.C. §

2703(a).  To obtain a court order requiring disclosure, the government must offer

"specific and articulable facts showing that there are reasonable grounds to believe that

the contents of a wire or electronic communication, or the records or other information

sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. §

2703(d).  The court issuing a § 2703(d) order may quash or modify the order on motion

made by a service provider "if the information or records requested are unusually

voluminous in nature or compliance with such order otherwise would cause an undue

burden on such provider." *Id.*

Unlike the Pen Register Statute, the Stored Communications Act does not contain

any provisions for sealing of orders granting access to records.  Under 18 U.S.C. §

2705(b), the government may request an order for "preclusion of notice," but such an

order may only be entered in limited circumstances where notification of the existence of

an order "will result in— (1) endangering the life or physical safety of an individual; (2)

flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of

potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly

delaying a trial."  The duration of any order precluding notice pursuant to 18 U.S.C. §

2705(b) is "for such period as the court deems appropriate"


**Argument**

I.      Standard of adjudication

a.      First Amendment right of access

"The first amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." *Washington Post v. Robinson*, 935 F.2d 282, 287, 290 U.S. App. D.C. 116 (D.C. Cir. 1991).  Whether the First Amendment guarantees attach to a particular proceeding or document depends on "considerations of experience and logic." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986)("*Press-Enterprise II*").  In applying this test, a court must ask (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8.

If this Court determines that a First Amendment right of access attached, there is a presumption of openness which can only be overcome by a compelling reason for denying access, which exists only where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)("*Press-Enterprise I*").

b.  Common law right of access

There is a well-established common law right of public access to inspect court records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("the courts of this country recognize a general right to inspect and copy . . .judicial records and documents"); *In re Application of National Broadcasting Co.*, 653 F.2d 609, 612, 209 U.S. App. D.C. 354 (D.C. Cir. 1981) (observing that the "existence of the common law right to inspect and copy judicial records is indisputable").  Because of the "different and

heightened protections of access that the first amendment provides over common law rights," however, the Court need only address the common law right of access if it determines that the First Amendment does not apply to the document at issue here. *Washington Post*, 935 F.2d at 288 n.7. Whether a document is subject to the common law right of access depends on "the role it plays in the adjudicatory process." *United States v. El-Sayegh*, 131 F.3d 158, 163, 327 U.S. App. D.C. 308 (D.C. Cir. 1997).

Access to judicial records under the common law is determined by evaluating the factors set forth in *United States v. Hubbard*, 650 F.2d 293, 208 U.S. App. D.C. 399 (D.C. Cir. 1980): "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents at issue; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409, 321 U.S. App. D.C. 243 (D.C. Cir. 1996) (*citing Hubbard*, 650 F.2d at 317-22).

c. <u>Nondisclosure</u>

A nondisclosure order is essentially a gag order that must be evaluated as content-based prior restraints, subject to the most exacting scrutiny. *In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 881-82 (S.D. Tex. 2008).

II. <u>Right of access to court-issued orders</u>

a. <u>Whether the documents are "judicial records"</u>

Because orders issued by the court are plainly "judicial records," *United States v. Appelbaum*, 707 F.3d 283, 290 (4th Cir. 2013)("it is commonsensical that judicially authored or created documents are judicial records"), the Court may proceed to consider the merits of Mr. Leopold's request for access to the electronic surveillance orders.

b. <u>First Amendment right of access</u>

Under the "experience" prong of the *Press-Enterprise II* "experience and logic" test, the First Amendment right of access attaches to court-issued electronic surveillance orders. Electronic surveillance orders are most analogous to an executed search warrant. *See In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876, 892 (S.D. Tex. 2008)("the most analogous cases [to electronic surveillance orders] are those dealing with sealed search warrants" *Cf. Appelbaum*, 707 F.3d at 286, 291 n.9 (at the "at the pre-grand jury phase of an ongoing criminal investigation," orders issued under 18 U.S.C. § 2703(d) are "most analogous to sealed or unexecuted search warrants").

Historically, executed search warrants have been available for public inspection. *In re Search Warrant for Secretarial Area Outside the Office of Thomas Gunn*, 855 F.2d 569, 573 (8th Cir.1988) (holding that the right to inspect search warrant materials arises under both common law and the First Amendment). Decisions which have found a right of access under the common law also lend support to the existence of a right of access under the First Amendment . *In re New York Times Co.*, 585 F. Supp. 2d 83, 89 (D.D.C. 2008)("The fact that there is a common law tradition of right of access is an appropriate consideration to take into account when examining the scope of the First Amendment";

*In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2nd Cir. 1990); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989).

