UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF<br>JASON LEOPOLD TO UNSEAL<br>CERTAIN ELECTRONIC<br>SURVEILLANCE APPLICATIONS<br>AND ORDERS | Misc. Action No. 13-mc-00712 (BAH) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE MOTION TO INTERVENE AND PETITION TO UNSEAL
<u>OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS</u>

Katie Townsend
D.C. Bar No. 1026115
Bruce D. Brown
D.C. Bar No. 457317
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
bbrown@rcfp.org
ktownsend@rcfp.org

*Counsel for the Reporters Committee for
Freedom of the Press*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ i
INTRODUCTION .............................................................................................................................. 1
PROCEDURAL BACKGROUND ..................................................................................................... 2
STATUTORY BACKGROUND ........................................................................................................ 3
ARGUMENT ..................................................................................................................................... 6

    I.    THE PRESS AND THE PUBLIC HAVE A POWERFUL INTEREST IN ACCESS TO COURT RECORDS CONCERNING JUDICIAL AUTHORIZATION FOR THE USE OF ELECTRONIC SURVEILLANCE TOOLS. ... 6

    II.   THE COURT SHOULD GRANT THE REPORTERS COMMITTEE'S MOTION TO INTERVENE. ......... 8

    III.  THE PRESS AND THE PUBLIC HAVE BOTH A CONSTITUTIONAL AND COMMON LAW RIGHT TO ACCESS COURT DOCUMENTS, INCLUDING COURT DOCKETS, CONCERNING COURT ORDERS AUTHORIZING THE USE OF ELECTRONIC SURVEILLANCE TOOLS. .................................................. 10

        A.   *Applications, Orders, and Related Materials for the Use of Electronic Surveillance Tools.* ....................................................................................................................... 11

        B.   *Dockets and Docket Entries.* ...................................................................................... 13

CONCLUSION ................................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1 (D.D.C. 2010) .............................. 9

*CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823 (9th Cir. 1985) ........... 15

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ........................................................................ 14

*EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042 (D.C. Cir. 1998) ................................... 7, 8, 9

*F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) ............................................... 7

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ........................................... 13, 15

*In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*,
    585 F. Supp. 2d 83 (D.D.C. 2008) ................................................................ 6, 11, 12, 13

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) ................................................................. 14

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*,
    562 F. Supp. 2d 876 (S.D. Tex. 2008) ........................................................................... 5

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
    855 F.2d 569 (8th Cir. 1988) ....................................................................................... 12

*In re Special Proceedings*, 842 F. Supp. 2d 232 (D.D.C. 2012) ................................................... 10

*In re State-Record Co., Inc.*, 917 F.2d 124 (4th Cir. 1990) .......................................................... 15

*In re Wash. Post Co.*, 807 F.2d 383 (4th Cir. 1986) ..................................................................... 14

*Nixon v. Warner Commc'ns, Inc.* 435 U.S. 589 (1977) ................................................................ 11

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984) ....................................................... 6, 10

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ...................................................... 6

*Smith v. United States Dist. Court for S. Dist.*, 956 F.2d 647 (7th Cir. 1992) ............................... 7

*Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477 (6th Cir. 2012) ....... 14

*United States v. AT&T*, 642 F.2d 1285 (D.C. Cir. 1980) ............................................................... 9

*United States v. Criden*, 675 F.2d 550 (3d Cir. 1982) ................................................................. 14

*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) ............................................................. 11

*United States v. Jones*, 132 S.Ct. 945 (2012) .................................................................................... 7

*United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005) ................................................ 14

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) ................................................................ 14

*Wash. Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ........................................................... 6, 10

**STATUTES**

18 U.S.C. § 2703 ...................................................................................................................*passim*

18 U.S.C. § 2705 .................................................................................................................................5

18 U.S.C. § 3123 ........................................................................................................................ 4, 13

18 U.S.C. § 3127 ................................................................................................................................3

18 U.S.C. §§ 2701–2712 ................................................................................................................ 1, 4

18 U.S.C. §§ 3121–3127 ........................................................................................................ 1, 3, 11

**RULES**

Fed. R. Civ. P. 24 ........................................................................................................................ 7, 8

Fed. R. Crim. P. 41 .................................................................................................................... 4, 13

**INTRODUCTION**

The Reporters Committee for Freedom of the Press seeks to intervene in the above-captioned matter to assert the broader interests of the press and the public in obtaining access to court records, including dockets and docket entries, relating to court orders authorizing the use of certain law enforcement tools and to request additional and/or other appropriate relief.

