UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| IN RE:<br>IN THE MATTER OF THE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS,<br>Petitioner,<br>v<br>REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS<br>Intervenor Plaintiff,<br>v<br>UNITED STATES OF AMERICA,<br>Respondent. | Civil Action No. 1:13-MC-712 BAH<br><br>May 4, 2016<br>10:16 a.m.<br>Washington, D.C. |

* * * * * * * * * * * * * * * * * * *

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES:**

**For the Plaintiff:** Jeffrey Louis Light
1712 Eye Street, NW
Suite 915
Washington, DC 20006
(202) 277-6213
Jeffrey@lawofficeofjeffreylight.com

**For the Government:** Leslie Ann Gerardo
United States Attorney's Office
Special Proceedings Division
555 Fourth Street, N.W.
Washington, DC 20530
(202) 252-7578
Email: Leslie.Gerardo@usdoj.gov

**Court Reporter:** Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter
U.S. Courthouse, Room 6720
Washington, D.C. 20001
(202) 354-3242
esaintloth@gmail.com

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

P R O C E E D I N G S

THE CLERK: The Court calls the parties in the matter of miscellaneous case 13-712, Jason Leopold versus United States of America.

Counsel, please come forward and identify yourselves for the record.

MR. LIGHT: Good morning, Your Honor.

Jeffrey Light on behalf of petitioner Jason Leopold.

THE COURT: Good morning, Mr. Light. Nice to see you again.

MS. GERARDO: Good morning, Your Honor.

Leslie Ann Gerardo on behalf of the United States.

THE COURT: Good morning to you as well.

All right. So we're here on a little bit of an unusual case. I wanted to have the status conference because I know the case has been pending for some time. And I really wanted to hear from the parties whether -- number one, to get a status update to help you all talk about things. I know the papers that I have read -- that were filed a little while ago, some time ago -- talk about different protocols.

I know the plaintiff had suggested having an appointment of a Special Master to deal with the unsealing of various documents. So one of the things I wanted to do

was to get just a status update of the parties. Where are you all? Have you talked? Have you not talked?

Two, I want to talk a little bit about this whole Special Master idea. And I think it's a great compliment to Judge Lamberth that his name was suggested, but he's pretty busy. Frankly, I don't think this is really a matter for, from my initial impression -- to put my cards on the table, I don't really think this is an issue for a Special Master; but I want to hear you all on that.

Third, I want to understand precisely what's being asked for here and what considerations the parties think I should be giving to this in order to either make this a manageable task, if the task should go forward at all, and so on. So those are the issues that I wanted to have a discussion on.

I am not prepared to make any rulings today. I really just want to start a conversation so that I -- frankly, so that I'm not missing anything and know what is being asked of the Court.

So, Mr. Light, why don't I start with you? All right.

MR. LIGHT: Your Honor, well, let me begin with the status update. The parties have continued to discuss the issue. I think there are a lot of areas of agreement.

And, moving forward, there are some questions that

the parties have about how the Court would want to proceed and what may be administratively easiest for the Court.

Once we have a little bit more information, we'd be happy to continue discussing whether either side has any objections.

THE COURT: Your side -- by your "side," you mean the Court? What do you mean your "side"? I don't understand.

MR. LIGHT: Well, the petitioner has submitted requests to unseal records.

THE COURT: Right.

MR. LIGHT: So if the Government raises any issues about how they would like to proceed, we're happy to negotiate with them to present a plan to the Court to make this case manageable.

THE COURT: Okay. Well, I mean, usually -- documents that are sealed pending a court order unsealing them require a motion with respect to that particular document with the reasons given for why that particular document should be unsealed and, thereby, triggering the Hubbard factors and the other various factors the Court has to consider in whether there is a compelling Government interest to continue the seal versus the public interest of those particular documents.

So the petition is a little bit vague, to my

mind -- or maybe overbroad is another way to say it -- as to precisely what is being asked for.

