# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS | Misc. Action No. 13-mc-00712 (BAH) |

## PETITIONERS' REPLY TO GOVERNMENT'S RESPONSE TO PETITIONERS' SECOND SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR APPLICATION TO UNSEAL ELECTRONIC SURVEILLANCE APPLICATIONS, ORDERS, AND RELATED COURT RECORDS

Jeffrey Light
D.C. Bar No. 485360
1712 Eye St. NW, Suite 915
Washington, DC 20006
jeffrey@lawofficeofjeffreylight.com

*Counsel for Jason Leopold*

Katie Townsend
D.C. Bar No. 1026115
Bruce D. Brown
D.C. Bar No. 457317
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
bbrown@rcfp.org
ktownsend@rcfp.org

*Counsel for the Reporters Committee for Freedom of the Press*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

Introduction ................................................................................................................. 3

Argument .................................................................................................................... 5

   I.    The targeted relief sought by Petitioners for PR/TT and Section 2703(d) matters
        that are currently under seal should be granted. ................................................. 5

  II.    The prospective relief sought by Petitioners should be granted. ....................................... 9

    A.   The MOU does not moot Petitioners' claims for prospective relief. ............................ 10

    B.   The First Amendment and common law presumptions of public access apply to Section
        2703(d) and PR/TT materials, which are not analogous to grand jury materials. ....... 12

    C.   The Court should reject the USAO-DC's invitation to invent a new and unprecedented
        "burden" exception to the public's constitutional and common law rights of access to
        judicial records. ............................................................................................. 15

    D.   The prospective relief sought by Petitioners is a practicable solution to the extensive
        secrecy shrouding electronic surveillance matters in this District and is consistent with
        relevant statutory authority. ............................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211 (1979) ........................................................ 13

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)...................................... 8, 16, 18

*Hartford Courant Co. v. Pellegrino*, Case No. 3:03-cv-00313-RNC (D. Conn. Sep. 3, 2004).... 18

*In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*,
    707 F.3d 283 (4th Cir. 2013) ................................................................................................ 14

*In re Petition of Jennifer Granick and Riana Pfefferkorn*, Misc. Case No. 16-80206
    (N.D. Cal. 2016).................................................................................................................. 16, 17

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000)...................................................................... 16

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ........................................................ 15

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993)........................................................ 8, 18

## Statutes

All Writs Act, 28 U.S.C. § 1651 .................................................................................................. 17

Pen Register Act, 18 U.S.C. §§ 3121-3127 .............................................................................. 3, 19

Stored Communications Act, 18 U.S.C. §§ 2701-12 ................................................................ 3, 19

Wiretap Act, 18 U.S.C. §§ 2510-2522....................................................................................... 17

## Rules

E.D. Pa. R. 5.1.5(c) ...................................................................................................................... 20

W.D. Va. R. 9(d)(5) ...................................................................................................................... 20

## Other Authorities

Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b),
    U.S. Dept. of Justice (Oct. 19, 2017), http://bit.ly/2j29QB6 ............................................ 19, 20

Cyrus Farivar, *Lawyers: How can we scrutinize surveillance records that remain sealed?*,
    Ars Technica (May 5, 2017), http://bit.ly/2AOIDsL .............................................................. 17

**INTRODUCTION**

Pursuant to this Court's October 26, 2017, Minute Order, the Reporters Committee for Freedom of the Press ("RCFP") and journalist Jason Leopold ("Leopold") (collectively, "Petitioners") respectfully submit this reply in response to the U.S. Attorney's Office for the District of Columbia's (the "USAO-DC") response to Petitioners' Supplemental Memorandum of Points and Authorities in Support of their Applications to Unseal Certain Electronic Surveillance Applications, Orders, and Related Court Records ("Supp. Memo").

The USAO-DC Response is largely not responsive to the arguments made—and the relief sought—by Petitioners. As set forth in their Supplemental Memorandum and accompanying Proposed Order, Dkt. 47 and 47-8, Petitioners' requested relief is primarily prospective; they seek specific, forward-looking changes to docketing and unsealing procedures in this District that will provide public access to three categories of judicial records that are presumptively open under the First Amendment and common law, yet are routinely maintained under seal: (1) records related to judicial authorization to use pen register and/or trap and trace ("PR/TT") devices pursuant to the Pen Register Act ("PRA"), 18 U.S.C. §§ 3121-3127 ("PR/TT materials"); (2) records related to search warrants issued pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-12 ("SCA Search Warrant materials"); and (3) court orders issued pursuant to 18 U.S.C. § 2703(d) of the SCA ("Section 2703(d) materials"). Petitioners seek only limited relief with respect to such records that are currently under seal. The USAO-DC Response, however, primarily focuses on the narrower, backward-looking relief sought by Petitioners—repeatedly mischaracterizing it as "broad and unprecedented," USAO-DC Resp. at 1–2, "wholesale and sweeping," *id.* at 2, and unduly "burdensome," *id.*—and fails to address key aspects of the forward-looking relief sought by Petitioners. For example, the USAO-DC Response does not even acknowledge, let alone address, *any* of Petitioners' requests for

