**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS | Misc. Action No. 13-mc-00712 (BAH) |

**PETITIONERS' MOTION FOR RECONSIDERATION**

Pursuant to Federal Rule of Civil Procedure Rule 59(e), upon the accompanying memorandum of law dated March 23, 2018, Petitioners Jason Leopold and the Reporters Committee for Freedom of the Press, through their undersigned counsel, hereby move this Court for reconsideration of its Opinion and Order issued February 26, 2018 (the "Opinion") holding that (i) the First Amendment right of access does not apply to any of the judicial records for which Petitioners sought access, and (ii) that the common law right of access that applies to those judicial records is overcome in the context of the relief sought by Petitioners due to administrative burden.  *See* Order, ECF No. 53; Memorandum Opinion, ECF No. 54.

Petitioners respectfully request that the Court reconsider its application of the two-part constitutional test established by the U.S. Supreme Court in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986), to each of the categories of judicial records at issue, and its application of U.S. Supreme Court and D.C. Circuit precedent governing application of the common law right of access to judicial records.  In addition, Petitioners respectfully ask that the Court clarify its Opinion to specify the factual findings upon which it based its ruling that Petitioners' and the

public's common law right of access is overcome except as to certain information concerning the

judicial records at issue on a moving-forward basis.

Respectfully submitted,

/s/ Katie Townsend

Katie Townsend
D.C. Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel for the Reporters Committee for
Freedom of the Press*

Jeffrey Light
D.C. Bar No. 485360
1712 Eye St. NW, Suite 915
Washington, DC 20006
jeffrey@lawofficeofjeffreylight.com

*Counsel for Jason Leopold*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS** | **Misc. Action No. 13-mc-00712 (BAH)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION BY PETITIONERS JASON LEOPOLD AND THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**

Jeffrey Light
D.C. Bar No. 485360
1712 Eye St. NW, Suite 915
Washington, DC 20006
jeffrey@lawofficeofjeffreylight.com

*Counsel for Jason Leopold*

Katie Townsend
D.C. Bar No. 1026115
Bruce D. Brown
D.C. Bar No. 457317
THE REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org
bbrown@rcfp.org

*Counsel for the Reporters Committee for Freedom of the Press*

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... ii

Preliminary Statement ......................................................................................................... 1

Argument ............................................................................................................................. 4

   I.   Reconsideration is warranted. .................................................................................. 4

   II.   The Court erred in determining that the First Amendment right of access has no application to any of the judicial records at issue. ............................................. 4

      A.   The Court erred in determining that the First Amendment right of access does not apply to SCA Search Warrant Materials..................................................... 6

      B.   The Court's determination that an SCA search warrant is not a warrant threatens to undermine laws and procedures not directly at issue in this case. 12

      C.   The Court erred in determining that the First Amendment right of access does not apply to PR/TT or Section 2703(d) Materials. .......................................... 15

      D.   The Court erred in failing to address the public's First Amendment right of access to court dockets. .................................................................................... 17

   III.   The Opinion alters and misapplies the *Hubbard* common law analysis. ........... 18

      A.   The Court erroneously construed *Hubbard* to permit consideration of administrative burden; Hubbard provides a framework for determining whether the *content* of particular records must be sealed. ............................................ 19

      B.   The Court erred by not only considering, but by giving overriding weight to, concerns of administrative burden; Petitioners respectfully request that the Court clarify its Opinion to specify the factual findings it relied upon to determine that the public's common law right of access is overcome............. 22

Conclusion ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99 (E.D. Va. 1983) ............... 4, 22

*Ali v. Carnegie Institution of Washington*, 309 F.R.D. 77 (D.D.C. 2015).............................. 4, 18

*Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004) ..................................................... 4

*DirecTV, Inc. v. Hart*, 366 F. Supp. 2d 315 (E.D.N.C. 2004) ....................................... 4

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996).......................... 15, 19, 23

*Emory v. Secretary of Navy*, 819 F.2d 291 (D.C. Cir. 1987)....................................... 1

*F.A.A. v. Cooper*, 132 S. Ct. 1441 (2012)........................................................ 6

*\*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)......................................... 4

*Hammon v. Kempthorne*, 448 F. Supp. 2d 114 (D.D.C. 2006)......................................... 4

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)......................... 17, 24

*In re Application of N.Y. Times Co. for Access to Certain Sealed Records*, 585 F. Supp. 2d 83
   (D.D.C. 2008) ............................................................................ 16

*In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose
   Records to Gov't*, 620 F.3d 304 (3d Cir. 2010) ....................................... 9

*In re Matter of the Search of 3241 Sharp Road, Glenwood, Maryland 21738 at Attachment B*,
   Case No. 07-3839 (D. Md. filed Nov. 21, 2007) ........................................ 8

*In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325 (D.C. Cir. 1985) ................... 16

*In re Search of Info. Associated with [redacted]@gmail.com that is Stored at Premises
   Controlled by Google, Inc.*, No. 16-MJ-00757, 2017 WL 3445634 (D.D.C. July 31, 2017) 6, 10

*\*Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained by
   Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016)........................................ 6, 7, 9, 11

*Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017) ......... 18, 20

*Middlebrooks v. Godwin Corp.*, 279 F.R.D. 8 (D.D.C. 2011)........................................ 1

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ........................................ 20, 24

*\*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986)...................................... 3, 5

*Riley v. California*, 134 S. Ct. 2473 (2014) .................................................... 8

*Stanford v. Texas*, 379 U.S. 476 (1965)......................................................... 12

*Tokar v. City of Chicago,* No. 96-CV-5331, 2000 WL 1230489 (N.D. Ill. Aug. 25, 2000)......... 22

*United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016)....................................... 8

*United States v. Appelbaum* (*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*),

    707 F.3d 283 (4th Cir. 2013) ................................................................. 10, 18

*United States v. Brice*, 649 F.3d 793 (D.C. Cir. 2011) ................................................ 5

*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) .................................... 5, 11

*\*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ................................ *passim*

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993)........................................ 17, 24

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) ............................................ 8

*Wannall v. Honeywell Int'l Inc.*, 292 F.R.D. 26 (D.D.C. 2013), *aff'd sub nom. Wannall v.*

    *Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014).......................................................... 1

*Yacobo v. Achim*, No. 06-C-1425, 2008 WL 907444 (N.D. Ill. Mar. 31, 2008) ........................... 4

*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) ........................................................ 12

*Zyko v. Dep't of Defense*, 180 F. Supp. 2d 89 (D.D.C. 2001) .................................. 4, 17

## Statutes and Regulations

18 U.S.C. §§ 2701–2712............................................................................ 1, 7, 11, 16

18 U.S.C. §§ 3121–3127 ..................................................................................... 1

28 C.F.R. § 50.10 ........................................................................................... 15

42 U.S.C. § 2000aa ................................................................................... *passim*

Pub. L. No. 107-273, 116 Stat. 1758 (2002)................................................................ 7

