**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE : | |
| APPLICATION OF JASON LEOPOLD : | |
| TO UNSEAL CERTAIN : | **Case No. 1:13-mc-00712-BAH** |
| ELECTRONIC SURVEILLANCE : | |
| APPLICATIONS AND ORDERS : | |

**GOVERNMENT'S OPPOSITION TO**
**PETITIONERS' MOTION FOR RECONSIDERATION**

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, respectfully submits this Opposition to the petitioners' motion for reconsideration.

For the reasons set forth below, the Court should summarily deny petitioners' motion.

## I.    BACKGROUND

On February 26, 2018, the Court issued a Memorandum Opinion ("Opinion") granting in

part, denying in part, petitioners' request to unseal certain documents filed by the U.S. Attorney's

Office for the District of Columbia ("USAO-DC") pertaining to pen register and/or trap and trace

devices ("PR/TT"); warrants issued pursuant to the Stored Communications Act, 18 U.S.C. §§

2701-2712 ("SCA warrants"); and, applications and orders filed pursuant to 18 U.S.C. § 2703(d)

("§ 2703(d) materials")  [Dkt. 54].  The categories of relief petitioners sought were:

> 1) Retrospective Relief:  extracted information from all sealed PR/TT matters that the
> USAO-DC had initiated since 2008, plus "case numbers and certain associated docket
> information for [§ 2703(d)] matters filed from 2008 to present;" and
>
> 2) Prospective Relief:  the publication of the "case number and certain associated docket
> information, including the case name, date of application, and magistrate judge to whom
> the matter is assigned," for all PR/TT, § 2703(d) materials and SCA warrants filed by the
> USAO-DC, as well as the periodic unsealing of those matters that no longer require
> secrecy.

Opinion, at 30.

In its Opinion, the Court analyzed petitioners' request to unseal nearly a decade's worth of

sealed matters, as well as their request for forward-looking relief, under both the First Amendment and common law right of access. Ultimately, the Court ruled that petitioners' First Amendment claim for access to these sealed materials failed because "no historical tradition of openness exists as to PR/TT, SCA warrant, or § 2703(d) materials, and such orders are too functionally unlike search warrants in issuance, execution or challenge procedures to justify the latter's analytical substitution in evaluating the historical aspect of the petitioners' First Amendment right of access claim." Opinion, at 40-41. In so ruling, the Court found that petitioners did not meet the "experience" prong of the "experience and logic" test set forth in Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty, 478 U.S. 1, 8-9 (1986) ("Press-Enterprise"). Opinion, at 41.

As for petitioners' claim that the common law right of access afforded them access, prospectively, to docket information about PR/TT, § 2703(d) materials and SCA warrants, the Court agreed, in part, holding that petitioners' common law right of access claim succeeded "albeit not to the full extent requested by the petitioners." Opinion, at 31. Specifically, the Court relied on recent changes adopted by the USAO-DC and the Court with respect to the filing of PR/TT, SCA warrants and § 2703(d) materials, and the disclosure by the Clerk's Office of biannual docket reports with respect to those matters. Id. With respect to petitioners' claim that the common law right of access afforded them access, retrospectively, to PR/TT and § 2703(d) materials, the Court held that petitioners were not entitled to any relief beyond that which they received during this protracted litigation. Opinion, at 61.[1]

---

[1]   On April 30, 2018, the Court released a list, including some associated docket information, of all PR/TT matters filed by the USAO-DC from January 1 to September 30, 2017. In re: Disclosure of Pen Registers from January 1, 2017 Through September 30, 2017, Case No. 18-mc-61 [Dkt. 1]. Thus, to date, the Court has unsealed, to a limited extent, case numbers and associated docket information for all PR/TT matters filed by the USAO-DC for a period of 9 years and 9 months – from 2008 to September 30, 2017. Id.