This Court recently went so far as to order that a new category be added to its website where "all search warrants . . . will be publicly available after execution, unless a separate sealing order is entered to redact all or portions (sic) when the government makes the showing required by *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) and *Washington Post v. Robinson*, 935 F.2d 282, 290 U.S. App. D.C. 116 (D.C. Cir. 1991)." *In re Application for Search Warrant for Email Account*, Mag. No. 10-291-M-01, 2013 U.S. Dist. LEXIS 73350 (D.D.C. May 23, 2013)(order by Chief Judge). This decision is in accord with other case law finding a historical right of access to executed search warrants under the First Amendment and the common law.

Turning to the "logic" prong of the First Amendment test, the D.C. Circuit has recognized the importance of public oversight of the executive branch through examination of electronic surveillance orders obtained without a warrant or judicial determination of probable cause. For example, in *ACLU v. United States DOJ*, 655 F.3d 1, 3 & n.2, 398 U.S. App. D.C. 1, 3 (D.C. Cir. 2011), a FOIA case, the plaintiff sought information relating to the federal government's use of warrantless cell phone tracking through § 2703(d) orders. The D.C. Circuit found "a significant public interest in disclosure" of the requested information where "[t]he use of and justification for warrantless cell phone tracking is a topic of considerable public interest: it has received widespread media attention and has been a focus of inquiry in several congressional hearings considering, among other things, whether the Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848 (1986), should be revised either

to limit or to facilitate the practice." *Id.* at 13. Further, "[t]he disclosure sought by the plaintiffs would inform this ongoing public policy discussion by shedding light on the scope and effectiveness of cell phone tracking as a law enforcement tool. . . . Disclosure would also provide information regarding how often prosecutions against people who have been tracked are successful, thus shedding some light on the efficacy of the technique and whether pursuing it is worthwhile in light of the privacy implications. Information from suppression hearings in these cases could provide further insight regarding the efficacy of the technique by revealing whether courts suppress its fruits, and would disclose the standard or standards the government uses to justify warrantless tracking. Information from suppression hearings would also provide facts regarding the duration of tracking and the quality of tracking data, facts that would inform the public discussion concerning the intrusiveness of this investigative tool." *Id.* at 13-14.

This Court has entered the controversy over warrantless cell phone tracking in response to a request by the government under a combined Stored Communications Act / Pen Register request for cell site information.  In *In re Order Authorizing the Release of Prospective Cell Site Information*, 407 F. Supp. 2d 134, 134 (D.D.C. 2006), the government sought an order requiring disclosure of "the location of cell site/sector (physical address) at call origination (for outbound calling), call termination (for incoming calls) and, if reasonably available, during the progress of a call, on a real time basis."  Magistrate Judge Facciola denied the request in a published opinion, but it appears to be rare, at least in this jurisdiction, for a decision *granting* the government's request to be made public.  Thus, the public is without crucial information from which to evaluate the far more significant issue of the manner and frequency during which

individuals' privacy interests *are* being invaded.  Accordingly, the "logic" test is met here and the First Amendment right of access attaches to the electronic surveillance orders.

Given that this petition seeks only access to orders for which the underlying investigation is no longer active, the government cannot contend that it has any further need for secrecy.  Accordingly, the government will not be able to overcome the presumption of openness under the First Amendment.


c.   Common law right of access

The excellent opinion of Magistrate Judge Smith of the United States District Court for the Southern District of Texas in *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876 (S.D. Tex. 2008) concluded, "sealing . . . of electronic surveillance orders must be neither permanent nor, what amounts to the same thing, indefinite."  It is not necessary to repeat here all of the points made by Magistrate Judge Smith, but it should be sufficient to point out that nothing in *Hubbard*, 650 F.2d 293, would require a different result.


III.   Right of access to judicial records other than court-issued orders


a.   Whether the documents are judicial records

Whether a document is a judicial record depends on "the role it plays in the adjudicatory process."  *United States v. El-Sayegh*, 131 F.3d 158, 163, 327 U.S. App. D.C. 308 (D.C. Cir. 1997).  Here, the application, affidavits in support of, and other material submitted with, a request for a court order, are clearly judicial records.  They are

intended to be relied upon by the court in issuing its order.  *See Berliner Corcoran &*

*Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009) (denying motion to seal

when "[t]he parties filed exhibits under seal for the purpose of proving their cases to the

Court at the summary judgment stage. As such, the parties explicitly intended the Court

to rely on these materials in adjudicating their dispute"); *Zapp v. Zhenli Ye Gon*, 746 F.