Journalist Jason Leopold ("Leopold") initiated this action for the purpose of unsealing certain court records—namely, applications and orders relating to non-active law enforcement investigations concerning the use of certain electronic surveillance tools, including pen register and trap and trace devices ("PR/TT devices"), *see* 18 U.S.C. §§ 3121–3127, and orders governed by the Stored Communications Act, 18 U.S.C. §§ 2701–2712 (the "SCA"), that compel electronic communication service or remote computing service providers to disclose subscriber records. Such court records are routinely maintained under seal and are generally not reflected on publicly available dockets. *See* Application of the Reporters Committee for Freedom of the Press to Unseal and for Other Appropriate Relief (the "Reporters Committee Petition" or "Reporters Committee Pet.") ¶¶ 10, 17. As a result, the public has little to no information about the circumstances in which—or even how frequently—the executive branch seeks to use such electronic surveillance tools, or the role played by federal courts in authorizing their use. The endemic secrecy surrounding judicial authorization for the use of electronic surveillance tools violates the public's constitutional and common law rights of access to court records and obstructs the public's ability to observe the conduct of its courts and the executive branch.

As set forth below, the public has a qualified right under both the First Amendment and common law to access court records, including court dockets and docket entries, relating to court orders authorizing the use of electronic surveillance tools. In addition to the public's long-

recognized interest in access to court records as a means of monitoring the operations of the federal courts, there is a particularly strong public interest in access to the type of court records at issue here. The executive branch's use of law enforcement tools to obtain electronic communications and electronic communications records, including those of journalists, implicates First Amendment rights and is a matter of substantial public concern. Where the government seeks a warrant allowing it to obtain such information, and especially where—as in the case of court orders issued under 18 U.S.C. § 2703(d) of the SCA and orders authorizing the use of PR/TT devices—no warrant is statutorily required for the executive branch to obtain such information, judicial oversight and, in turn, public oversight of the judicial process, is necessary to protect against government overreach.

For the reasons set forth herein, the Reporters Committee respectfully moves to intervene in the above-captioned case to assert the broader interests of the press and the public in access to court records concerning judicial authorization for the use of electronic surveillance tools by the executive branch in non-active investigations and to seek additional and/or other relief not requested by Leopold, including the unsealing of court dockets and docket entries.

**PROCEDURAL BACKGROUND**

On July 16, 2013, Leopold initiated this miscellaneous action with the filing of a Petition to Unseal Records (the "Leopold Petition" or "Leopold Pet."), ECF No. 1. The Leopold Petition seeks to unseal "all applications, supporting affidavits, and court orders regarding pen registers, trap and trace devices, tracking devices, cell site location, stored email, telephone logs, and customer account records from electronic service providers, except for those which relate to an ongoing investigation." Leopold Pet. 1. It also seeks certain prospective relief. In particular, it asks that the Court "change its procedures to provide for a presumptive expiration date of 180 days on all sealing and nondisclosure orders." *Id.* at 5.

The United States of America (the "Government") filed its response to the Leopold Petition on December 20, 2013. United States' Response to Application to Unseal Records, ECF No. 10 ("Resp."). While not "disagree[ing] with [Leopold's] basic premise that applications and orders relating to electronic surveillance methods need not necessarily be permanently sealed," the Government took issue with the "relief [Leopold] seeks," arguing that Leopold has proposed a "one-size-fits-all solution" that is "overbroad." *Id.* at 2. Shortly thereafter, on December 23, 2013, Leopold filed a motion seeking the appointment of a special master. Motion to Appoint Special Master, ECF No. 11. That motion was never acted upon by the Court, and there were no further proceedings in this case until March 25, 2016, when it was reassigned to the Honorable Chief Judge Beryl A. Howell. A status conference was held before the Court on June 24, 2016. A second status conference is set for September 16, 2016.