I understand -- my understanding, to be clear, is that you are asking for the carte blanche unsealing of all applications and orders associated with pen registers, trap and trace -- the use of pen register/trap and trace devices, as well as 2703(d) orders, is that correct -- for all time; is that correct?

MR. LIGHT: Almost correct. With the caveat that we're not asking for anything involving an ongoing investigation.

THE COURT: Okay. Which only the Government can tell us --

MR. LIGHT: Yes.

THE COURT: -- certainly, the Court can't.

MR. LIGHT: Right.

THE COURT: So that would be up to the Government to make that evaluation. And when we talk about the "Government," of course we're talking about not just the U.S. Attorney's Office here who may have knowledge; but we're talking about any other Government entity that has come to this Court asking for relief.

So are you asking for all time or just a shorter period of time -- or for a period of time that would minimize, shall we say, the number of potentially ongoing

investigations?

Because, for example, if you want unsealing of all those applications that were filed, if some were, last week, I mean, chances are it's probably an ongoing investigation -- even three months ago, even four months ago. So are you asking time period-wise for -- I will phrase that another way.

In order to minimize and exclude ongoing investigations being captured in what you're asking for, have you thought about a time period from some time ago that would avoid capturing the ongoing investigations which you are now asking for?

MR. LIGHT: That's a good idea. It is not -- I mean, the various statutes have different time periods in them and, of course, they can be extended. So if we had both the period of time that the pen registers --

THE COURT: Well, let's be clear about that.

The pen register/trap and trace statute -- there is no period for sealing or unsealing; it's really just up to the court order.

MR. LIGHT: Correct.

THE COURT: 2703(d) -- under 2705 (d) the court order can be just until the court says, you know, there is a court order saying it can be sealed.

MR. LIGHT: Sure.

THE COURT: So what time period -- what statutes, particularly -- I thought those were the three things we were looking at. So what else are you referring to?

MR. LIGHT: I was referring to the length of time that the pen register is actually active because, obviously, during the period it's active there is an ongoing investigation; we're not asking for that.

That period can be extended if I had some information. How often it's extended -- if it's routinely extended three times, then we can say well, then, three times that length we'll exclude from it. I don't know how old the longest active one is, but I --

THE COURT: Mr. Light, where in the statute for the pen register/trap and trace statute does it say anything about that it may remain sealed only for so long as it's active? That's not in the statute, is it?

MR. LIGHT: No, it's not. But I was trying --

THE COURT: It's only until the Court orders the unsealing, right?

MR. LIGHT: Yes. Well, what I was trying to answer for Your Honor is the question of our narrowing down the time period to be able to exclude anything that involves an active investigation. So to try and get a sense of how long that time period should be that we exclude it, there are some factors that we'd like to take into consideration.

Let's say, obviously, 90 days is too short.

THE COURT: Mr. Light, you are showing a distinct naiveté about how pen registers and trap and trace devices are used in ongoing investigations.

Usually, quite often, they are used sort of at the beginning of an investigation. And those pen registers and trap and trace devices can then provide information that leads to other kinds of electronic surveillance warrants that can then go on for a year. So saying that there is any kind of presumption associated with a 90-day, 180-day delay after a pen register has been issued and the investigation is no longer ongoing is totally incorrect.

So I really -- that is not how you would evaluate, I think, whether an investigation in which a pen register or trap and trace was involved was ongoing or not, if that's your proposal.

MR. LIGHT: I wasn't trying to suggest 90 days as a time period or anything like that. I was just trying to express I don't know how long, on average, these investigations would take. If it's a year, then we could exclude a period of a year, if that makes sense.

THE COURT: Well, for each of these things -- and we can talk to the Government -- it may be that the Government is actually going to have to look and see.

Now, let's get to the kind of information you are

actually looking to get because -- let's start with, you know, 2703(d) applications which are, typically, for e-mail addresses or -- e-mail addresses really.

MR. LIGHT: Right.

THE COURT: So you are not asking for the e-mail address itself, are you?

MR. LIGHT: No.