prospective relief related to SCA Search Warrant materials.  Nor does the USAO-DC Response address Petitioners' request for prospective public access to dockets and docket information in Section 2703(d) and PR/TT matters.  Importantly, the USAO-DC Response also fails to meaningfully address a central feature of the forward-looking relief sought by Petitioners: reasonable procedures that will ensure the future unsealing of Section 2703(d), PR/TT, and SCA Search Warrant materials when underlying criminal investigations have ended, and the government's need for secrecy has dissipated.

Instead of providing this Court with a substantive response directed to the specific prospective relief sought by Petitioners, the USAO-DC attempts to complete an end-run around Petitioners and this litigation.  Petitioners learned from the USAO-DC Response that the USAO-DC privately, without Petitioners' knowledge or participation, negotiated and entered into a "Memorandum of Understanding" ("MOU") with the Office of the Clerk of this Court that the USAO-DC now argues "moots" the prospective relief sought by Petitioners in this case.  *See* Memorandum of Understanding: Electronic Filing of Certain Sealed Applications and Orders ("MOU") (Aug. 15, 2017), http://bit.ly/2ju4baA.  That MOU provides for the electronic filing of Section 2703(d), PR/TT, and SCA Search Warrant materials, and requires the Clerk's Office to biannually release docket numbers and case captions for matters filed six to twelve months prior, except in matters related to "the non-disclosure of grand jury subpoenas."  *See id.*; USAO-DC Resp. at 3.  As set forth below, even setting aside questions about the propriety of the USAO-DC's attempt to resolve Petitioners' claims in this lawsuit without Petitioners' participation by engaging in private negotiations with the Clerk's Office, the MOU does not moot Petitioners' claims for prospective relief.  The MOU addresses only a few, limited aspects of the forward-

looking relief sought by Petitioners, and fails to provide the transparency that Petitioners seek and that the public is entitled to.

Contrary to the claims made by the USAO-DC in its Response, through this litigation Petitioners seek modest yet meaningful reforms that are necessary to bring sealing practices in Section 2703(d), PR/TT, and SCA Search Warrant matters in line with fundamental constitutional and common law principles, as well as democratic norms of public access to judicial records and public oversight of government.  The relief sought by Petitioners would provide public access to these records similar to what currently exists for other, analogous types of court records, such as physical search warrant applications and related filings from closed criminal investigations.  It would also allow public access to docket information in pending matters, similar to what currently exists in the U.S. District Court for the Eastern District of Virginia.  Petitioners also request limited backward-looking relief—namely, docketing information for Section 2703(d) matters similar to what the Clerk's Office has already provided for PR/TT matters, and charts providing certain categories of information for 100% of currently sealed PR/TT matters, similar to what the USAO-DC has already provided for 10% of those matters.  Precedent and the public interest strongly support each item of relief Petitioners seek. For the reasons set forth in Petitioners' Supplemental Memorandum and herein, Petitioners respectfully request that the Court grant the relief set forth in Petitioners' Proposed Order.

## ARGUMENT

I.   **The targeted relief sought by Petitioners for PR/TT and Section 2703(d) matters that are currently under seal should be granted.**

With respect to matters currently under seal, Petitioners seek two types of relief: (1) extraction charts for the remainder of the PR/TT matters filed in this District by the USAO-DC

since 2008, *see* Proposed Order ("PO"), Dkt. 47-7, at 4; and (2) docket information for PR/TT

matters filed in 2017, *id*. at 2, and for Section 2703(d) matters filed since 2008, *id*. at 4–5.

As an initial matter, the USAO-DC attempts to characterize these two limited requests—

which would not require unsealing any underlying documents—as overly broad and unduly

burdensome.  Those arguments, however, fall flat.  Over the course of this litigation, in an effort

to focus their requested relief on the information that would be most meaningful to the public

while, at the same time, minimizing any administrative burden to the Clerk's Office and the

USAO-DC, Petitioners voluntarily limited the scope of their requested relief as to matters that

are currently under seal in a number of ways.  Petitioners narrowed the scope of sealed PR/TT

matters at issue to those filed only by the USAO-DC, at the suggestion of the Court, *see* 6/24/16

Tr. 11–12, and limited the time frame of sealed matters at issue to those filed since 2008, *see*

Fourth Joint Status Report, Dkt. 28.  The relief set forth in Petitioners' Proposed Order is

narrowed in additional ways.  Petitioners do not seek the unsealing of underlying court records in

previously filed PR/TT and Section 2703(d) matters, and seek no backward-looking relief

relating to SCA Search Warrant matters currently under seal in this District, *see* Supp. Memo,

Dkt. 47.[1]  In short, notwithstanding the USAO-DC's attempt to argue against a purportedly

overbroad and extraordinarily burdensome strawman request to unseal massive numbers of

currently sealed court records, no such request is being made here.

First, with respect to Petitioners' request for extraction charts for the remainder of the

sealed PR/TT matters filed by the USAO-DC since 2008, the USAO-DC previously represented

that it took approximately 8.5 hours to complete the extraction process for 10%—or 24—of

---

[1] As discussed in Petitioners' Supplemental Memorandum and below, Petitioners do seek
*prospective* relief applicable to SCA Search Warrant materials.

those matters that were filed by the USAO-DC in 2012.  According to the Court's public release

of docket information related to sealed PR/TT matters, *see* Dkt. 37, the total number of PR/TT

applications filed by the USAO-DC from 2008 to 2016 was 2,248.  The USAO-DC argues that it

will take "more than three months of forty-hour work weeks" to complete the extraction process

for the remaining PR/TT matters.  *See* USAO-DC Resp. at 16.  The USAO-DC also states that

the Clerk's Office will have to devote time to providing the USAO-DC with access to each

individual matter, but does not explain why the Clerk's Office would not be able to grant the

USAO-DC electronic access to these matters with minimal difficulty.  Nor does the USAO-DC

address Petitioners' extensive showing of a strong public interest in access to information about

all currently sealed PR/TT matters.  *See, e.g.,* Supp. Memo at 3, 10–15.

With respect to the second type of relief sought by Petitioners for matters currently under

seal, Petitioners seek only docket information for Section 2703(d) matters filed since 2008, and

PR/TT matters filed in 2017—information similar to what has already been provided for PR/TT

matters filed by the USAO-DC from 2008 to 2016.  As the USAO-DC Response concedes, this

request "does not implicate the USAO-DC," USAO-DC Resp. at 41; lists of docket information

can be generated by the Clerk's Office using the CM/ECF system.  The USAO-DC

acknowledges that the Clerk's Office was able to unseal docket information for sealed PR/TT

matters filed by the USAO-DC from 2008 to 2016.  USAO-DC Resp. at 10, 15–16.  The main

burden cited by the USAO-DC with respect to unsealing that docket information was that the

Clerk's Office had to "enter each MC docket individually to determine the identity of the

institutional litigant (that is, whether the application had been filed by the USAO-DC or another

institutional filer)."  *Id*.  This step, however, was necessary only because Petitioners agreed to

limit their requested relief to those PR/TT matters filed by the USAO-DC; Petitioners did so

because they (mistakenly) believed it would lessen any burden on the Clerk's Office.  Because Petitioners seek docket information for all Section 2703(d) matters filed in this District, regardless of the identity of the institutional filer, this additional step is no longer required.  In addition, because Petitioners seek only docket information, which under Petitioners' Proposed Order would not reveal sensitive information about underlying matters, PO at 3, the Clerk's Office does not need to review the filings in each such matter to determine whether the matter relates to a grand jury proceeding.  Although this Court initially denied the parties' request for the Clerk's Office to prepare these lists in June 2017, *see* Dkt. 40, the Clerk's Office has since clarified in meetings with Petitioners and the USAO-DC that it would be able to generate the lists sought by Petitioners using straightforward "event category" searches in the CM/ECF system.  PO at 3.

In sum, Petitioners seek only docket information for sealed PR/TT and Section 2703(d) matters, and certain additional extracted information for sealed PR/TT matters filed by the USAO-DC since 2008.  Petitioners do not request the unsealing of underlying documents filed in those matters.  The USAO-DC ignores this distinction.  It does not address the First Amendment and common law presumptions of public access that apply to court dockets and docket information, or the argument set forth in Petitioners' Supplemental Memorandum that a "dual-docketing system" whereby certain dockets are "completely hid[den] from public view" is itself an infringement on the public's constitutional and common law rights of access.  *See* Supp. Memo at 10 (quoting *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993), and citing *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004)).

In sum, although the USAO-DC contends that there is no constitutional or common law right of access to underlying filings in sealed Section 2703(d) and PR/TT matters—an argument

that fails for the reasons discussed in Petitioners' Supplemental Memorandum and below—the USAO-DC does not dispute the public's right of access to dockets; indeed, it does not even address it.  The USAO-DC's opposition to Petitioners' request for public access to docket information in sealed PR/TT and Section 2703(d) matters appears to be based solely on a mistaken understanding of the administrative burden to the Clerk's Office of providing access to that information.  Such an objection is not sufficient to overcome the public's common law and constitutional rights of access to court dockets.

**II.   The prospective relief sought by Petitioners should be granted.**

As detailed in their Supplemental Memorandum and Proposed Order, Petitioners primarily seek forward-looking changes to the prevailing practices in this District related to the filing, docketing, sealing, and unsealing of PR/TT, Section 2703(d), and SCA Search Warrant materials—changes that are necessary to meaningfully increase transparency.  Specifically, Petitioners seek changes that will provide the public access to certain docket information upon the filing of an SCA Search Warrant, PR/TT, or Section 2703(d) application, and will ensure that the public is later afforded access to court records filed in such matters, once the underlying criminal investigation is complete and any need for wholesale sealing has dissipated.

The USAO-DC's primary argument is that Petitioners' forward-looking relief has been mooted by the MOU it recently negotiated with the Clerk's Office.  Even assuming, however, that the USAO-DC could resolve Petitioners' claims in this litigation by privately striking an agreement with the Clerk's Office, the agreement it entered into does not address key aspects of the prospective relief sought by Petitioners, and thus cannot be found to have mooted Petitioners' claims.  As explained below, the First Amendment and the common law create a presumption of

public access to the court records at issue, including court dockets, and presumed administrative

burden is not sufficient to overcome the public's right of access.[2]

### A.    The MOU does not moot Petitioners' claims for prospective relief.

As an initial matter, Petitioners believe it was inappropriate for the USAO-DC to

privately negotiate and enter into an MOU with the Clerk's Office concerning certain relief

sought by Petitioners in this case without Petitioners' knowledge or participation.  The resolution

of Petitioners' claims, including the nature and the scope of the prospective relief that is

warranted, is a matter properly handled by the Court, with the full participation of all parties, in

the context of this pending litigation.

In any event, the MOU falls short of fully addressing the prospective relief sought by

Petitioners.  First, Petitioners seek public docketing of Section 2703(d), PR/TT, and SCA Search

Warrant matters at the time they are filed—*i.e.*, a public docket of pending electronic

surveillance matters that does not disclose sensitive information, similar to what is available in

the U.S. District Court for the Eastern District of Virginia.  The MOU, however, only provides

for the disclosure of docket numbers and case captions in such cases biannually—creating a six-

month delay in the disclosure of basic docket information.  *See* MOU at 2–3.  The USAO-DC

Response does not provide any explanation or reason for such a delay, nor does it appear that

such a delay would reduce administrative burden for either the Clerk's Office or the government.

---

[2] The USAO-DC Response addresses the public's common law and First Amendment rights of access in its discussion of backward-looking relief, *see, e.g.,* USAO-DC Resp. at 23 (arguing, in connection with "backward looking relief," that Petitioners do not have a First Amendment or common law right of access to "the documents").  Petitioners, however, do not seek access to sealed underlying filings in previously filed PR/TT and Section 2703(d) matters, *see supra*, Part I.  Accordingly, Petitioners address the USAO-DC's arguments about the public's common law and constitutional rights of access in connection with the prospective relief sought by Petitioners, which includes the implementation of procedures for unsealing underlying court records, in whole or in part, once the related criminal investigation is closed.

Indeed, while Petitioners seek to have such docket information made available automatically through the Court's Public Access to Court Electronic Records ("PACER") system, *see* PO at 2, the MOU requires the Clerk's Office to prepare reports—a process which presumably will require more administrative effort on the part of the Clerk's Office.

Second, while Petitioners acknowledge the need for—and, indeed, themselves proposed, *see* PO at 5–6—standard case captions designed to ensure that information that is properly maintained under seal during the pendency of a criminal investigation is not included on publicly available dockets, the MOU's standard case caption format excludes certain key categories of docket information requested by Petitioners.  For example, Petitioners seek docket information that includes the specific government entity (*e.g.*, the USAO-DC) that filed the application and the magistrate judge to whom the matter is assigned.  *See, e.g.,* PO at 2.  The MOU does not require such information to be part of the standard case caption or biannual report for PR/TT matters.  MOU at 2 (stating that PR/TT case captions need only include (1) the number of targets; (2) the type of target; (3) the service provider; and (4) the primary offense statute).  And it is unclear what information the MOU requires be released for Section 2703(d) and SCA Search Warrant matters because the MOU states that "[e]ach standard caption shall contain variable items of information, depending on the type of application." *Id.* at 2.  In addition, the MOU allows the filer to "omit one or more variables in the caption if disclosure of that information is considered by the USAO-DC to pose a risk of compromising an ongoing investigation." *Id.*  Petitioners' Proposed Order would protect information properly under seal during the pendency of a criminal investigation by encouraging the adoption of uniform caption and document titles, PO at 3, and contemplates court orders to protect docket information for particular matters when necessary, as determined on a case-by-case basis, *id.* at 2.

Third, and most importantly, Petitioners seek the establishment of procedures that will ensure the future unsealing or partial unsealing of underlying documents in PR/TT, Section 2703(d), and SCA Search Warrant matters once their related criminal investigations are closed, with periodic, automatic Orders to Show Cause that will remind the filer of her or his unsealing obligations. *See* PO at 3.  This is consistent with the unsealing obligations of government attorneys in other criminal matters, as explained in the Supplemental Memorandum. *See* Supp. Memo at 34.  The MOU does not address, let alone provide for, unsealing in future PR/TT, Section 2703(d), or SCA Search Warrant matters, even though the USAO-DC has conceded that "court records comprising applications and orders relating to electronic surveillance methods need not necessarily be permanently sealed."  USAO-DC Resp. at 2.

In sum, the MOU partially addresses only a portion of the relief requested by Petitioners; it is no substitute for the forward-looking reforms sought by Petitioners.  Indeed, while Petitioners urge the adoption of uniform case captioning and electronic filing of electronic surveillance matters for the purpose of facilitating timely access to docket information and future unsealing of underlying records in such matters—the MOU appears to treat those aspects of the relief sought by Petitioners as ends unto themselves.  The MOU does not moot Petitioners' claims for prospective relief.

**B.      The First Amendment and common law presumptions of public access apply to Section 2703(d) and PR/TT materials, which are not analogous to grand jury materials.**

As an initial matter, the USAO-DC acknowledges, as it must, that the public's common law and First Amendment rights of access apply to SCA Search Warrant materials in closed investigations. *See* USAO-DC Resp. at 23 (conceding "there is a First Amendment and common law qualified right of access to search warrants and related materials in closed investigations").

The USAO-DC Response does not even address, let alone challenge, the forward-looking relief sought by Petitioners with respect to SCA Search Warrant matters.[3]   Accordingly, because the USAO-DC has conceded Petitioners' entitlement to such relief, the Court should grant the specific prospective relief requested by Petitioners with respect to SCA Search Warrant matters.

With respect to Section 2703(d) and PR/TT matters, the USAO-DC argues that they are "investigative proceedings" that are traditionally closed to the public, *id*. at 24–25, and thus are not presumptively open to the public under the First Amendment or common law.   In support of that position, the USAO-DC cites three cases, all of which involve grand jury proceedings.  *Id*. at 25.   Those cases make clear, however, that "several distinct interests [are] served by safeguarding the confidentiality of grand jury proceedings," and that unlike other judicial proceedings to which public oversight is a structural necessity, the proper functioning of the grand jury system "depends on the secrecy of grand jury proceedings."  *Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 218–19 (1979).   As explained in Petitioners' Supplemental Memorandum, *see* Supp. Memo at 26–29, the reasons that justify secrecy in the unique context of grand jury proceedings simply do not apply to Section 2703(d) and PR/TT materials in closed investigations.   Indeed, the fallacy underlying the USAO-DC's comparison of Section 2703(d) and PR/TT matters, on the one hand, and grand jury proceedings, on the other, is demonstrated by the USAO-DC's own practice of routinely unsealing the former, but not the latter, on a case-by-case basis.  *See* USAO-DC Resp. at 2 (stating that the USAO-DC agrees "that court records

---

[3] The USAO-DC Response incorrectly suggests that Petitioners have withdrawn their request for prospective relief with respect to SCA Search Warrant matters.  *See* USAO-DC Resp. at 22 n.12. That is clearly not the case.  *See* PO at 7–9; *see generally* Supp. Memo.  Petitioners simply do not seek *backward-looking* relief related to currently sealed SCA Search Warrant materials, for the reasons set forth in the Supplemental Memorandum.

comprising applications and orders relating to electronic surveillance methods need not necessarily be permanently sealed").

The Fourth Circuit's decision in *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290–91 (4th Cir. 2013) ("*Appelbaum*"), should not alter this Court's constitutional analysis.  As set forth in Petitioners' Supplemental Memorandum, *Appelbaum* involved the public's right of access to Section 2703(d) records related to an *ongoing* criminal investigation, *id*. at 286–87, and the petitioners in *Appelbaum* conceded that there was no historical tradition of access to Section 2703(d) materials, *id*. at 291.  No such concession is made here.  Petitioners argue that under the case law of this Circuit, this Court should look to the public's First Amendment right of access to truly analogous records— namely, search warrant materials from closed criminal investigations—to determine whether the constitutional right of access applies.  *See* Supp. Memo at 21–24.   And while the USAO-DC argues that there is no history of access to Section 2703(d) applications because they are traditionally submitted *ex parte* and *in camera*, USAO-DC Resp. at 27, the same can be said of search warrants, which the USAO-DC has conceded the public has a constitutional right of access to once an investigation is closed.

When it comes to the common law right of access, the USAO-DC abandons the majority opinion in *Appelbaum*, in which the Fourth Circuit held that the common law right of access applied to Section 2703(d) materials.  *Appelbaum*, 707 F.3d at 291.  In arguing that the common law right of access does not apply to either Section 2703(d) or PR/TT materials, the USAO-DC relies on Judge Wilson's concurring opinion in *Appelbaum*, and a D.C. Circuit decision that, once again, addresses the unique and distinct context of grand jury proceedings.  *See* USAO-DC Resp. at 32.  Neither is relevant to this case.  Instead, as recognized by the Fourth Circuit in

*Appelbaum*, the common law right of access applies to Section 2703(d) materials and, for the reasons set forth in Petitioners' Supplemental Memorandum, it also applies to PR/TT materials. *See* Supp. Memo at 15–17.[4]

> **C.     The Court should reject the USAO-DC's invitation to invent a new and unprecedented "burden" exception to the public's constitutional and common law rights of access to judicial records.**

Even though Petitioners' requested relief is not overly burdensome, the USAO-DC urges this Court to take the unprecedented step of concluding that claimed administrative burden— alone—is sufficient to overcome the public's common law and constitutional rights of access. The USAO-DC claims that the addition of this exception to the long-settled common law and constitutional standards is appropriate because this case purportedly involves a "sweeping request" that goes beyond "a single, discrete case."  USAO-DC Resp. at 36.  Thus, according to the USAO-DC, the cases cited by Petitioners that set forth the standards for determining the public's right of access to judicial records can be summarily pushed aside because they purportedly arose "in a completely different context."  *Id*.  Setting aside the fact that Petitioners have limited the relief they seek in order to reduce any administrative burden to the government or the Court while, at the same time, ensuring meaningful access to court records for the public, that Petitioners seek relief that is not limited to "a single, discrete case" does not alter the applicable standards.  The USAO-DC does not point to a single case in this or any other Circuit in which a court has held that burden is a factor in determining the public's right of access to

---

[4] The USAO-DC argues that the common law factors laid out by the D.C. Circuit in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980), weigh in favor of indefinite sealing of Section 2703(d) and PR/TT materials because the second factor weighs against disclosure and the final four factors purportedly "cannot be applied."  USAO-DC Resp. at 34.  Yet Petitioners have already explained why the second factor counsels in favor of disclosure, and Petitioners have applied the remaining four factors to this case.  *See* Supp. Memo at 18–20.

court records, and it ignores cases in which courts—notwithstanding the associated

administrative burden—have instituted reforms to correct systemic violations of the public's

constitutional and common law rights of access to court records.  *See Pellegrino*, 380 F.3d at

102.

The USAO-DC's reliance on *In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000), is

misplaced.  First, that case arose in the context of access to grand jury proceedings; the D.C.

Circuit, in ruling on that case, expressly recognized the unique nature of grand jury secrecy:

"Unlike typical judicial proceedings, grand jury proceedings and related matters operate under a

strong presumption of secrecy. . . .  The cases cited by appellants, involving situations other than

grand jury ancillary proceedings, are therefore inapposite."  *In re Sealed Case*, 199 F.3d at 526.

Stating that there is no common law right of access to matters before a grand jury, *id*. at 523, the

D.C. Circuit explained that "courts have upheld rights of public docketing and access in other

situations not involving grand jury matters," *id*. at 525, but that "the grand jury context is

unique," *id*.  Moreover, without an applicable common law or constitutional right of access to the

grand jury materials at issue, the parties in *In re Sealed Case* asserted a right of access based on a

local court rule, which is why the administrative burden to the district court, and its role in

managing its docket, were considered relevant.  Here, by contrast, the public's common law and

constitutional rights of access apply.

The nonbinding district court opinion from the U.S. District Court for the Northern

District of California that is cited by the USAO-DC undercuts its arguments.  *See* USAO-DC

Resp. at 38–39 (citing *In re Petition of Jennifer Granick and Riana Pfefferkorn*, Misc. Case No.

16-80206 (N.D. Cal. 2016) (hereinafter, "*In re Granick*")).  The petition in that case sought

broader relief than what is at issue here, encompassing applications and orders issued pursuant to

the Wiretap Act, 18 U.S.C. §§ 2510-2522, and the All Writs Act, 28 U.S.C. § 1651, among

others.  In a three-page order, U.S. Magistrate Judge Kandis Westmore acknowledged that both

the constitutional and common law rights of access applied to the requested materials, but stated

that the "primary concern . . . [was] that the scope of relief sought by Petitioners was overbroad"

because the proposed prospective relief did not address how to protect documents in ongoing,

open criminal matters or matters subject to ongoing protective orders.  *See* Order, *In re Granick*,

Dkt. 8, at 2.  The court denied the motion to unseal but also ordered the petitioners and the

government to continue to meet and confer to further discuss unsealing procedures outside the

context of litigation.  *Id*. at 3.

Judge Westmore's order therefore left open the possibility that the petitioners might find

a way to narrow their request to shield documents related to open criminal investigations and

work with the Justice Department and/or the U.S. Attorney's Office for the Northern District of

California to find a workable solution.  That is precisely what the Petitioners are attempting to do

here, by requesting prospective relief that would ensure matters are unsealed only "at the close of

the related criminal investigation(s)," under internal policies and practices developed by the

USAO-DC and other government entities.  *See* PO at 3.  Indeed, Judge Westmore recognized the

possibility of a workable solution coming out of this litigation during a hearing on May 4, 2017:

"I'm interested in hearing a little bit more about how this is taking place in DC . . . [I]f there is a

process that is underway that might seem to be working—the court is open to looking at that.

We want to try to provide the information to the extent possible because the public does have a

qualified right to access."  *See* Cyrus Farivar, *Lawyers: How can we scrutinize surveillance*

*records that remain sealed?*, Ars Technica (May 5, 2017), http://bit.ly/2AOIDsL.

Not only is administrative burden insufficient to overcome the public's common law and constitutional rights of access, courts routinely accept that some effort by the government and the court may be required to remedy ongoing infringements of the public's constitutional and common law rights of access.  In *Pellegrino*, for example, plaintiffs challenged "the longstanding Connecticut state court practice of sealing certain docket sheets, as well as entire case files."  380 F.3d at 85.  The Second Circuit found that the public had a constitutional right of access to these materials, *id*. at 102, notwithstanding the fact that the plaintiffs sought access to information about "what appeared to be thousands of cases" over the course of 38 years, *id*. at 86.  The defendants in that case, the chief administrator of Connecticut state courts and the chief justice of the Connecticut Supreme Court, raised concerns about administrative burden, asserting that complying with the requested relief—which would involve 750 cases—would take 18 weeks, and yet they ultimately agreed to the relief as "a reasonable and appropriate response to the Second Circuit's decision."  *See* Def. Statement, Dkt. 45 at 5–6, *Hartford Courant Co. v. Pellegrino*, Case No. 3:03-cv-00313-RNC (D. Conn. Sep. 3, 2004); *see also Valenti*, 987 F.2d at 715 (rejecting the government's argument "that this court should avoid binding the district court to any formal procedure that is unduly burdensome" and holding that a sealed docket "is an unconstitutional infringement on the public and press's qualified right of access to criminal proceedings").

**D.**     **The prospective relief sought by Petitioners is a practicable solution to the extensive secrecy shrouding electronic surveillance matters in this District and is consistent with relevant statutory authority.**

Petitioners' proposed forward-looking relief is not only reasonable and required by law, it is also consistent with the statutes at issue, and the government's own, newly revised disclosure policies for electronic surveillance matters.

Contrary to the USAO-DC's contention that the statutory sealing provisions found in the SCA and the PRA demonstrate that Congress intended for filings in PR/TT, Section 2703(d) and SCA Search Warrant Materials to remain shrouded in indefinite secrecy, both statutes reflect an expectation that sealing of such materials, when needed, will be short-lived.  As Petitioners' Supplemental Memorandum explains, the PRA contemplates unsealing of PR/TT materials by court order, 18 U.S.C. § 3123(d), and nothing in the SCA requires sealing of warrants or Section 2703(d) orders in the first instance.  *See* Supp. Memo at 3–4.

Recent changes to Justice Department policies regarding disclosure of SCA matters further underscore both the feasibility and the propriety of the prospective unsealing measures sought by Petitioners.  As the USAO-DC Response notes, 18 U.S.C. § 2705(b) allows nondisclosure orders barring a recipient of a subpoena, court order, or warrant issued under the SCA from disclosing the existence of that subpoena, order, or warrant.  This nondisclosure provision applies to Section 2703(d) and SCA Search Warrant matters.  On October 19, 2017, the Justice Department issued a memorandum providing guidance to Justice Department attorneys concerning that nondisclosure provision.[5]  *See* Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b) ("DOJ Policy"), U.S. Dept. of Justice (Oct. 19, 2017), http://bit.ly/2j29QB6; *see also* USAO-DC Resp. at 23 n.13.  That memorandum provides that nondisclosure orders should be sought only after "an individualized and meaningful assessment," and that prosecutors should "only seek [a nondisclosure] order when circumstances require."  DOJ Policy at 2.  In addition, it states that, "[b]arring exceptional circumstances, prosecutors filing § 2705(b) applications may only seek to delay notice for one year or less."  *Id.*

---

[5] Petitioners were not able to inform the Court of this policy in their Supplemental Memorandum because the policy was only made public on October 19, 2017, nearly two months after Petitioners' Supplemental Memorandum was filed.

Any delay beyond one year shall be sought *only* with additional approvals by a supervisor

designated by the United States Attorney or the appropriate Assistant Attorney General.  *Id*. at

n.3.  Consistent with this guidance, the USAO-DC has stated that it seeks nondisclosure orders

for specific, limited duration, and the default is one year.  *See* USAO-DC Resp. at 23 n.13.  This

guidance from the Justice Department recognizes that—except in "exceptional circumstances"—

there is no government interest in maintaining secrecy one year after a Section 2703(d)

application or SCA Search Warrant application has been filed.

The USAO-DC contends that Petitioners' proposal that this Court issue an Order to Show

Cause 180 days after filing is "arbitrary," USAO-DC Resp. at 7 (quoting Government's

Response, Dkt. 10, at 2).  This proposal was based on Petitioners' understanding that many

criminal investigations end within six months, and that the Order to Show Cause requirement (as

opposed to a relatively less protective automatic unsealing procedure), would be a reasonable

method of ensuring continued sealing for any matters in which the investigation continues

beyond six months.  To the extent that the USAO-DC would prefer a default one-year unsealing

policy, in line with the Justice Department's revised guidance concerning nondisclosure orders in

Section 2703(d) and SCA Search Warrant Matters, that may be a reasonable alternative.[6]

The future unsealing of Section 2703(d), PR/TT, or SCA Search Warrant materials after

their related investigations have been closed—at which point the underlying documents would be

made available to the public on PACER, and the matter would appear on the Court's existing

public-facing website that provides case numbers, case titles, and other information concerning

---

[6] There is precedent for an automatic unsealing procedure similar to that proposed here.  For example, a local rule in the Western District of Virginia states that the clerk will unseal documents 120 days after they are sealed, unless a court orders otherwise.  *See* W.D. Va. R. 9(d)(5); *see also* E.D. Pa. R. 5.1.5(c) (stating that sealed civil documents will be unsealed after two years unless a party objects and the court orders a sealing extension).

recently unsealed matters and documents, *see* PO at 4—is a critically important aspect of the forward-looking relief sought by Petitioners, and is a practicable means of increasing transparency of electronic surveillance matters in this District.  As set forth in Petitioners' Supplemental Memorandum, applications to unseal, either in whole or in part, electronic surveillance materials after a criminal investigation has closed are best made by the prosecutors who are most familiar with the underlying matter.  For that reason, Petitioners' Proposed Order places the onus on the government—specifically on the attorney who filed the application—to unseal the matter once the related criminal investigation is complete.  Petitioners' prospective relief therefore contemplates a case-by-case analysis with internal procedures to ensure that filers who are most familiar with the criminal investigation have the responsibility to unseal them, consistent with obligations of federal prosecutors in criminal matters, generally.  *See* Supp. Memo at 34.  Petitioners' requested prospective relief therefore imposes the minimum burden possible on the institutional filer while, at the same time, addressing the public's rights of access.  Other elements of Petitioners' requested relief, which were addressed in the MOU—*i.e.*, uniform case captions that shield information that should not be disclosed before the investigation has ended, and electronic filing—will make such prospective relief easier to implement and decrease any burden to the USAO-DC and the Court.

Dated:  November 17, 2017

Respectfully submitted,

/s/ Katie Townsend
Katie Townsend
D.C. Bar No. 1026115
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel of Record for the Reporters
Committee for Freedom of the Press*

/s/ Jeffrey Light
Jeffrey Light
D.C. Bar No. 485360
1712 Eye St. NW, Suite 915
Washington, DC 20006
Phone: 202.277.6213
jeffrey@lawofficeofjeffreylight.com

*Counsel of Record for Jason Leopold*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Petitioners' Reply to the Government's Response to Petitioners' Second Supplemental Memorandum of Points and Authorities in Support of Their Application to Unseal Pen Register and/or Trap and Trace Applications, Orders, and Related Court Records** was filed with the Clerk of Court using the CM/ECF system, and courtesy copies served on counsel for the following via email:

**Leslie Ann Gerardo**
United States Attorney's Office
Special Proceedings Division
555 Fourth Street, N.W.
Washington, DC 20530
(202)252-7578
Email: Leslie.Gerardo@usdoj.gov

**Pamela Stever Satterfield**
United States Attorney's Office for the
District of Columbia
Special Proceedings Division
555 4th Street, NW
Washington, DC 20530
(202) 252-7578
Email: pamela.satterfield@usdoj.gov

**Margaret J. Chriss**
United States Attorney's Office
Special Proceedings Section
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7555
Fax: (202) 514-8784
Email: margaret.chriss@usdoj.gov

This the 17th day of November, 2017.

*/s Katie Townsend*
Katie Townsend