## Rules

Fed. R. App. P. 4 ............................................................................................. 1

Fed. R. Civ. P. 59(e) ........................................................................................ 1

Fed. R. Crim. P. 41 ......................................................................................... 16

## Other Authorities

Affidavit of Reginald B. Reyes in Support of Application for Search Warrant, ECF No. 20-1,

    *Application for Search Warrant for E-Mail Account [REDACTED]@gmail.com Maintained*

    *on Computer Servers Operated by Google, Inc.*, No. 10-mj-291 (D.D.C. Nov. 7, 2011) ........ 14

Ann E. Marimow, *A Rare Peek into a Justice Department Leak Probe*, Wash. Post (May 19,

    2013), http://wapo.st/N1Qzh6............................................................................ 14

H.R. Rep. No. 99-647 (Jun. 19, 1986) ................................................................... 9

Michael Isikoff, *DOJ confirms Holder OK'd search warrant for Fox News reporter's emails*,
NBC News (May 23, 2013), https://perma.cc/7P5L-2EBM .................................................... 15

S. Rep. No. 103-402 (1994) ........................................................................................... 9

S. Rep. No. 99-541 (1986) ............................................................................................. 9

Transcript of Oral Argument, *United States v. Microsoft*, No. 17-2 (Feb. 27, 2018) .............. 7, 10

U.S. Dep't of Justice, Computer Crime and Intellectual Property Section, *Searching and Seizing
Computers and Obtaining Electronic Evidence in Criminal Investigations*, Chapter 2 (3d ed.
2009), https://perma.cc/LV7C-84W5 .................................................................................. 12

**PRELIMINARY STATEMENT**

Journalist Jason Leopold and the Reporters Committee for Freedom of the Press (the "Reporters Committee") (collectively, "Petitioners") respectfully seek reconsideration of this Court's February 26, 2018 Opinion and Order (the "Opinion" or "Op.") granting in part and denying in part their petitions to unseal certain electronic surveillance applications, orders, and related court documents, including court dockets.  *See* Pet. Unseal Records ("Pet."), ECF No. 1; Appl. to Unseal and for Other Appropriate Relief ("Intervenor's Pet."), ECF No. 18.[1]

By this action, Petitioners sought certain relief as to three categories of judicial records that are routinely filed and maintained under seal indefinitely in this District: (1) records related to search warrants issued pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712 ("SCA Search Warrant Materials"); (2) records related to court orders issued pursuant to 18 U.S.C. § 2703(d) of the SCA ("Section 2703(d) Materials"); and (3) records related to judicial authorization to use pen register and/or trap and trace ("PR/TT") devices pursuant to the Pen Register Act ("PRA"), 18 U.S.C. §§ 3121–3127 ("PR/TT Materials").  *See* Pet'rs' Suppl. Mem. Supp. Pet. ("Pet'rs' Suppl. Mem."), ECF No. 47; Proposed Order ("PO"),

---

[1] While Rule 59(e) of the Federal Rules of Civil Procedure does not explicitly provide for motions "for reconsideration," such motions are routine in federal civil practice, including in this Circuit.  *See, e.g., Emory v. Secretary of Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987) (addressing a Rule 59(e) motion to reconsider and explaining that courts "routinely construe[] papers captioned 'motion to reconsider' as a motion to alter or amend the judgment under Rule 59(e)"); *see also Middlebrooks v. Godwin Corp.*, 279 F.R.D. 8, 11 n.3 (D.D.C. 2011) ("A motion for reconsideration is generally treated as a Fed. R. Civ. P. 59(e) motion if it is filed within 28 days of entry of the challenged order . . . ."); *Wannall v. Honeywell Int'l Inc.*, 292 F.R.D. 26, 31–32 (D.D.C. 2013), *aff'd sub nom. Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014) (noting that motions to alter or amend a judgment under Rule 59(e) are "commonly known as 'motions for reconsideration'").  In accordance with Rule 59(e), as amended, this motion is filed within 28 days of the relevant Opinion and Order.  *See* Fed. R. Civ. P. 59(e); *cf.* Fed. R. App. P. 4(a)(4)(A)(iv) (stating that the time to file a notice of appeal runs from entry of an order disposing of a timely filed Rule 59 motion).

ECF No. 47-8.  Specifically, Petitioners sought limited relief related to PR/TT and Section

2703(d) matters that are currently under seal, and forward-looking relief related to all three

categories of materials.  *See* Pet'rs' Suppl. Mem.; PO.[2]  In its briefing to the Court, the U.S.

Attorney's Office for the District of Columbia (the "USAO" or "Government") focused

primarily on the retrospective relief sought by Petitioners, which it characterized as too "broad."

*See, e.g.,* Gov't Resp. Pet'rs' Suppl. Mem. Supp. Pet. ("Gov't Resp.") at 5–6, 30–31, 39, ECF

No. 51.  As to Petitioners' requested prospective relief, the Government argued it should be

denied as "moot" based on a Memorandum of Understanding that the USAO had entered into

with the Office of the Clerk of the Court (the "MOU").  Gov't Resp. at 41–43, ECF No. 51.

Among other things, the Government did not address Petitioners' legal arguments concerning

SCA Search Warrant Materials.

      In its Opinion, the Court held that the First Amendment right of access had no application

to any of the judicial records at issue, and concluded that the common law right of access, though

applicable, afforded Petitioners and the public only a limited right to certain information

concerning those judicial records on a moving-forward basis.  Op. at 31.  Petitioners urge the

Court to reconsider its Opinion, including the scope of relief granted, for the following reasons.

      First, the Court decided a key legal issue presented in this case—application of the First

Amendment right of access to the judicial records at issue—by adopting a legal argument never

asserted by the Government.  The Court determined that all the judicial records in question fail

the "experience and logic" test established by the U.S. Supreme Court in *Press-Enterprise Co. v.*

---

[2] As acknowledged in the Opinion, Petitioners ultimately elected to voluntarily request narrower relief from the Court than what is prayed for in their Petitions.  The specific relief ultimately requested by Petitioners is reflected in their Supplemental Memorandum in Support of their Petitions and concurrently filed Proposed Order, which were submitted to the Court on August 25, 2017.  *See* Pet'rs' Suppl. Mem. Supp. Pet., ECF No. 47; PO, ECF No. 47-8.

*Superior Court* (*"Press-Enterprise II"*), 478 U.S. 1, 8–9 (1986), because, the Court found, SCA search warrants, Section 7703(d) orders, and PR/TT orders are analogous to subpoenas.  *See* Op. at 35 (finding that "even SCA [search] warrants" are "unlike traditional search warrants and more akin to subpoenas").  This aspect of the Court's Opinion—which also fails to consider application of the First Amendment right of access to court dockets, in particular—could have significant consequences that go well beyond this case.  Because this aspect of the Court's ruling adopts a position never taken by the Government, this Motion is Petitioners' first full opportunity to outline its potential ramifications and to address the argument that SCA search warrants, Section 7703(d) orders, and PR/TT orders are analogous to subpoenas.

Second, with respect to the common law right of access, the Court altered the controlling test established by the D.C. Circuit in *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980) by concluding that whether the common law requires particular judicial records be made available to the public can turn on the anticipated administrative burden of providing public access.  Petitioners respectfully urge the Court to reconsider this reformulation of the common law test, which would allow for public access to judicial records to be denied based not on the content of the particular records at issue, but rather on the extent of unsealing or other relief sought in a particular case.  Petitioners also urge the Court to reconsider its application of the *Hubbard* test to the judicial records at issue here in view of the specific relief sought by Petitioners, and to clarify its Opinion to specify the factual findings upon which it bases its ruling as to the scope of relief available to Petitioners under the common law.

**ARGUMENT**

**I.      Reconsideration is warranted.**

Reconsideration is appropriate when there exists "an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotations and

citation omitted).  Manifest injustice or clear error can include "legal errors the court made,"

*Zyko v. Dep't of Defense*, 180 F. Supp. 2d 89, 91 (D.D.C. 2001), or conclusions "premised on

factual error," *Ali v. Carnegie Institution of Washington*, 309 F.R.D. 77, 83 (D.D.C. 2015) (citing

*Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)).  *See also Hammon v. Kempthorne*, 448 F.

Supp. 2d 114, 118 (D.D.C. 2006) (observing that Rule 59(e) motions "are intended to permit the

court to correct errors of fact appearing on the face of the record, or errors of law") (internal

quotations and citation omitted).  "Basing a ruling on issues not raised through the adversarial

process . . . would most likely qualify as a manifest error of law." *Yacobo v. Achim*, No. 06-C-

1425, 2008 WL 907444, at *1 (N.D. Ill. Mar. 31, 2008); *see also DirecTV, Inc. v. Hart*, 366 F.

Supp. 2d 315, 318 (E.D.N.C. 2004) (granting reconsideration where "the parties were not able to

brief and argue the issues upon which the order . . . ultimately was decided"); *Above the Belt,

Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (observing that

reconsideration is appropriate when a court "has made a decision outside the adversarial issues

presented to the Court by the parties . . .").  For each of the following reasons, reconsideration is

warranted here.

**II.     The Court erred in determining that the First Amendment right of access has no
         application to any of the judicial records at issue.**

The Opinion identifies the correct legal framework for determining whether a First

Amendment right of access applies to specific judicial proceedings or records: the two-pronged

"experience and logic" test established by the U.S. Supreme Court in *Press-Enterprise II*, 478 U.S. at 8–9.  *See* Op. at 23–24.  Under the first prong, courts consider whether the judicial procedure at issue has a tradition of openness.  *See id.* (quoting *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011)).  As this Court correctly recognized, if a "new procedure []  substitute[s] for an older one," then courts should evaluate the tradition of access to the older, analogous procedure.  Op. at 33–34 (quoting *United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997)).  Petitioners respectfully assert that the Court erred in concluding that the First Amendment presumption of access applies to "none of the materials to which the petitioners seek access—not even SCA warrants," Op. at 31, and in neglecting to make findings that address the public's First Amendment right of access to court dockets, specifically.

Reconsideration of this aspect of the Court's Opinion is warranted because the Court's reasoning departed significantly from the arguments made by the Government.  In its briefing, the Government addressed the First Amendment right of access *only* with respect to Section 2703(d) and PR/TT Materials, Gov't Resp. at 24; at no point did the Government take the position that the First Amendment right of access has no application to SCA Search Warrant Materials.  Moreover, while the Government argued that PR/TT and Section 2703(d) Materials should be treated as analogous to unexecuted search warrant materials and/or grand jury materials for purposes of the "experience" prong of the *Press-Enterprise II* analysis, *see* Gov't Resp. at 27–30, the Court concluded that they were, instead, analogous to subpoena-related materials, Op. at 35–40.  And, while the Government argued that the Court should identify the appropriate analogous procedure by looking to the "process for obtaining" PR/TT and [Section] 2703(d) orders"—specifically the fact that the "process for obtaining" them is *ex parte*, *in camera*, and often accompanied by nondisclosure orders, Gov't Resp. at 27–30—the Court based

its analogy to subpoenas on the "method of execution and opportunity for pre-disclosure challenge," Op. at 35.  Accordingly, this Motion is Petitioners' first opportunity to fully address the reasoning relied on by the Court.

### A.     The Court erred in determining that the First Amendment right of access does not apply to SCA Search Warrant Materials.

Petitioners respectfully request that the Court reconsider its conclusion that SCA search warrants "are not search warrants at all," and are not even analogous to search warrants, but are, instead, analogous to subpoenas.  Op. at 39 (quoting *In re Search of Info. Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc.* ("*Google*"), No. 16-MJ-00757, 2017 WL 3445634, at *18 (D.D.C. July 31, 2017) (Howell, J.)).  Petitioners' briefing relied on the premise—never disputed by the Government—that SCA search warrants are a species of Rule 41 search warrants; they are, at a minimum, analogous to conventional search warrants authorizing a physical search and seizure.

"[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached" to that term.  *Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.* (*"Microsoft"*), 829 F.3d 197, 212 (2d Cir. 2016) (quoting *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1449 (2012)) (internal quotation marks and citation omitted).  The term "warrant" carries with it the understanding that the public has a First Amendment right of access to records related to a warrant once the related investigation has come to an end.  *See* Op. at 34 (collecting cases that recognize that "the public has indeed had access to post-execution search warrant materials" historically).  Yet this Court found that the term "warrant" in the SCA does not mean "warrant" because search warrants issued pursuant to the SCA differ from conventional search warrants in two respects: "their method of execution and opportunity for pre-disclosure challenge."  Op. at 35.

The Opinion correctly observes that an SCA search warrant typically "requires a provider's 'disclosure . . . of the contents of [certain] communication[s].'"  Op. at 37 (quoting 18 U.S.C. § 2703(a)).  That typical method of execution, however, does not establish that an SCA search warrant is more akin to a subpoena than to a conventional, brick-and-mortar search warrant.  Like SCA search warrants, brick-and-mortar search warrants may also require third-party compliance.  Indeed, "the law of warrants has long contemplated that a private party may be required to participate in the lawful search or seizure of items belonging to the target of an investigation."  *Microsoft*, 829 F.3d at 214.

The fact that a government agent's physical presence is more often involved in the execution of a traditional search warrant than in the execution of an SCA search warrant does not change the analysis.  An agent's physical presence is not precluded in the execution of an SCA search warrant.  *See* 21st Century Dep't of Justice Appropriations Authorization Act, Pub. L. No. 107-273 § 11010, 116 Stat. 1758 (2002) (Congress clarifying in 2002, well after enactment of the SCA, that the presence of an officer is not *required* for an SCA search warrant to be valid); *see also United States v. Microsoft*, No. 17-2, Tr. at 4 l. 12–17 (Feb. 27, 2018) (Justice Sotomayor observing during oral argument that the SCA "provides for a warrant that presumably would let the government" enter a service provider's facility and conduct a physical search).

Nor does the fact that a third-party data provider may challenge an SCA search warrant pre-disclosure change the analysis.  Typically, the recipient of an SCA warrant—*i.e.*, the data provider—is the only party that has an opportunity for pre-disclosure challenge.  This Court recognized as much.  Op. at 32–33 (noting that the PRA imposes default non-disclosure obligations and that, "in practice, the government has always been able to . . . delay or preclude notification to a subscriber or customer of an SCA warrant . . . .") (internal quotations and

citations omitted).  The records obtained via an SCA warrant, however, belong to the subscriber. *See, e.g., United States v. Warshak*, 631 F.3d 266, 286 (6th Cir. 2010) (finding that e-mails were communications between two subscribers and the provider was merely the "intermediary").  Because it is the records of the subscriber that are the target of the search, the typical SCA search warrant functions like a "traditional search warrant" in that it "provides the target neither prior notice of the search and/or seizure nor *ex ante* opportunity to quash."  Op. at 37.[3]

Like a physical search requiring a warrant, the government's collection of the content of private communications in electronic form constitutes a search.  Though "the framers were concerned with the protection of physical rather than virtual correspondence," when the government copies and searches private e-mail content, that "pretty clearly . . . qualif[ies] as exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment."  *United States v. Ackerman*, 831 F.3d 1292, 1307–08 (10th Cir. 2016) (Gorsuch, J.); *see also Riley v. California*, 134 S. Ct. 2473, 2493–95 (2014) (holding that a warrant is required to search a cell phone even when it is seized incident to arrest); *Warshak*, 631 F.3d at 288 (holding that the Fourth Amendment requires the government to obtain a warrant to obtain the contents of electronic communications stored for more than six months).[4]

_____

[3] As discussed in more detail below, one important exception to the general lack of notice given to the target of a warrant arises in the context of warrants for newsgathering materials.  The Privacy Protection Act of 1980 (the "PPA"), 42 U.S.C. § 2000aa, requires the government to provide members of the news media notice and an opportunity to challenge such warrants except in unusual circumstances.

[4] The government appears, at times, to use conventional search warrants and SCA search warrants interchangeably.  For instance, records unsealed by the Reporters Committee in a separate matter illustrate that government agents used non-SCA search warrants to seize, during a physical search, "computer and electronic records, documents, and materials," "electronic information or data," and "correspondence, emails, documents, calendar or diary entries, electronic files, contact information, or data of any kind which reflect or relate to any communications or contacts . . . ."  *In re Matter of the Search of 3241 Sharp Road, Glenwood, Maryland 21738 at Attachment B*, Case No. 07-3839 (D. Md. filed Nov. 21, 2007).

Moreover, the legislative history of the SCA demonstrates that Congress had in mind conventional search warrants when it used the term "warrant" in the SCA.  *See, e.g.,* H.R. Rep. No. 99-647, at 68 (Jun. 19, 1986) ("The Committee required the government to obtain a search warrant because it concluded that the contents of a message in storage [for less than 180 days] were protected by the Fourth Amendment.").  In enacting the SCA, Congress intended to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't* ("*In re Application*"), 620 F.3d 304, 313 (3d Cir. 2010) (quoting S. Rep. No. 99-541, at 1 (1986)); *see also Microsoft*, 829 F.3d at 219 (observing that "Congress sought to ensure that the protections traditionally afforded by the Fourth Amendment extended to the electronic forum") (citing H.R. Rep. No. 99-647, at 19).  In short, Congress intended SCA search warrants to function as traditional warrants. *See In re Application*, 620 F.3d at 314 (recognizing that the SCA's legislative history supports that the standard for access to electronic data under Section 2703(d) "is a standard higher than a subpoena") (quoting S. Rep. No. 103-402, at 31 (1994)).

The question of whether an SCA search warrant is (or is not) akin to a conventional search warrant was addressed recently when the government attempted to use an SCA search warrant to obtain records stored overseas.  The Second Circuit—the only federal court of appeals to have addressed the issue—rejected the notion that SCA search warrants are analogous to subpoenas, finding in no uncertain terms that "[w]arrants and subpoenas are, and have long been, distinct legal instruments." *Microsoft*, 829 F.3d at 214.  It further found "no reason to believe that Congress intended . . . to replace the traditional warrant with a novel instrument." *Id.* at 215.

Though some district courts, including this one, have declined to follow the Second Circuit's analysis, *see Google*, 2017 WL 3445634, at *5 (collecting cases), the D.C. Circuit has not addressed the issue, and Petitioners respectfully urge the Court to follow the Second Circuit's analysis here.[5]

Finally, the Opinion suggests, in the alternative, that analogizing SCA search warrants to another law enforcement procedure may not be appropriate because the SCA is not sufficiently "new" to be "evaluated by the tradition of access to" an older procedure, such as search warrants. Op. at 34–35.  Just five years ago, the Fourth Circuit also addressed the age of the SCA in evaluating whether the First Amendment right of access applied to Section 2703(d) materials in the context of an ongoing grand jury investigation.  *United States v. Appelbaum* (*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*), 707 F.3d 283, 291 (4th Cir. 2013).  Though it did not consider the First Amendment's application to SCA search warrant materials, the Fourth Circuit concluded that the First Amendment right of access did not apply to Section 2703(d) materials because, *inter alia*, the SCA was *too new* to have an applicable "tradition of access." *Id.*; *see also* Gov't Resp. at 27 (citing *Appelbaum* for the argument that the First Amendment right does not apply to Section 2703(d) and PR/TT materials).  It cannot be the case, however, that the SCA is both too old *and* too new for the First Amendment analysis to ever apply to any of the procedures it authorizes.  Indeed, the age of the SCA has no bearing on whether the right

_____

[5] The U.S. Supreme Court granted *certiorari* to review the Second Circuit's decision in *Microsoft*; its decision in that matter is pending.  During oral argument on February 27, 2018, several Justices raised questions about the proper interpretation of the word "warrant" in the SCA.  Justice Gorsuch, for example, pointed out that "the statute uses the word 'warrant,'" and "elsewhere in the statute Congress used the word 'subpoenas'. . . . [s]o we know it knew the difference."  *Microsoft*, No. 17-2 (Feb. 27, 2018), at 17 l. 13, 19–23; *see also* Tr. at 24 l. 22–25, 25 l. 1–18, 38 l. 13–16.

of access applies; the key question is whether Congress intended an SCA search warrant to function as "[a] new procedure that substituted for an older one." *El-Sayegh*, 131 F.3d at 161.

Here, to the extent no analogy is necessary with respect to evaluating the tradition of openness applicable to SCA search warrants for purposes of the *Press-Enterprise II* analysis, it is because SCA search warrants issued by federal courts *are* Rule 41 search warrants under the statute's plain language.  18 U.S.C. § 2703(a) (stating that a government entity may require the disclosure of the contents of a wire or electronic communication under this provision "only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction"); *see also Microsoft*, 829 F.3d at 217 (observing that SCA warrants "must issue under the Federal Rules of Criminal Procedure, whose Rule 41 is undergirded by the Constitution's protections of citizens' privacy against unlawful searches and seizures").

In sum, the Court's determination that there is no tradition of access applicable to SCA search warrants because SCA search warrants are akin to subpoenas is an error of law. Petitioners respectfully request reconsideration of that determination.[6]  In addition, though the Court did not reach the "logic" prong of the *Press-Enterprise II* test, if the Court grants this motion for reconsideration and reaches the "logic" prong, Petitioners urge the Court to find that prong is satisfied for the reasons set forth in its prior briefing.  *See* Pet'rs' Suppl. Mem. at 21–24.

---

[6] SCA search warrants are unlike subpoenas for the reasons set forth above; they are particularly unlike grand jury subpoenas.  *Contra* Op. at 39 ("To the extent SCA warrants are analogous to any longstanding procedures used by the government to collect evidence in criminal investigations, they are analogous to grand jury subpoenas . . . ").  As set forth in Petitioners' prior briefing, grand jury secrecy is a unique exception to the presumption of openness of judicial proceedings and records that flows from the special, constitutionally recognized historical role of grand juries; such unique secrecy is justified, in part, by the fact that grand jurors are ordinary citizens who guard against prosecutorial overreach.  Pet'rs' Suppl. Mem. at 26–29, ECF No. 47; Pet'rs' Reply Gov't Resp. at 12–15, ECF No. 52.

**B.      The Court's determination that an SCA search warrant is not a warrant threatens to undermine laws and procedures not directly at issue in this case.**

The Court's determination that SCA search warrants are akin to subpoenas implicates an entire body of statutory and other legal protections designed to shield the press from government intrusion into newsgathering activities. These protections often rely upon the distinction between warrants and subpoenas—terms of art that Congress has never used interchangeably. This Court's Opinion, which holds that an SCA search warrant is not a warrant, and is either a subpoena or some novel procedure akin to a subpoena, introduces troubling uncertainty into a realm of well-established existing legal protections for the news media.

Legal protections for the press against searches and seizures include those afforded by the First and Fourth Amendments. Where law enforcement seeks to search and seize journalistic work product, for instance, the First Amendment requires that Fourth Amendment protections be applied with "scrupulous exactitude." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (holding, under the particular facts of that case, that the Fourth Amendment's warrant requirements were sufficiently protective of the First Amendment rights implicated in a newsroom search) (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

The Privacy Protection Act of 1980 (the "PPA"), 42 U.S.C. § 2000aa, provides additional statutory protection for newsgathering material from search and seizure, beyond those protections afforded by the First and Fourth Amendments.[7] It was enacted in response to the U.S. Supreme Court's decision in *Zurcher*, 436 U.S. 547, in which police executed a search warrant on the newsroom of the *Stanford Daily* newspaper. *See* S. Rep. No. 96-874, at 4 (1980),

---

[7] *See* U.S. Dep't of Justice, Computer Crime and Intellectual Property Section, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations*, Chapter 2 § F(1) (3d ed. 2009), https://perma.cc/LV7C-84W5 (citing to the PPA's legislative history and noting that "[t]he statute was intended to grant publishers certain statutory rights to discourage law enforcement officers from targeting publishers simply because they often gathered 'mere evidence' of crime").

reprinted in 1980 U.S.C.C.A.N. 3950, 3950 (1980).  In enacting the PPA, Congress distinguished

between a "warrant" and a "subpoena" in providing heightened protections against government

invasions into the most sensitive journalistic material.

Specifically, the PPA prohibits the search and seizure of "work product" by warrant

except in rare instances.[8]  42 U.S.C. § 2000aa(a) (making it unlawful "to search for or seize any

work product materials possessed by a person reasonably believed to have a purpose to

disseminate to the public a newspaper, book, broadcast, or other similar form of public

communication"); *see also* S. Rep. No. 96-874, at 9, 1980 U.S.C.C.A.N. at 3956 ("When the

materials sought consist of work product, a general no-search rule applies.").  The PPA

separately enacts a "subpoena-first" rule applicable to "documentary materials."[9]  42 U.S.C.

§ 2000aa(b)(3)–(4) (explaining that the general prohibition on search and seizure of documentary

materials may not apply under certain circumstances when the documents cannot be obtained by

a subpoena *duces tecum*); S. Rep. No. 96-874, at 9, 1980 U.S.C.C.A.N. at 3956 ("When the

materials sought constitute documentary materials other than work product, a subpoena-first rule

is generally applicable.").  In narrow circumstances where materials cannot be obtained by

subpoena and delay would "threaten the interests of justice," the PPA allows the government to

utilize a search warrant *only* if it provides an "adequate opportunity" to contest the warrant in

---

[8] The PPA defines "work product" materials to include materials "prepared, produced, authored, or created" in anticipation of dissemination to the public and which reflect the preparing party's "mental impressions, conclusions, opinions, or theories."  42 U.S.C. § 2000aa-7(b).

[9] The statute defines "documentary materials" to include "materials upon which information is recorded"—such as photographs, video, audio recordings, and printed materials—that are gathered in anticipation of publication, but which are not created in anticipation of publication and do not reflect the author's mental impressions.  42 U.S.C. § 2000aa-7(a).

court.  42 U.S.C. § 2000aa(c).[10]  The Court's Opinion, which concludes that a defining feature of a search warrant was the lack of an opportunity for pre-disclosure challenge by the target of the investigation, conflicts with this provision, which ensures that certain warrant targets will have an opportunity to bring a pre-disclosure challenge.  *See also* Part II(A), *supra*.

The Court's Opinion gives rise to uncertainty with respect to the PPA's application to SCA search warrants, which can be used by the government to obtain the contents of communications between reporters and their sources.  The government has previously assumed that SCA search warrants are warrants for purposes of the PPA.  For instance, in 2010, the government investigated an alleged unauthorized disclosure of classified information about North Korea to Fox News journalist James Rosen.  *See* Ann E. Marimow, *A Rare Peek into a Justice Department Leak Probe*, Wash. Post (May 19, 2013), http://wapo.st/N1Qzh6.  In support of an application for an SCA search warrant for Mr. Rosen's e-mail under Rule 41, the government submitted an affidavit invoking the PPA.  *See* Affidavit of Reginald B. Reyes in Support of Application for Search Warrant, ECF No. 20-1, *Application for Search Warrant for E-Mail Account [REDACTED]@gmail.com Maintained on Computer Servers Operated by Google, Inc.*, No. 10-mj-291 ¶ 3 (D.D.C. Nov. 7, 2011).  Indeed, the government evaded the PPA's general prohibition against the use of warrants to obtain journalists' work product by alleging that the PPA's narrow "suspect" exception applied because Mr. Rosen was suspected of violating the Espionage Act as an "aider and abettor and/or co-conspirator."  *Id*. ¶¶ 5, 8.

Details of Mr. Rosen's case became public after the judicial records related to that SCA search warrant, including the supporting affidavit, were unsealed.  His case—in addition to

---

[10] The PPA also contains a narrow "suspect" exception that allows the government to proceed by warrant if there is probable cause to believe the person possessing the materials committed a crime and the materials relate to that crime.  42 U.S.C. § 2000aa(a)(1), (b)(1).

underscoring the public interest in access to SCA Search Warrant Materials—demonstrates that

the government has assumed application of the PPA's warrant provisions to SCA search

warrants in the past.  *See* Michael Isikoff, *DOJ confirms Holder OK'd search warrant for Fox*

*News reporter's emails*, NBC News (May 23, 2013), https://perma.cc/7P5L-2EBM (reporting

that the government stated that the warrant was intended to comply with the PPA).

Like the PPA, the Justice Department's internal "[p]olicy regarding obtaining

information from, or records of, members of the news media" also distinguishes between

"subpoenas," 28 C.F.R. § 50.10(b)(2)(i), and "warrants," and assumes SCA search warrants are

akin to other search warrants, *see* 28 C.F.R. § 50.10(b)(2)(ii).  The Justice Department's policy

contemplates prior notice to the news media of search warrants.  28 C.F.R. § 50.10(e)(ii)(3)

(when a "warrant to obtain communications records or business records of a member of the news

media" has been authorized without prior notice to the news media, the government "shall

provide to the affected member of the news media notice of the order or warrant" within 45 days,

absent specific exceptions).  And it makes clear that SCA search warrants fall within the scope of

the PPA.  28 C.F.R. § 50.10(d)(4) & (5) (discussing the PPA's application to the § 50.10

policies).

C.   **The Court erred in determining that the First Amendment right of access**
     **does not apply to PR/TT or Section 2703(d) Materials.**

The Court concluded that PR/TT and Section 2703(d) orders cannot be analogized to

"traditional search warrants" because they differ "in both execution and applicable legal

standard."  Op. at 40.  As an initial matter, Section 2703(d) and PR/TT orders are court orders to

which the public right of access has traditionally applied.  *E.E.O.C. v. Nat'l Children's Ctr., Inc.*

("*Nat'l Children's Ctr.*"), 98 F.3d 1406, 1409 (D.C. Cir. 1996).  Moreover, for the reasons stated

above, that the "method of execution" of PR/TT and Section 2703(d) orders involves third-

parties does not functionally distinguish them from search warrants.  And the applicable legal standard that must be met for the Government to obtain authorization to use a PR/TT device or to obtain a Section 2703(d) order from a court does not speak to "whether information of the sort at issue here"—court orders and other judicial records relating to government requests for judicial authorization to seize electronic communications records—have been "traditionally open to public scrutiny." *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1337 (D.C. Cir. 1985).  The "experience" inquiry is a "functional rather than classificational one," *id.*, and because PR/TT and Section 2703(d) materials are judicial records that are *functionally* equivalent to search warrant materials in closed criminal matters they satisfy the "experience" prong of the First Amendment analysis.[11]

The applicable legal standard for PR/TT and Section 2703(d) materials is highly relevant to the "logic" prong of the *Press-Enterprise II* analysis, and counsels in favor of access.  The "logic" inquiry asks "whether public access plays a significant positive role in the functioning of the criminal justice system." *In re Application of N.Y. Times Co. for Access to Certain Sealed Records*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008).  Courts have long recognized the importance of public access where it facilitates public oversight not only of the courts, but of prosecutors as well. *Id.*  Because the legal standard that the Government must meet to obtain a court order under Section 2703(d) or to obtain judicial authorization to use a PR/TT device is relatively lax—as the Opinion notes, Op. at 26, 29, 40—public oversight is particularly valuable. *See, e.g.,* Pet'rs' Suppl. Mem. at 22–24.

---

[11] Notably, the Court did not address the applicable legal standard in determining that SCA search warrants are not functionally equivalent to traditional search warrants.  The legal standard for SCA search warrants and traditional search warrants is the same. *See* 18 U.S.C. § 2703(a), (b)(1)(A), (c)(1)(A) (explaining that an SCA warrant is issued using the procedures described in the Federal Rules of Criminal Procedure (or state warrant procedures)); Fed. R. Crim. P. 41(d) (explaining that the procedure for obtaining a warrant includes a probable cause requirement).

**D.      The Court erred in failing to address the public's First Amendment right of access to court dockets.**

Petitioners respectfully submit that the Court erred in failing to give separate consideration to the public's distinct First Amendment right of access to court dockets.  The Opinion conflates its analysis with respect to dockets and docket information sought by Petitioners with its analysis concerning public access to underlying SCA Search Warrant, Section 2703(d), and PR/TT applications, orders, and other judicial records.  As set forth in detail in Petitioners' briefing, the public has an independent First Amendment right of access to court dockets and docket information.  *See* Pet'rs' Suppl. Mem. at 10; Mem. Supp. Pet. Unseal of the Reporters Comm. for Freedom of the Press ("RCFP Mem.") at 13–15 (collecting cases), ECF No. 16-1; *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004) (holding that the public has "a qualified First Amendment right of access" to court docket sheets).  It is presumptively unconstitutional for a court to maintain a "dual-docketing system" whereby certain dockets and docket information are "completely hid[den] from public view."  *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993).

In assessing the application of the First Amendment right of access to the judicial records at issue in this case, the Court did not address the public's independent right of access to dockets or docket information.  The Opinion focuses instead on whether SCA search warrants, Section 2703(d), and PR/TT orders themselves satisfy the "experience" prong of the *Press-Enterprise II* test.  *See, e.g.*, Op. at 19.  Yet the "experience" prong is satisfied for court dockets and docket information because court dockets have historically been open to the public.  *See Pellegrino*, 380 F.3d at 94 ("Experience casts an affirming eye on the openness of docket sheets and their historical counterparts.").  No analogy is necessary.  This legal error warrants this Court's reconsideration of its Opinion.  *Zyko*, 180 F. Supp. 2d at 91.

In addition, the Court erred as a factual matter when it found that Petitioners did not "from the outset" seek access to "real-time docket information" on a forward-looking basis. Op. at 21 (stating that "the petitioners here have from the outset limited their request to closed investigations," which would necessarily preclude real-time docket information). While it is accurate that both Petitioners Leopold and the Reporters Committee limited all other requested relief to SCA Search Warrant, Section 2703(d), and PR/TT matters connected to closed criminal investigations, the Reporters Committee, from the outset, sought public dockets for *all* SCA Search Warrant, Section 2703(d), and PR/TT matters, as set forth in its petition to unseal. *See* RCFP Mem. at 13–15; Unopposed Mot. of the Reporters Comm. for Freedom of the Press to Intervene at 1, ECF No. 16; App. of the Reporters Comm. for Freedom of the Press to Unseal and for Other Appropriate Relief at 1, 7, ECF No. 18. To the extent that the Court premised its denial of Petitioners' request for access to dockets and docket information on this "factual error," *Ali*, 309 F.R.D. at 83 (internal citation omitted), reconsideration is also warranted on that basis.

III.    **The Opinion alters and misapplies the *Hubbard* common law analysis.**

The Court correctly found that all of the electronic surveillance materials for which Petitioners sought relief are judicial records to which the common law presumption of access applies. *See* Op. at 42 (citing *Appelbaum*, 707 F.3d at 291). And, as the Court acknowledged, when this presumption applies, it can only be overcome by a showing that "competing interests" compel a "conclu[sion] that justice [] requires" ongoing secrecy. Op. at 42 (quoting *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)). In concluding that the common law presumption of access has been overcome, a court must make specific, on-the-record factual findings demonstrating that the public's interest in access is outweighed by countervailing interests. Here, the Court held that the Government overcame the common law

presumption of access—with limited exception—because the relief sought by Petitioners would

be administratively burdensome.  Petitioners respectfully request reconsideration of that ruling.

> **A.    The Court erroneously construed *Hubbard* to permit consideration of administrative burden; Hubbard provides a framework for determining whether the *content* of particular records must be sealed.**

Under the D.C. Circuit's decision in *Hubbard*, courts within this Circuit consider six

enumerated factors when balancing the public's common law right of access against competing

interests.  *See Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22).  The

Opinion reads *Hubbard* as permitting courts to also consider "particularized privacy or other

interests" in addition to the six "generalized" factors identified by the D.C. Circuit, and

concludes that administrative burden is such a "particularized privacy or other interest"—an

argument not made by the Government.[12]  Op. at 12 (citing *Hubbard*, 650 F.2d at 323).

Petitioners respectfully contend that the Court misconstrued *Hubbard* by interpreting its

"particularized privacy or other interests" language as license for courts to not only consider, but

to give overriding weight to, concerns that it would be administratively burdensome to provide

the public access to judicial records to which the common law right applies.  *Hubbard* and its

progeny make clear that to the extent courts can consider interests beyond the six enumerated

factors identified by the D.C. Circuit in *Hubbard*, those interests must be connected to the

*content* of the records at issue.

---

[12]   The Government argued that the common law test should not apply at all because the relevant PRA and SCA provisions contemplate sealing and, according to the Government, supersede the public's common law right of access.  Gov't Resp. at 32–33.  Petitioners addressed this argument in their prior briefing.  *See* Pet'rs' Reply to Gov't Resp. to Pet'rs' Second Suppl. Mem. at 15–18, ECF No. 52.  Though the Government throughout this litigation attempted to characterize all the relief sought by Petitioners as overly broad and burdensome, its only mention of administrative burden with respect to any of its legal arguments was in the context of an attempt to style this action as one about the scope of Local R. Crim. P. 57.6, rather than Petitioners' First Amendment and common law rights of access.  *See* Gov't Resp. at 35–39.

19

The common law creates a strong presumption of public access to judicial records that can only be overcome with specific, on-the-record findings demonstrating that harm would result from unsealing those particular records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978). *Hubbard* makes clear that the countervailing interests sought to be protected by sealing in a given case must be connected to the contents of the specific records at issue. *See Hubbard*, 650 F.2d at 323 n.116 (explaining that the "potential for prejudice inherent in the documents' release . . . must be assessed with specific reference to the documents' contents"); *Metlife*, 865 F.3d at 675–76 (where nearly two thousand sealed records were at issue, instructing the district court to "[a]pply *Hubbard* to the records in this case," because the district court was "best suited to conduct that analysis given its considerable familiarity with those records"). Indeed, administrative burden may be asserted in *every* case in which a member of the public seeks to unseal records to which the common law right of access applies, yet no other court in this Circuit has ever considered such burden to be a factor under *Hubbard*.

Treating administrative burden as a *Hubbard* factor would make the public's ability to obtain access to judicial records dependent not on the content of the particular records at issue, but rather on the type (or extent) of relief sought in a particular case. Categorical nondisclosure of judicial records based on the type of relief sought is unsupported by case law governing the application of the common law right in any federal jurisdiction. *Cf. Metlife*, 865 F.3d at 671 (noting that the standard in every circuit for ruling on motions to unseal is a "noncategorical balancing test[]"). Yet, here, the Court's conclusion that the public's common law right of access had been overcome in its entirety with respect Petitioners' requested retrospective relief, and that the common law affords only limited relief on a moving forward basis, turned on what the Court saw to be the administrative burden of facilitating public access. Op. at 41, 44.

Injecting administrative burden into the *Hubbard* analysis is not only inconsistent with how courts have applied the common law right of access, it also has significant practical implications that both disadvantage members of the public seeking to assert their right of access to judicial records and run counter to any goal of conserving judicial resources.  If courts can deny the public access to judicial records that are presumptively open under the common law based upon the type or extent of access that is sought in a given case, it will shift the burden to members of the public to attempt to identify the exact right amount of access that a court will not deem too administratively burdensome for the Government.[13]  It will also incentivize future petitioners to file multiple petitions, each seeking a different, limited form of access, in the hopes of satisfying what is an entirely unclear standard for determining what level of public access to judicial records is low-burden enough to be available under the common law.

This matter illustrates problems inherent in making the extent of access available to the public under the common law dependent on the type or extent of relief requested by a member of the public.  Here, Petitioners worked in good faith to voluntarily narrow the scope of their requested retrospective relief to minimize any anticipated administrative burden on the Government notwithstanding their legal position that they had no obligation to seek lesser relief under either the First Amendment or common law than what is prayed for in their Petitions.  Yet even despite those efforts on the part of Petitioners, the Opinion inaccurately styles Petitioners' nuanced request for limited relief as to currently sealed Section 2703(d) and PR/TT matters as "across-the-board" or giving rise to an "all-or-nothing situation," and concludes that the specific retrospective relief sought by Petitioners—which did not include broad unsealing of sealed

---

[13] Indeed, because administrative burden is conceivably a factor in any case where a member of the public seeks access to sealed judicial records, a rule allowing administrative burden to overcome the public's common law right of access turns the common law's strong presumption *in favor* of public access on its head.

Section 2703(d) and PR/TT Materials, *see* PO at 2, 4–5—to be too burdensome to be available

under the common law.  *See* Op at 59, 61 (citation omitted).  In so concluding, the Court

considered what it found to be the administrative burden on the Government in the context of

disclosure of certain information from all sealed PR/TT matters from a nine-year period.  It is

unclear whether the Court would have viewed the burden to have been sufficiently minimal if,

for example, it had separately considered Petitioners' request for more limited information from

all PR/TT matters from a single year, which it did not.  *See* Pet'rs' Suppl. Mem. at 37 (requesting

case numbers and associated docket information for all PR/TT matters filed by the Government

in 2017); Proposed Order at 2.[14]

> **B.      The Court erred by not only considering, but by giving overriding weight to, concerns of administrative burden; Petitioners respectfully request that the Court clarify its Opinion to specify the factual findings it relied upon to determine that the public's common law right of access is overcome.**

The Court was required to make on-the-record factual findings in support of its

determination that the Government made the requisite showing to overcome the public's

presumptive right of access to all of the SCA Search Warrant, Section 2703(d), and PR/TT

Materials at issue in this case.  *See Hubbard*, 650 F.2d at 317.  Even if this Court maintains that

consideration of administrative burden is proper under *Hubbard*, Petitioners urge the Court to

reconsider its determination that administrative burden, alone, is sufficient to outweigh the

---

[14] To the extent the Opinion relies upon a misapprehension of the nature of any of the specific relief sought by Petitioners, such factual errors make a motion to reconsider appropriate.  *See, e.g., Above the Belt, Inc.*, 99 F.R.D. at 101 (stating that a motion to reconsider would be appropriate where the court "has patently misunderstood a party"); *Tokar v. City of Chicago,* No. 96-CV-5331, 2000 WL 1230489, at *1 (N.D. Ill. Aug. 25, 2000) (granting reconsideration where the court had "misapprehended a critical fact").  That appears to be the case here.  Among other things, Petitioners also sought narrow retrospective relief requiring the Government to comply with a previous, unfulfilled agreement it had made to unseal certain PR/TT materials.  *See* Pet'rs' Suppl. Mem. at 37 (seeking an order unsealing the PR/TT materials for matters in which the Government's application was denied and/or in which a substantive opinion was issued by the Court); Proposed Order at 4.  That requested relief was denied.

common law presumption of access to judicial records, and to clarify its Opinion to specify the factual findings upon which it based its ruling that the common law right of access is overcome.

Petitioners respectfully contend that the Court erred as a matter of law in concluding that one factor—administrative burden—could outweigh all other *Hubbard* factors, even where the most important *Hubbard* factor favors disclosure.  The D.C. Circuit has made clear that the "single most important element" in the *Hubbard* analysis is the purpose for which the documents at issue were introduced.  *Hubbard*, 650 F.2d at 321.  The D.C. Circuit determined in *Hubbard* that the common law presumption of access was overcome with respect to records that were not described or expressly relied upon by the judge.  *Id*.  Here, the judicial records at issue are court orders—"the quintessential business of the public's institutions"—applications, affidavits, and related documents filed by the Government that are indisputably relied upon by courts.  *Nat'l Children's Ctr.*, 98 F.3d at 1409.  Accordingly, here, the most important *Hubbard* factor weighs heavily in favor of disclosure.

In addition, the public's interest in accessing the SCA Search Warrant, Section 2703(d), and PR/TT Materials is a factor weighing in favor of the relief sought by Petitioners, as the Opinion itself acknowledges, *see* Op. at 45.  As set forth in Petitioners' prior briefing, and the detailed declarations submitted therewith, access to the judicial documents at issue would shed light on a number of areas of significant public interest.  *See* Pet'rs' Suppl. Mem. at 17–20. Access would inform important, ongoing debates about civil liberties in the digital era; it would "keep[] the public's understanding up-to-date with actual government practices and enabl[e] the propriety of those practices to be intelligently debated."  Supplemental Declaration of Riana Pfefferkorn, ECF No. 47-3, ¶ 11.  That the Court found Petitioners' "points" with respect to public interest to be "well-taken," Op. at 45, makes it apparent that the Court treated a single

23

competing interest in continued sealing—administrative burden—as dispositive, despite the strong public interest in access to these materials. *Cf.* Op. at 59–60, 67 (citing declarations submitted by Petitioners, which set forth the public interest in access in detail, only in the context of denying Petitioners' requested relief as overly broad and detrimental to ongoing law enforcement investigations).

By allowing the novel factor of administrative burden to singly outweigh the established *Hubbard* factors, the Court's Opinion conflicts with cases where courts have corrected systemic denials of the public's rights of access to judicial records notwithstanding associated administrative burden. *See Pellegrino*, 380 F.3d at 86, 102 (finding a constitutional right of access to certain docket sheets notwithstanding government concerns about the administrative burden of providing access to information about "what appeared to be thousands of cases" over the course of 38 years); *see also Valenti*, 987 F.2d at 715 (rejecting the government's argument "that this court should avoid binding the district court to any formal procedure that is unduly burdensome" when requiring that dockets be publicly available).  Indeed, the Court's recognition of administrative burden as a new *Hubbard* factor will allow violations of the public's common law right of access so long as those violations are broad and systemic enough to be administratively challenging to remedy—an outcome that cannot be reconciled with the common law's strong presumption of public access to judicial records. *See Nixon*, 435 U.S. at 597–98.

The Opinion marks the first time that a court has found that the administrative burden of unsealing is an appropriate factor to consider when balancing the public's interest in disclosure against competing interest under *Hubbard*.  The Opinion does not cite to any other case recognizing administrative burden as a relevant interest under *Hubbard*, even though administrative burden is conceivably present in every case where a member of the public seeks

access to sealed judicial records.  Should the Court decline to reconsider its novel reading of

*Hubbard*, and its application of the *Hubbard* test to the judicial records at issue here, Petitioners

respectfully request that the Court clarify its Order to set forth the specific factual findings upon

which it bases its conclusion that administrative burden to the Government outweighs the

public's common law right of access with respect to the specific relief sought by Petitioners as to

SCA Search Warrant, Section 2703(d), and PR/TT matters.  Such clarification will, at a

minimum, guide future petitioners seeking access to judicial records under the common law.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court reconsider and

amend its Opinion of February 26, 2018.

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
D.C. Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion for reconsideration and accompanying

memorandum were filed with the Clerk of Court using the CM/ECF system, and courtesy copies

served on counsel for the following via email:

**Leslie Ann Gerardo**
United States Attorney's Office
Special Proceedings Division
555 Fourth Street, N.W.
Washington, DC 20530
(202)252-7578
Email: Leslie.Gerardo@usdoj.gov

**Pamela Stever Satterfield**
United States Attorney's Office for the District
of Columbia
Special Proceedings Division
555 4th Street, NW
Washington, DC 20530
(202) 252-7578
Email: pamela.satterfield@usdoj.gov

**Margaret J. Chriss**
United States Attorney's Office
Special Proceedings Section
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7555
Fax: (202) 514-8784
Email: margaret.chriss@usdoj.gov

This the 23rd day of March, 2018.

*/s Katie Townsend*
Katie Townsend