On March 23, 2018, petitioners filed a Motion for Reconsideration and accompanying Memorandum of Points and Authorities ("Petitioners' Memo") in support of their motion pursuant to Fed. R. Civ. P. 59(e), asking the Court to reconsider certain aspects of its ruling [Dkt. 55]. Specifically, petitioners contend that reconsideration is warranted because, in their view:

> 1)  The Court erred in ruling that PR/TT, § 2703(d) materials and SCA warrants were "more analogous" or "more akin" to subpoenas than traditional search warrants. Petitioners' Memo, at 2-3, 11.  Petitioners assert that they are entitled to reconsideration on this ruling because this was "a legal argument never asserted by the Government" and, as such, petitioners have never had an "full opportunity to outline [the] potential ramifications and to address the argument that SCA search warrants, Section 2703(d) orders, and PR/TT orders are analogous to subpoenas."  Petitioners' Memo, at 3.

> 2) The Court's determination that SCA warrants are "akin to subpoenas" "introduces troubling uncertainty into a realm of well-established existing legal protections for the news media."  Petitioners' Memo, at 12.

> 3) The Court erred in determining that PR/TT and § 2703(d) materials do not meet the First Amendment "experience and logic test."  Petitioners' Memo, at 15-16.

> 4)  The Court erred in failing to give "separate consideration" to court dockets and docket information related to PR/TT, SCA warrants and § 2703(d) materials.  Petitioners' Memo, at 17-18.

> 5)  The Court misconstrued and misapplied the balancing test in <u>United States v. Hubbard</u>, 650 F.2d 293 (D.C. Cir. 1980), by considering administrative burden as a factor in determining whether to permit access to the judicial records sought by petitioners. Petitioners' Memo, at 19-25.

> 6) The Court should "clarify" its Opinion by "specif[ying] the factual findings upon which it based its ruling that the common law right of access is overcome."  Petitioners' Memo, at 23.

For the foregoing reasons, petitioners' motion for reconsideration should be denied.

## II.      LEGAL PRINCIPLES GOVERNING MOTIONS FOR RECONSIDERATION

A motion for reconsideration filed pursuant to Rule 59(e) is "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

<u>Messina v. Krakower</u>, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  Such a motion is "not simply an opportunity to reargue facts and theories upon which a court has already ruled."  <u>Fresh Kist Produce, LLC v. Choi Corp.</u>, 251 F. Supp.2d 138, 140 (D.D.C. 2003) (quoting <u>New York v. United States</u>, 880 F. Supp. 37, 38 (D.D.C. 1995)).  Moreover, "the reconsideration and amendment of a previous order is an unusual measure."  <u>Swedish Am. Hosp. v. Sebelius</u>, 845 F. Supp.2d 245, 250 (D.D.C. 2012); <u>see also</u> <u>Jung v. Ass'n of Am. Med. Colls.</u>, 184 Fed. Appx. 9, 13 (D.C. Cir. 2006) (noting "the high standard for relief under Rule 59(e)"); <u>Niedermeier v. Office of Max S. Baucus</u>, 153 F. Supp.2d 23, 28 (D.D.C. 2001) (Rule 59(e) motions are "disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances.").  Rule 59(e) was "not intended to allow a second bite at the apple."  <u>Oceana, Inc. v. Evans</u>, 389 F. Supp.2d 4, 8 (D.D.C. 2005).  Motions to reconsider are not proper where the motion merely asks the court "to rethink what the Court had already thought through—rightly or wrongly."  <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985); <u>Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.</u>, 99 F.R.D. 99, 101 (E.D. Va. 1983) (motion for reconsideration not appropriate where it "served no function at all, other than reiteration").  A motion to reconsider is appropriate where:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

<u>Id.</u>; <u>see also</u> <u>Wiseman v. First Citizens Bank & Trust Co.</u>, 215 F.R.D. 507, 509 (W.D.N.C.2003) ("The limited use of a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court.").  "In addressing the claims of a party on a motion for reconsideration, the Court is free to expand upon or clarify the reasons

supporting its prior ruling." <u>Bristol–Myers Squibb Co. v. Kappos</u>, 891 F. Supp.2d 135, 138 (D.D.C. 2012).

### III.   <u>LEGAL ARGUMENT</u>

### A. <u>The Court's Application of the First Amendment's "Experience and Logic" Test With Respect to SCA Warrants Does Not Merit Reconsideration.</u>

The Court held that petitioners could not prevail on their First Amendment right of access claim because they did not satisfy the experience prong of the "experience and logic" test set forth in <u>Press-Enterprise</u>, 478 U.S. at 8-9, that is, they could not demonstrate an "'unbroken, uncontradicted history' of openness" with respect to the matters they wanted unsealed.  Opinion, at 41.  In so ruling, the Court found that an SCA warrant was "in substance more analogous to a subpoena than to a traditional search warrant," Opinion, at 32, and that § 2703(d) and PR/TT matters were "even less analogous to traditional search warrants than are SCA warrants, differing in both execution and applicable legal standard."  Opinion, at 40.  Thus, the Court concluded that because "no historical tradition of openness exists as to PR/TT, SCA warrant[s], or § 2703(d) materials," petitioners could not prevail under the First Amendment right of access.  Opinion, at 40-41.

In their motion for reconsideration, petitioners argue that the Court's ruling under the First Amendment that PR/TT matters, SCA warrants and § 2703(d) orders were "more analogous" or "more akin" to subpoenas than traditional search warrants was "an error of law."  Petitioners' Memo, at 2-3.  Petitioners also assert that they are entitled to reconsideration because this was "a legal argument never asserted by the Government" and, as such, petitioners did not have a "full opportunity to outline [the] potential ramifications and to address the argument that SCA search warrants, Section 2703(d) orders, and PR/TT orders are analogous to subpoenas."  Petitioners'

Memo, at 3.[2]

In order to address this claim on reconsideration, it is important to delineate petitioners' claims for relief, which became narrower in scope as the litigation continued.  For prospective relief, petitioners sought: 1) certain docket information for all PR/TT, § 2703(d) materials and SCA warrants; and, 2) periodic unsealing of all of those matters.  For retrospective relief, petitioners sought: 1) extracted information from all PR/TTs initiated by the USAO-DC since 2008 to the present; and, 2) case numbers and certain associated docket information for all § 2703(d) materials filed from 2008 to the present.  See Opinion, at 30 & n.23.  Petitioners did not seek retrospective relief with respect to SCA warrants due to the "lack of any reliable method to identify SCA warrant materials currently under seal."  Opinion, at 30 n.23.  Thus, petitioners' claim of error – the Court's ruling that SCA warrants are "akin to subpoenas" – can relate only to their request for prospective relief vis-à-vis SCA warrants because that is the only relief they sought for these matters.  As explained above, the petitioners prevailed on this claim under the common law right of access, but not under the First Amendment.  Accordingly, because they succeeded on this claim under one theory (but not the other), petitioners have not suffered "manifest injustice" and reconsideration is not warranted.

Even if the Court were to revisit its ruling on this issue and "rethink what it already thought through," Harsco Corp., 779 F.2d at 909, the Court's reasoning was sound and the Court, upon

---

[2]   The government does not dispute that it did not make this argument.  Instead, the government argued that PR/TT and § 2703(d) matters did not meet the "experience and logic" test because they were "more like grand jury matters."  Government's Response, at 30.  The government did not analyze SCA warrants under either the First Amendment or common law right of access.  Because petitioners only sought prospective relief as to these matters, with respect to retrospective relief, the government observed that the recently-entered-into MOU essentially would provide petitioners with the information sought and that, therefore, their request was moot.  Id. at 41-43.

7

reconsideration, should reach the same result.  In their Supplemental Memorandum of Points and Authorities in support of Their Applications to Unseal Electronic Surveillance, Applications, Orders, and Related Court Records ("Petitioners' Supplemental Memo")  [Dkt. 47], petitioners argued – after conceding that they only sought prospective relief for SCA warrant information  -- that courts have held that there is a First Amendment right of access to post-investigation search warrant materials, including SCA warrants.  Petitioners' Supplemental Memo, at 17, 22.  However, the cases relied on by petitioners in making that argument involved traditional search warrants, not SCA warrants.  See In re Application of N.Y. Times for Access to Certain Sealed Court Records, 585 F. Supp.2d 83 (D.D.C. 2008) (involving motion to unseal search warrant applications, supporting affidavits, court orders and search warrant returns relating to the government's criminal investigation into the mailing of anthrax to members of Congress and the media; ); United States v. Loughner, 769 F. Supp.2d 1188 (D. Ariz. 2011) (involving petition to court to release search warrant materials in case involving mass shooting of 19 people, including a U.S. Congresswoman, at a political event); In re Search Warrant for Secretarial Area Outside of Office of Gunn, 855 F.2d 569 (8th Cir. 1988) (involving motion to unseal search warrant documents related to ongoing investigation into alleged bribery in defense industry). United States v. Kott, 380 F. Supp.2d 1122 (D.C. Cal. 2004) (motion to unseal traditional search warrant materials and indictment).

In their request for reconsideration, petitioners continue to argue that SCA warrants are a "species of Rule 41 search warrants" that are, "at a minimum, analogous to conventional search warrants authorizing a physical search and seizure."  Petitioners' Memo, at 6.  They cite to Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp. ("Microsoft I"), 829 F.3d 197, 214 (2d Cir. 2016), reh'g denied, 855 F.3d 53 (2d Cir. 2017) (Microsoft II"), vacated and remanded as moot, 138 S. Ct. 1186 (2018), in which the Second

Circuit held that a SCA warrant cannot compel a service provider to disclose information that the provider stores abroad because such disclosure would constitute an unlawful extraterritorial application of the SCA.[3]  In Microsoft I, the Second Circuit rejected the district court's ruling and the government's argument that SCA warrants were like subpoenas, stating that "[w]arrants and subpoenas are, and have long been distinct legal instruments."   Id. at 214.  Microsoft I is not a First Amendment right of access case and the Second Circuit did not, as the Court was called to do in this case, analyze SCA warrants under the "experience and logic" test.  Moreover, Microsoft I is not controlling law in this Circuit, and this Court disagreed with Microsoft I in a recent decision involving the same issue confronted by the Second Circuit, the extraterritorial application of a SCA warrant.  See In re Search of Information Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc. ("Google"), 2017 WL 3445634, * 4 (D.D.C. 2017) ("the Microsoft court erred").  In rejecting Microsoft I, this Court noted that rehearing was denied in a four-four split and found the rationale set forth by some of the dissenters more convincing than the majority's reasoning on the issue of how to best characterize an SCA warrant.  Google, * 15; see Microsoft II, 855 F.3d at 60 (Jacobs, J., dissenting) ("the instrument functions as a subpoena through the Act calls it a warrant."); Id. at 66 (Cabranes, J., dissenting) (("[A] disclosure warrant is more akin to a subpoena."); see also Microsoft I, 829 F.3d at 226 (Lynch, G., concurring) (noting than an SCA warrant "does not appear to be a traditional search warrant").  In the absence of authority in D.C. Circuit, this Court certainly was permitted to find that the Second Circuit's statement that warrants and subpoenas are "distinct legal instruments," Microsoft I, 829 F.2d at 214, was not well-reasoned and unpersuasive.  Compare United States v. Fahnbulleh, 674 F.

---

[3]   Petitioners did not cite to Microsoft I in their Supplemental Memorandum [Dkt. 47], or in their Reply to the Government's Response [Dkt. 52].

Supp.2d 214, 219-200 (D.D.C. 2009) (a district court may rely on the opinion of another circuit where such opinion is "well-reasoned and persuasive").

In denying petitioners' First Amendment right-of-access claim to SCA warrant materials, the Court correctly held that there was no "unbroken, uncontradicted history of openness" for a multitude of reasons:  1) SCA warrants are historically and routinely  maintained under seal and not publicly available; 2)  the SCA permits the government to request a sealing and non-disclosure order; 3) the SCA "prioritizes law enforcement's need for secrecy over the public's interest in transparency;" 4) the SCA, enacted as part of ECPA, is only 31 years old and is of "recent vintage;" and, 5) SCA warrants and orders are unlike traditional search warrants in method of execution and opportunity for pre-disclosure challenge.  Opinion, at 32-39.  Even on reconsideration, petitioners have not presented contrary authority in this jurisdiction, persuasive authority in any other jurisdiction, or a compelling argument to the contrary.  Thus, the Court's ruling should stand.

> **B.**     **Petitioners' Assertion That The Court's Ruling With Respect to SCA Warrants "Introduces Troubling Uncertainly Into a Realm of Well-Established Existing Legal Protections for the New Media" Is Not Grounds for Reconsideration.**

Petitioners claim that the Court's determination that SCA warrants are "akin to subpoenas" interjects "troubling uncertainty into a realm of well-established existing legal protections for the news media."  Petitioners' Memo, at 12.  Petitioners cite to the Privacy Protection Act of 1980 ("PPA"), 42 U.S.C. § 2000aa, as an area in which the Court's ruling "gives rise to uncertainty with respect to the PPA's application to SCA search warrants."  Id. at 14.  This claim does not merit reconsideration.  It is not a claim of legal error; instead, it is a concern about the precedential value of the Court's Opinion in future, yet-to-be litigated cases to which petitioners may or may not be a  party.   Petitioners  have  not  demonstrated,  as  they  are  required  to  do  when  seeking

10

reconsideration, how the Court committed clear error in this particular case where their complaint is based on speculative, future rulings in other cases.   Therefore, this claim does not merit reconsideration.

**C.    The Court Did Not Err in Determining that PR/TT and § 2703(d) Materials Do Not Meet the First Amendment "Experience and Logic" Test.**

Petitioners contend that the Court erred in determining that PR/TT and § 2703(d) materials do not meet the First Amendment "experience and logic" test.  Petitioners' Memo, at 15-16.  The Court found that these investigative devices were "even less analogous to traditional search warrants than are SCA warrants, differing in both execution and applicable legal standard." Opinion, at 40.   Thus, the Court correctly concluded that because "no historical tradition of openness" existed under the "experience prong of the "experience and logic" test, petitioners could not prevail on their First Amendment right of access claim.  Opinion, at 40-41.   Nevertheless, petitioners did prevail on their claim for prospective relief with respect to PR/TT and § 2703(d) matters under the common law right of access.   Accordingly, for the reasons stated above and because petitioners succeeded on this claim under one theory (but not the other), petitioners have not suffered "manifest injustice" and reconsideration is not warranted.

**D.    The Court Did Not Err in Failing to Give "Separate Consideration" Under the First Amendment to Petitioners' Request for Access to Court Dockets and Docket Information Related to PR/TTs, § 2703(d) Materials and SCA Search Warrants.**

Petitioners complain that the Court failed to give "separate consideration" to their request for prospective relief for access to court dockets and docket information related to PR/TTs, § 2703(d) materials and SCA warrants under the First Amendment.  Petitioners' Memo, at 17-18. Under the common law right of access, the Court addressed petitioners' claim for access to these

11

judicial records, referring to the documents sought by petitioners – the actual documents filed in the court case -- throughout its Opinion as "materials," "matters," "applications," "orders," and "documents at issue."   The Court found that court filings in PR/TT, § 2703(d) and SCA warrant cases were judicial records as a matter of law because they were "filed with the court."  Opinion, at 42.  The Court also addressed, separately, petitioners' request for access to docket information— including the case name, docket number, date of application and magistrate judge to whom the matter is assigned -- regarding PR/TT, § 2703(d) materials and SCA warrants on a "continuous, real-time basis."  Opinion, at 44, 46.  The Court noted, in consideration of the Hubbard factors, that docket information relating to these matters was "perhaps. . . less important to judicial proceedings than are the actual materials themselves."  Opinion, at 50.

The Court ruled that the factors set forth in United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980) weighed in favor of "some prospective access to docket information for PR/TT, § 2703(d), and SCA warrant matters, though not in favor of the timetable for disclosure of such information requested by the petitioners."  Opinion, at 44-45.  In so ruling, the Court referred to the "EC docket" used by the U.S. District Court for the Eastern District of Virginia ("EDVA"), which had been discussed by the Court and the parties at several of the status hearings held in this case.  Opinion, at 9 n.8 & 47 n.27.  EDVA's EC docket was described by the Fourth Circuit as a "running list" that discloses "assigned case numbers, the date of assignment, the presiding judge, and whether the case is sealed" for PR/TT and § 2703(d) matters (but not SCA warrants) but "lack[ed] individual docket entries for all types of documents filed in each case and the dates of such entries."  See United States v. Applebaum, 707 F.3d 283, 288 (4th Cir. 2013).  The Court denied petitioners' request for "real-time docket information" because providing such access "necessarily implicates pending, active criminal investigations" and petitioners, "at the outset,"

12

had limited their request to closed investigations.  Opinion, at 46-47.  Instead, the Court held that

under the terms of the MOU, the Clerk's Office will begin to generate and make available to the

public "biannual docket reports" that will contain the following categories of information:  the

total number of PR/TT, § 2703(d) and SCA search warrant matters filed, the standardized caption

for each matter, the number and type of target accounts (landline telephone, cellular telephone

and/or email), the providers' names, and the primary offense statutes under investigation.  Opinion,

at 66.  The Court noted that the information provided in the biannual docket reports will be "far

more robust" than the docket information sought by the petitioners and, also, more "extensive"

and "fulsome" than information that is available to the public through EDVA's EC docket.

Opinion, at 47, 66.  Therefore, the Court granted petitioners' request for docket information, on a

prospective basis, under the common law right of access.[4]  Because the Court did rule on this

claim, because petitioners largely prevailed, and because petitioners have not met their burden of

---

[4]   While the Court granted petitioners' claim for prospective relief under the common law right of access,
it did not do so "to the full extent requested by the petitioners."  Opinion, at 31.  Thus, the Court denied
petitioners' request for "real-time unsealing and public posting on PACER, upon initial filing of sealed
PR/TT, § 2703(d), and SCA warrant material" because the Court found that this was a "significant shift in
the petitioners' position."  Opinion, at 65.  The Court noted that throughout this litigation, petitioners have
repeatedly asserted that they do not seek access to pending, open and active criminal investigations, yet
their request for "real-time unsealing" necessarily includes open investigations.  "On this basis alone," the
Court denied petitioners' request.  Opinion, at 66.

   Petitioners now complain that the Court erred "as a factual matter" when it found that they did not
seek access to "real-time docket information" on a prospective basis.  Petitioners' Memo, at 18.  The
government submits that the relief provided petitioners via the MOU – the public release of biannual docket
reports -- likely will include open investigations.  See Opinion, at 64 (describing content of biannual docket
reports; reports to include certain categories of sealed criminal investigation matters filed in a 6 month
period, reports to be issued 6 months thereafter).  The government agreed to this procedure via the MOU
and understands that the publicly-released docket reports may include open, ongoing investigations because
it is not uncommon that criminal investigations initiated by the USAO-DC, with the assistance of local and
federal law enforcement, last more than 6 months.  Therefore, clarification of the Court's factual finding is
unnecessary because petitioners will gain access to docket information that includes open investigations,
just not a "real-time" basis.  Therefore, reconsideration is not warranted.

showing clear error or manifest injustice,  reconsideration is not warranted.

**E.**    **The Court's Ruling Based Upon Hubbard Was Not Legal Error and Does Not Merit Reconsideration.**

In determining whether there is a qualified common law right of access to judicial records in this case, the Court applied the six "generalized" factors set forth in Hubbard to petitioners' prospective and retrospective claims for relief.  650 F.2d at 317-22.  The Court concluded that application of five of the six Hubbard generalized factors, together with the recently adopted administrative changes in the USAO-DC and the Clerk's Office, weighed in favor of disclosure of PR/TT, § 2703(d) materials and SCA warrants on a prospective basis.  Opinion, 50-51.  Thus, petitioners largely prevailed on their common law right of access claim with respect to prospective relief for all of these matters.

Petitioners' request for reconsideration, thus, is directed to the Court's ruling on retrospective relief based on its application of the Hubbard factors.  The Court began its analysis by noting that "Hubbard's [six] generalized factors weigh in favor of retrospective access to PR/TT extracted information and § 2703(d) docket information for essentially the same reason they weigh in favor of prospective relief."  Opinion, at 51.   Nevertheless, the Court found that this was not "dispositive," and went on to consider an additional factor that Hubbard articulated, that is, any "particularized. . . other interests" asserted by a party.  See Hubbard, 650 F.2d at 323.  Neither party argued this additional Hubbard factor in their briefs.  The government argued that the Court could consider administrative burden on the USAO-DC and the Court because petitioners' request to unseal was "broad and unprecedented."  Government's Response, at 1, 35-39.  The government also argued that the First Amendment/common law right of access cases relied upon by petitioners to support their request for unsealing were distinguishable because they involved parties seeking

access to information in particular cases, not a wholesale request such as this.[5]  Id. at 35-36.

Petitioners addressed the six "generalized" Hubbard factors, but did not mention or apply the

"particularized. . . other interests" factor.

Petitioners now complain that the Court "altered the controlling test established by the D.C.

Circuit in [Hubbard]" and somehow improperly "injected" administrative burden into its Hubbard

analysis.  Petitioners' Memo at 3, 21.  Petitioners are mistaken.  Hubbard does not limit or

otherwise define "particularized. . . other interests;" therefore, this Court properly used it as a

framework to analyze petitioners' request for historical data, that is, extracted PR/TT information

and § 2703(d) docket information.  Moreover, as the Court noted in its Opinion, in applying the

Hubbard factors, a trial court must also "consider[] the relevant facts and circumstances of the

particular case, and after weighing the interests advanced by the parties in light of the public

interest and the duty of the courts," make a "conclu[sion] that justice so requires."  Opinion, at 25

(emphasis added) (internal citations omitted); see also Hubbard, 650 F.2d at 316-17 ("the decision

as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion

to be exercised in light of the relevant facts and circumstances of the particular case") (internal

quotation marks and citation omitted).  Justice does not require a contrary result.

Petitioners are simply unhappy with the Court's ruling, but this does not entitle them to a

"second bite at the apple."  Oceana, Inc., 389 F. Supp.2d at 8.  Accordingly, reconsideration is not

---

[5]   Ironically, petitioners complain that the Court's Opinion "marks the first time that a court has found
that the administrative burden of unsealing is an appropriate factor to consider when balancing the public's
interest in disclosure against competing interest[s] under Hubbard."  Petitioners' Memo, at 24.  They also
point out that the Court's Opinion "does not cite to any other case recognizing administrative burden as a
relevant interest under Hubbard."  Petitioners' request to unseal nearly a decade's worth of sealed matters
in this jurisdiction is unprecedented; therefore, it is not surprising that there are no judicial decisions
applying the Hubbard factors in this context.

warranted.[6]  Even assuming reconsideration is proper, petitioners have not shown how the Court's

ruling amounted to legal error or manifest injustice in this particular case where Hubbard, binding

law in this Circuit, plainly allows a trial court to consider "particularized. . other interests" in

determining whether to grant or deny public access to sealed materials and court docket

information.[7]

F.     **The Court Does Not Need to "Clarify" the Factual Findings Upon Which it Based its Common Law Right of Access Ruling Because Those Findings are Set Forth in the Court's Order.**

Finally, petitioners urge the Court to "clarify" its Opinion by "specif[ying] the factual

findings upon which it based its ruling that the common law right of access is overcome."

Petitioners' Memo, at 23.  This is unnecessary.  As set forth below, the Court set out its factual

findings in a clear, detailed manner.  What is apparent is that petitioners simply disagree with the

Court's conclusion, not the factual findings themselves.  Indeed, petitioners have not proffered any

specifics to support their request for clarification; they simply ask the Court to "set forth the

specific factual findings upon which it bases its conclusions that administrative burden to the

Government [and the Court] outweighs the public's common law right of access. . . as to SCA

Search Warrant, Section 2703(d), and PR/TT matters."[8]  Petitioners' Memo, at 25.  The Court has

---

[6]    In addition, petitioners argue that the Court's consideration of the six enumerated Hubbard factors and "beyond" must be connected to the "content of the records at issue."  Petitioners' Memo, at 19-20.  The Court ruled that five of the six Hubbard factors favored the petitioners.  Reconsideration is not warranted.

[7]    See, e.g., Hubbard, 650 F.2d at 324 (on remand, the district court was directed to identify the "generalized interests at stake," the "particularized factors," or "some other basis" that it relied upon in issuing its unsealing order; then, the parties could contest the district court's rationale by motion for reconsideration).

[8]    The government notes that petitioners' statement is overbroad in that the Court considered administrative burden in the context of petitioners' request for historical information for PR/TT matters and § 2703(d) matters filed from 2008 to 2016, not historical information relating to SCA warrants.

17

already done this.

In its Opinion, the Court extensively discussed the practical challenges presented by the petitioners' broad and unprecedented request for retrospective and prospective relief concerning nearly a decade's worth of sealed documents.  See Opinion, at 2-20.  As the parties, assisted by the Court, worked collaboratively to address these challenges, the sheer number of matters encompassed by petitioners' requested relief became clear, as well as the amount of staffing resources that would be required to provide that relief.  For example, the Court found that the USAO-DC had "underestimated" the time commitment required to provide the extracted data in 2,248 PR/TT matters filed from 2008 to 2016, instead estimating that "it would take [the USAO-DC] approximately 788 hours—nearly 33 working days working round the clock, nonstop, or nearly twenty 40-hour workweeks."  Id. at 52-53.  The Court also found that "[c]omplying with such a mandate would divert significant amounts of valuable AUSA time and resources."  Opinion, at 53.

Next, the Court estimated the "significant resource burdens on the Court and Clerk's Office" in producing § 2703(d) docket information, noting that, contrary to petitioners' assumption, it was not a "trivial clerical task, [ ] easily performed [by] pressing the 'print' button for a list of CM/ECF matters generated by the search criteria."  Opinion, at 53-54.  Rather, in assembling a list of historical § 2703(d) matters, the Clerk's Office staff would be required "to scrutinize meticulously every entry on each page of every list released to purge these lists of any information bearing on personal identification or law enforcement investigative concerns" and the lack of standardized case names of captions made the task "particularly challenging."  Opinion, at 54.  Moreover, the Clerk's Office would be obligated to review each matter to prevent "inadvertently reveal[ing] confidential grand jury matters," which required "additional manual,

18

time-consuming review."  Opinion, at 54.

The Court's extensive factual findings set forth in its Order, along with the entire record in this case consisting of joint status reports filed by the parties, transcripts from the numerous hearings held in this case and pleadings filed by the parties, amply support the Court's conclusion that the burden on the Court and the USAO-DC in providing extracted and docket information relating to historical PR/TT and § 2703(d) materials would be "enormous."  Opinion, at 52. Therefore, petitioners' request for "clarification" should be denied.

## CONCLUSION

For the reasons stated herein, the Court should deny petitioners' motion for reconsideration.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar Number 472-845

MARGARET J. CHRISS
Chief, Special Proceedings Division
D.C. Bar Number 452-403

_____/s/_____
PAMELA S. SATTERFIELD
Assistant United States Attorney
Special Proceedings Division
555 4th Street, N.W.
Washington, D.C. 20530
D.C. Bar No. 421-247
Pamela.satterfield@usdoj.gov
202-252-7578

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, this 18th day of May, 2018, I caused a copy of the foregoing Opposition to petitioners' Motion for Reconsideration to be served via ECF to all counsel of record.

_____/s/_____

Pamela S. Satterfield
Assistant United States Attorney