Supp. 2d 145, 151 (D.D.C. 2010) ("Finally, by filing his Amended Motion for Summary

Judgment and its exhibits, Zapp indicated that he intended for the Court to rely on these

filings in adjudicating his dispute with Ye Gon.  The Court finds that this purpose weighs

in favor of the continued disclosure of these filings.")

Citing the D.C. Circuit's opinion in *El*-Sayegh, the Fourth Circuit directly

addressed the question of whether electronic surveillance applications are judicial

records.  *Appelbaum*, 707 F.3d at 291.  The court concluded, "§ 2703(d) motions are

'judicial records' because they were filed with the objective of obtaining judicial action

or relief pertaining to § 2703(d) orders."  *Id.*  This Court should reach the same

conclusion.


b.  Access under the First Amendment

An electronic surveillance application is most analogous to an affidavit or other

material submitted in support of a search warrant.  Courts to have considered the question

have found the First Amendment presumption of access applies to such material.  *In re*

*Search Warrant for Secretarial Area Outside the Office of Thomas Gunn*, 855 F.2d at 573

(holding that the right to inspect affidavit and other material supporting a search warrant

arises under the First Amendment).

Given that this petition seeks only access to orders for which the underlying investigation is no longer active, the government cannot contend that it has any further need for secrecy. Accordingly, the government will not be able to overcome the presumption of openness under the First Amendment.

    c.   <u>Access under the common law</u>

In *In re Search Warrants Issued*, Misc. No. 87-186 (JHG), 1990 U.S. Dist. LEXIS 9329 at *10 (D.D.C. July 26, 1990), this Court ordered the partial unsealing of search warrant affidavits where the warrants had already been executed, the first trial which resulted from the investigation had been concluded, and the government conceded that its need for secrecy was over. This decision is in accord with other courts which have found a similar right of access under the common law. *In re Search Warrant for Secretarial Area Outside the Office of Thomas Gunn*, 855 F.2d at 573 (holding that the right to inspect affidavit and other material supporting a search warrant arises under the common law).

    IV.    <u>Request to change protocol for nondisclosure orders and sealing</u>

    a.   <u>Standing to challenge nondisclosure orders</u>

Assuming the existence of a willing speaker, the public has a right to receive information under the First Amendment. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 756 (1976) ("Freedom of speech presupposes a willing speaker. But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both.") For Mr. Leopold, as a member of the media, his ability to receive information is a precondition to the exercise of his own right

to freedom of speech and the press.  *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982)("the right

to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own

rights of speech, press, and political freedom")(emphasis in original).  Thus, Mr. Leopold has

standing to challenge a non-disclosure order directed at another party.  *See Public Citizen v.*

*Liggett Group, Inc.*, 858 F.2d 775, 787 & n.12 (1st Cir. 1988)(finding standing for third-party

to challenge protective order which prohibited dissemination of pre-trial discovery material).

Even if Mr. Leopold did not have standing to challenge the non-disclosure orders, however,

the Court could act *sua sponte* to change its protocol for handling nondisclosure orders.  *See*

*e.g., In re Sealing & Non-Disclosure*, 562 F. Supp. 2d 876 (despite absence of challenge to

prior policies, judge changed his policies with respect to duration of non-disclosure orders).


   b.   <u>Indefinite duration of sealing and non-disclosure orders</u>

   Until a few years ago, there was no published opinion addressing whether sealing

and nondisclosure of electronic surveillance orders could be maintained for an indefinite

period beyond the termination of the underlying criminal investigation.  On May 30,

2008, however, Magistrate Judge Smith of the United States District Court for the

Southern District of Texas issued a lengthy and well-reasoned opinion which concluded,

"sealing and non-disclosure of electronic surveillance orders must be neither permanent

nor, what amounts to the same thing, indefinite."  *In re Sealing & Non-Disclosure of*

*Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 895 (S.D. Tex. 2008).  For substantially

the same reasons as set forth in Judge Smith's opinion, Mr. Leopold requests that this

Court change its protocol to create a presumptive expiration date on sealing and

nondisclosure orders.  Mr. Leopold's ability to receive, and thus report, on electronic

surveillance orders is severely limited by the indefinite nondisclosure orders which limits service providers' ability to speak with him.

## Conclusion

For the foregoing reasons, Mr. Leopold requests an Order unsealing electronic surveillance orders and applications, and implementing a protocol whereby certain sealing and nondisclosure orders have a presumptive expiration date.

_____
Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Petitioner*