## STATUTORY BACKGROUND

*The Pen Register Act*

PR/TT devices are law enforcement surveillance tools the use of which is governed by 18 U.S.C. §§ 3121–3127 (the "Pen Register Act" or "PRA"). Pen registers record telephone numbers, e-mail addresses, and other dialing, routing, addressing, or signaling information that is *transmitted* by instruments or facilities—such as telephones or computers—that carry wire or electronic communications. *See* Reporters Comm. Pet. ¶ 6. Trap and trace devices, on the other hand, record similar information that is *received* by such instruments or facilities. *Id*. The information recorded by PR/TT devices is commonly referred to as metadata and does not include the contents of communications. *See* 18 U.S.C. § 3127. Orders authorizing the installation and use of PR/TT devices may be obtained *ex parte* by the Government on a certification that "the information likely to be obtained by such installation and use is relevant to

3

an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1). Judicial authorization for the use of PR/TT devices is time-limited by statute. 18 U.S.C. § 3123(c).

As set forth in the Reporters Committee's Petition, a court order authorizing or approving the installation and use of a pen register or trap and trace device must direct that the "order be sealed until otherwise ordered by the court." 18 U.S.C. § 3123(d). The PRA also contains a gag provision requiring that any such order direct

> the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

*Id*.

<u>The Stored Communications Act</u>

The SCA, codified at 18 U.S.C. §§ 2701, *et seq.*, governs voluntary and compelled disclosure of stored wire and electronic communications and transactional records held by third-party electronic communication service or remote computing service providers. 18 U.S.C. § 2703 of the SCA provides government entities with mechanisms to compel such third-party providers to disclose the contents of communications, as well as records and other information pertaining to subscribers.

The mechanisms available to the government under 18 U.S.C. § 2703, and the legal standards that must be satisfied, vary based upon the type of communication or communications record the governments seeks. Those mechanisms include warrants, *see* 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1)(A), and orders under 18 U.S.C. § 2703(d) ("Section 2703(d) orders"), which may be issued on a showing lower than that required for a warrant under Federal Rule of Criminal Procedure 41. *See* 18 U.S.C. § 2703(d) (a court order for disclosure may be issued "if

4

the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation"). Prosecutors frequently combine applications for Section 2703(d) orders with applications for orders authorizing PR/TT devices.  *See In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 880 n.7 (S.D. Tex. 2008).

Nothing in the SCA mandates sealing of applications or orders issued under its provisions for any period of time.  The SCA does limit the circumstances under which the government is required to give notice to the subscriber or customer whose communications records are being sought.  *See, e.g.*, 18 U.S.C. § 2703(c)(3) ("A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer.").  And the SCA contains a provision allowing a government entity acting under 18 U.S.C. § 2703(b)—which requires "prior notice from the governmental entity to the subscriber or customer" if the governmental entity obtains a Section 2703(d) order compelling disclosure of the contents of communications—to seek an order authorizing it to delay notification.  18 U.S.C. § 2705.  When a governmental entity "is not required to notify the subscriber or customer" under 18 U.S.C. § 2703(b)(1), or to the extent it may delay notice under 18 U.S.C. § 2705(a), it may also apply for a gag order prohibiting the third-party service provider to whom the warrant or order is directed from disclosing its existence to any person "for such period as the court deems appropriate[.]"  18 U.S.C. § 2705(b).

## ARGUMENT

**I.      The press and the public have a powerful interest in access to court records concerning judicial authorization for the use of electronic surveillance tools.**

For centuries, openness has been considered "an indispensable attribute" of our judicial system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980). "[O]penness of judicial processes and documents 'gives assurance that established procedures are being followed and that deviations will become known' and corrected." *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*")). And, "[i]n addition to ensuring actual fairness, the openness of judicial proceedings helps ensure the appearance of fairness." *Id.*  As the Supreme Court has explained, while "[p]eople in an open society do not demand infallibility from their institutions," it "is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572.

The news media has long played a critical role in facilitating public monitoring of the judicial system.

> A responsible press has always been regarded the handmaiden of effective judicial administration, especially in the criminal field. . . .  The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).  Thus, while "media representatives enjoy the same right of access as the public," they "function[] as surrogates for the public" by, for example, attending proceedings, reviewing court documents, and reporting on judicial matters to the public at large.  *Richmond Newspapers*, 448 U.S. at 573.

6

For these reasons, it is well-settled that the public and the press have a right of access to court documents, generally, that arises from the public's interest in observing the consideration and disposition of matters by federal courts. *See Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) ("*Robinson*") (explaining that the First Amendment right of access "serves an important function of monitoring prosecutorial or judicial misconduct"). And the public's fight of access is especially strong in matters—like those at issue here—that concern actions taken by the executive branch. As the U.S. Court of Appeals for the Seventh Circuit has explained, "'in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.'" *Smith v. United States Dist. Court for S. Dist.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

The public and the press have a uniquely powerful interest in access to the court records at issue in this case. Electronic communications and communications records can reveal intimate details about an individual's life and implicate the exercise of First Amendment rights. The knowledge that the government may acquire such information through the use of electronic surveillance tools, coupled with a lack of knowledge as to how frequently and under what circumstances such tools are authorized to be used, chills the exercise of those rights. *See United States v. Jones*, 132 S.Ct. 945, 956 (2012) (Sotomayor, J., concurring) ("Awareness that the Government may be watching chills associational and expressive freedoms.")[1]

---

[1] Journalists, in particular, are keenly aware of the effects of government collection of electronic communications and electronic communications records on the exercise of core First Amendment rights. Electronic communications play a necessary role in newsgathering, a constitutionally protected activity, and journalists' communications records can reveal, among other things, the frequency, time, and duration of their communications with sources and those sources' identities. Concern about government collection of such information chills reporter-source communications.

7

**II.     The Court should grant the Reporters Committee's motion to intervene.**

Intervention under Rule 24 of the Federal Rules of Civil Procedure is the appropriate avenue for advancing third-party claims of access to court records.  *See EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998).  Rule 24 outlines two different avenues by which a court can allow an outsider to intervene in a case—intervention of right and permissive intervention.  Fed. R. Civ. P. 24(a)–(b).  The D.C. Circuit has taken a "flexible approach" to permissive intervention and, in light of the "longstanding tradition of public access to court records[,]" has construed Rule 24(b) "as an avenue for third parties to have their day in court to contest the scope or need for confidentiality."  *EEOC*, 146 F.3d at 1046 (citations and quotation marks omitted).  Accordingly, the Reporters Committee seeks permission to intervene under Rule 24(b).

Generally speaking, to be permitted to litigate a claim on the merits under Rule 24(b), "the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."  *Id*.  However, where a party seeks to intervene for the purpose of obtaining access to sealed documents, courts eschew the first requirement that the putative intervenor show an independent basis for jurisdiction.  *Id*. at 1047 ("An independent jurisdictional basis is simply unnecessary when the movant seeks to intervene only for the limited purpose of obtaining access to documents covered by seal or by a protective order . . . .").  Thus, because the Reporters Committee's Petition asks this Court only "to exercise a power that it already has"—namely, the power to unseal its own records—the Reporters Committee is not required to demonstrate an independent ground for subject matter jurisdiction to permissively intervene.  *Id*.

As to the second requirement, the Reporters Committee's motion to intervene is timely. In determining the timeliness of an intervention motion, the Court must consider "'all the circumstances,'" including the "'time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already in [the] case.'" *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 19 (D.D.C. 2010) (alteration in original) (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). As set forth above, while this case was initially filed in July of 2013, it lay dormant until recently. This case was reassigned on March 25, 2016, and a status conference was held by the Court on June 24, 2016. A second status conference in this matter is set for September 16. Because this case is for all practical purposes still in its early stages, the Reporters Committee's intervention would not delay resolution or prejudice any party. Indeed, neither Leopold nor the Government objects to the Reporters Committee's intervention.

Moreover, the purpose for which Reporters Committee seeks intervention—to assert the broader interests of the press and the public in access to the records at issue, as well as to seek additional and/or other relief not requested by Leopold, including the unsealing of court dockets and docket entries—weighs in favor of permitting intervention. As set forth above, the press and the public have a particularly powerful interest in access to the court records at issue, and because this case seeks to resolve legal and practical questions concerning the scope of the public's access to such records, other interested members and representatives of the news media, like the Reporters Committee, should be given an opportunity to be heard. Moreover, particularly in light of the potentially broad impact of any ruling in this case, the Reporters

Committee's anticipates that its participation will aid both the parties and the Court by providing additional legal arguments and perspective on the issues presented.

Finally, the requirement of a common question of law or fact is also satisfied. Courts have "afforded this requirement considerable breadth" when a party seeks to intervene for the purpose of seeking to unseal court records. *EEOC*, 146 F.3d at 1047. The relief sought by the Reporters Committee's Petition overlaps with the relief sought by Leopold, and resolution of the claims presented by both Leopold and the Reporters Committee involve common questions of law and fact. Accordingly, the Reporters Committee's motion to intervene should be granted.

### III. The press and the public have both a constitutional and common law right to access court documents, including court dockets, concerning court orders authorizing the use of electronic surveillance tools.

The First Amendment guarantees the public a qualified right to attend criminal proceedings and examine court documents. *See, e.g., Robinson*, 935 F.2d at 288 (recognizing First Amendment right to plea agreements and related documents). Although the First Amendment right of access "is not absolute, the standard to overcome the presumption of openness is a demanding one." *In re Special Proceedings*, 842 F. Supp. 2d 232, 239 (D.D.C. 2012). Specifically, the presumption of openness may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510; *In re Special Proceedings*, 842 F. Supp. 2d at 239.

In determining whether the First Amendment right of access applies to a particular type of proceeding or document, courts must consider both "whether the place and process have historically been open to the press and general public" as well as "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter.*

*Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"); *see also In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 87 (explaining that "this test applies to both court proceedings and court documents").

In addition to the presumption of openness guaranteed by the First Amendment, the common law also provides a right of access to court documents that play a role in the "adjudicatory process." *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997); *see also Nixon v. Warner Commc'ns, Inc.* 435 U.S. 589, 597–98 (1977). That right of access "is largely controlled by the second of the First Amendment criteria—the utility of access as a means of assuring public monitoring of judicial or prosecutorial misconduct." *El-Sayegh*, 131 F.3d at 161. Under the common law test, the district court has "substantial discretion to make a decision in light of the relevant facts and circumstances of the particular case." *In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 92.[2]

### A. Applications, Orders, and Related Materials for the Use of Electronic Surveillance Tools.

The Reporters Committee seeks an order unsealing all applications and supporting documents, including affidavits, seeking any of the following, as well as any court orders granting or denying any of the following, in connection with any investigation that is no longer active: (i) an authorization for the use of any "pen register and trap and trace device" pursuant to 18 U.S.C. §§ 3121–3127; (ii) a warrant requiring an electronic communication service provider to disclose the contents of a wire or electronic communication under 18 U.S.C. § 2703(a) or (b) of the SCA; (iii) a warrant requiring an electronic communication service or remote computing service provider to disclose a record or other information pertaining to a subscriber, as

---

[2] In conducting this balancing, courts have considered the following factors: "(1) the need for public access to the documents at issue; (2) the public use of the documents; (3) the fact of objection and the identity of those objecting to disclosure; (4) the strength of the generalized property and privacy interests asserted; (5) the possibility of prejudice; and (6) the purposes for which the documents were introduced." *Id.* (citation omitted).

contemplated by 18 U.S.C. § 2703(c)(1)(A) of the SCA; or (iv) a Section 2703(d) order.  The Reporters Committee does not seek access to such records that relate to ongoing investigations.

   As this Court has previously recognized, "both the common law and the First Amendment afford the press and public a qualified right of access to inspect warrant materials following the close of an investigation."  *In re Application of N.Y. Times Co.*, 585 F. Supp. 2d at 87 (granting motion by newspaper for access to "search warrants, warrant applications, supporting affidavits, court orders, and returns for all warrants requested by the government" relating to its investigation of the mailing of anthrax to members of Congress and the media); *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (holding that the public has a qualified First Amendment right to access search warrants that "extends to the documents filed in support of search warrants").

   In addition to noting the "common law tradition of access to warrant materials"—which was "acknowledged by the government" in that case—then-Chief Judge Lamberth's opinion in *In re Application of New York Times Company* highlighted the "significant positive role" that that public access to post-investigation warrant materials plays "in the functioning of the criminal justice system."  585 F. Supp. 2d at 89–90.  As the Court explained, "warrant materials are often used to adjudicate important constitutional rights such as the Fourth Amendment protection against unreasonable searches and seizures" and "[p]ublic access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police."  *Id*. at 90; *see also In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d at 573 (stating that warrant materials are "important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct").

Not only does *In re Application of New York Times Company* apply to the warrant materials that the Reporters Committee seeks to have unsealed here, its reasoning applies fully to analogous applications and orders under Section 2703(d) of the SCA, and applications and orders authorizing the use of PR/TT devices, that relate to investigations that are no longer active. As discussed above, the use of such law enforcement tools by the government can implicate the exercise of constitutional rights. And, indeed, because Section 2703(d) orders and orders authorizing the use of PR/TT devices function like warrants, but may be obtained on a showing *lower* than that required to obtain a warrant under Federal Rule of Criminal Procedure 41, *see* 18 U.S.C. § 2703(d) and 18 U.S.C. § 3123(a)(1), access to such materials arguably plays an even *more* "significant positive role in the functioning of the criminal justice system." *In re Application of N.Y. Times Co.,* 585 F. Supp. 2d at 90. The public's ability to "ensure that judges are not merely serving as a rubber stamps" for their issuance is paramount. *Id*.

### B. Dockets and Docket Entries.

In addition to its request to unseal records relating to applications for court orders for the use of electronic surveillance tools in investigations that are no longer active, the Reporters Committee seeks public access to dockets and docket entries concerning applications and orders for the use of such tools. Notwithstanding the fact that "[e]xperience casts an affirming eye on the openness of docket sheets and their historical counterparts," *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004), dockets in such matters are routinely maintained under seal, in their entirety, in violation of the public's constitutional and common law rights of access to court records. Reporters Committee Pet. ¶¶ 10, 17.

While this Circuit has not expressly addressed the issue, several other Circuits have recognized the public's constitutional right to inspect court dockets. *See Hartford Courant Co.,*

380 F.3d at 96 (holding that docket sheets in civil and criminal proceedings "enjoy a presumption of openness and that the public and the media possess a qualified First Amendment right to inspect them"); *Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding that there is a First Amendment right of access to dockets in civil proceedings); *Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) ("The First Amendment access right extends to court dockets, records, pleadings, and exhibits . . . ."); *see also United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) ("The case dockets maintained by the clerk of the district court are public records."). And the Eleventh Circuit has held that a district court's maintenance of a "dual-docketing system" whereby "closed pretrial bench conferences and the filing of *in camera* pretrial motions" were kept on a separate, non-public docket, which kept them "completely hid[den] from public view," was "an unconstitutional infringement on the public and press's qualified right of access to criminal proceedings." *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993); *see also United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005) (exercising "supervisorial authority to remind the district court" that it cannot employ "secret docketing procedures"). While the Eleventh Circuit in *Valenti* concluded that the bench conferences and *in camera* motions at issue in the case before it had been properly sealed, it nevertheless held that use of a sealed docket to note such matters was unconstitutional, and infringed the right of the public to, among other things, request that they be unsealed. *Valenti*, 987 F.2d at 715; *see also In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) (noting that publicly available dockets make it possible for the public and press to "'intervene and present their objections to the court'" when court records or proceedings are closed (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984)).

The routine sealing of entire dockets in matters in which the executive branch seeks a warrant or order under the SCA or PRA for authorization to use an electronic surveillance tool has the effect of creating a dual-docketing system that precludes the public from knowing, among other things, even the number of applications for such warrants or orders filed by the Government. Such a system infringes the media's and the public's right of access to court records. And, as the Ninth Circuit has observed, a "two-tier system, open and closed" erodes "[c]onfidence in the accuracy of [the court's] records" and "the authority of its rulings and respect due its judgments." *CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823, 826 (9th Cir. 1985). It is difficult to imagine a scenario where merely acknowledging the existence of an application for use of an electronic surveillance tool would so compromise a compelling state interest as to justify secret docketing under either the constitutional or common law tests. *See Hartford Courant*, 380 F.3d at 96 ("'There are probably many motions and responses thereto that contain no information prejudicial to a defendant, and we cannot understand how the docket entry sheet could be prejudicial.'") (quoting *In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990)). And the routine lack of *any* public docket, whatsoever, for such applications and orders prevents the public from understanding, even in broad strokes, how such applications are handled by the courts.

## CONCLUSION

For the foregoing reasons, the Court should grant the Reporters Committee's motion to intervene and grant the relief sought in its Petition.

Dated:  August 17, 2016

        Respectfully submitted,

         *s/ Katie Townsend*
        Katie Townsend
        D.C. Bar No. 1026115
        Bruce D. Brown
        D.C. Bar No. 457317
        THE REPORTERS COMMITTEE FOR
        FREEDOM OF THE PRESS
        1156 15th St. NW, Suite 1250
        Washington, DC 20005
        Phone: 202.795.9300
        Facsimile: 202.795.9310
        ktownsend@rcfp.org
        bbrown@rcfp.org