THE COURT: So all of that pertinent information about the specific target of the investigation, which may have borne through it or may have gone by the wayside -- so, clearly, you don't want to embarrass anybody unnecessarily, that they were the subject of some kind of law enforcement focus.

MR. LIGHT: Right.

THE COURT: So all of that information would be omitted.

MR. LIGHT: Right.

THE COURT: So -- and redacted.

MR. LIGHT: Right.

THE COURT: So the way that these pen -- the 2703 applications usually look like, and both -- the applications and the orders are fairly standard. This is -- you know, it says who the order is going to and usually, in an attachment, what is being asked for. So you wouldn't get the attachment because the attachment has all of the

detailed information about the specific individual.

So the orders are fairly standard; the applications themselves are also fairly standard. And what differs is, typically, what is the attachment that is the specific focus of that application, of that order -- and that information would be typically, precisely, about an individual's account or an individual. You are not even asking for that, quite appropriately, right?

MR. LIGHT: When you say the "attachment," you are referring to the affidavit that we would be submitting in support of --

THE COURT: No. I'm talking about the application saying these are all of the reasons -- this is the information that we want, and why. So there would be some paragraphs in there that would talk about the details of maybe who the person -- the reason for that particular e-mail address is the focus of law enforcement inquiry; and, then, there would be an attachment that actually says the name.

MR. LIGHT: No. We're not looking for the attachment.

THE COURT: And so you are not looking for that?

MR. LIGHT: Right.

THE COURT: So in trying to understand -- and maybe it's just a matter of education that the Government can give

you -- you might get -- even if you prevailed in this -- as I said, I am not ready to make a ruling here. I am just really trying to understand the parameters and maybe have everybody educated here.

You would get a pile of papers with all of the same -- basically, all of the same redactions of information and that basically, essentially, all look the same. Is that really -- I mean, is what you are asking for that substance? Or, are you asking for how many, for example -- like what's the number?

What's -- you know, it's hard for me to understand what usefulness that information would give you except, perhaps, in the aggregate or to see what these pen register/trap and trace applications look like, with all of the individual information redacted, and the 2703(d) orders look like, with all of the information redacted. In which case, you can see a few samples of those as opposed to, you know, like a much more significant burdensome task on anybody who might be required to perform this task, meaning, the Government.

And if you are looking for more aggregate information -- since all of these things, these documents, are documented is maybe what you are looking for maybe a docket list? So I really -- I'm trying to find a way forward that helps define the burdens here based on the

purpose of what you are trying to get.

MR. LIGHT: Okay.

THE COURT: So why don't you tell me, what is it you want --

MR. LIGHT: Okay.

THE COURT: -- exactly.

MR. LIGHT: I realize a lot of the applications and orders are going to look the same. But there has been some changes to what the Government's been asking for over the years in terms of, for example, taking the position that the pen register in 2703(d) gives them authority to ask for historical cell site data; and there, occasionally, has been opinions by magistrate judges denying or granting those. But it's interesting to my client to see when those kinds of requests started, whether or not they were justified --

THE COURT: Remind me, please. Who is Jason Leopold?

MR. LIGHT: Mr. Leopold is a national security reporter, frankly, with The Nation News.

THE COURT: Okay.

MR. LIGHT: He does a lot of reporting on surveillance, which is an issue that's been of interest to him for some time. So at this point it's unclear sort of what decisions are being made my the Court with respect to some of these more novel interpretations the Government has

come up with from time to time.

THE COURT: So, in terms of the interpretations, you would get that from memorandum -- memoranda opinions that might be filed. And I don't know whether there are any that may be sealed or not, I don't know. But you would get the interpretations and the discussions of the interpretations from memoranda opinion. I am not sure you would get that from an application or an order for these things. Is that what you are anticipating that you are going to get?

Mr. Light, are you okay?

(Whereupon, the proceeding ended abruptly due to a medical emergency, 10:35 a.m.)

**CERTIFICATE**

I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 23rd day of August, 2016.

/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter