## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>IN RE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS</td><td>Misc. Action No. 13-mc-00712 (BAH)</td></tr>
</table>

## REPLY IN SUPPORT OF PETITIONERS' MOTION FOR RECONSIDERATION

Jason Leopold and the Reporters Committee for Freedom of the Press ("Petitioners") respectfully submit this reply in support of their motion, Dkt. 55 ("Pet'rs' Mot."), for reconsideration of the Court's February 26, 2018 Opinion and Order, Dkt. 54 (the "Opinion" or "Op."). Petitioners' Motion urges the Court to reconsider: (1) its application of the two-part constitutional right of access test established by the U.S. Supreme Court in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986), ("*Press-Enterprise II*") to the judicial records at issue, including to court dockets; and (2) its interpretation of U.S. Supreme Court and D.C. Circuit precedent governing application of the common law right of access to judicial records. *See generally* Pet'rs' Mot. On May 18, 2018, the U.S. Attorney for the District of Columbia (the "USAO" or "Government") filed a brief in opposition to Petitioners' Motion. Dkt. 58 ("Gov't's Resp.").

The USAO fails to substantively address—and, in some cases, concedes—grounds for reconsideration asserted in Petitioners' Motion. This reply brief is limited to (1) addressing those arguments made in the Government's Response and (2) informing the Court of recent legislation that provides further support for Petitioners' request that the Court reconsider its interpretation of the term "warrant" in the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*

For the reasons set forth in their Motion and herein, Petitioners respectfully contend that reconsideration of the Court's application of the constitutional and common law rights of access to the relief requested by Petitioners is warranted.  *Id*.

## ARGUMENT

Reconsideration is appropriate where "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotations and citation omitted).  For the reasons stated in Petitioner's Motion and herein, reconsideration of the Opinion, including the scope of relief granted, is warranted.[1]

I.   **Recent legislation underscores that it is legal error to treat SCA warrants as analogous to subpoenas for purposes of the *Press-Enterprise II* analysis.**

Manifest injustice or clear error warranting reconsideration can include "legal errors the court made . . . ."  *Zyko v. Dep't of Defense*, 180 F. Supp. 2d 89, 91 (D.D.C. 2001).  Petitioners contend that it was legal error for the Court to conclude that the First Amendment has no application to any of the judicial documents at issue, including court dockets.  *See* Op. at 31 (concluding that the First Amendment presumption of access applies to "none of the materials to which the petitioners seek access—not even SCA warrants").  Specifically, Petitioners contend that it was legal error for the Court to treat PR/TT, Section 2703(d), and SCA Search Warrant Materials as analogous to subpoena-related materials, rather than warrant materials, in applying

---

[1] Petitioners do not dispute that the Opinion provides limited prospective relief.  The Court held, however, that the common law right of access was overcome insofar as the prospective relief specifically requested by Petitioners provided the public access to judicial records beyond what was expressly agreed to by the USAO, as reflected in its Memorandum of Understanding with the Clerk of the Court (the "MOU").  *See* Op. at 61 (citing Clerk's Office, U.S. Dist. Court, D.C. & Crim. Div., U.S. Att'y's Office, D.C., Mem. of Understanding: Electronic Filing of Certain Sealed Applications & Orders ("MOU") (Aug. 15, 2017), https://bit.ly/2ju4baA).

the "experience" prong of the two-part "experience and logic" test established in *Press-Enterprise II*. Op. at 36–41.

The Court based its analogy to subpoenas on the "method of execution and opportunity for pre-disclosure challenge," Op. at 35; yet, as set forth in Petitioners' Motion, those features do not meaningfully distinguish SCA search warrants, or PR/TT and Section 2703(d) orders, from conventional, brick-and-mortar search warrants, Pet'rs' Mot. at 7–8; 15–16. Moreover, even assuming, *arguendo*, that SCA search warrant, PR/TT, and Section 2703(d) materials are subpoena-like for certain purposes, they are analogous to conventional warrants for purposes of the "experience" prong of the *Press-Enterprise II* test, which is a "functional rather than classificational" inquiry. *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1337 (D.C. Cir. 1985). The First Amendment affords the public a presumptive right of access to search warrant material so that the public can ensure that courts are not "merely serving as a rubber stamp for the police." *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008). Accordingly, the analysis should focus not on the "method of execution" of the warrant or order, Op. at 35, but rather on the procedure used by the Government to obtain it from a court.

The Government's Response focuses on Petitioner's contention that, with respect to SCA search warrant material, no analogy is even necessary for purposes of evaluating the applicable tradition of openness because SCA search warrants issued by federal courts *are* Rule 41 search warrants under the plain language of the statute. However, while the USAO urges the Court in general terms not to revisit its legal analysis, *see* Gov't's Resp. at 6–10, it does not substantively address the central question of how the term "warrant" under the SCA should be interpreted. Legislation passed the same day Petitioners' Motion was filed—but not even mentioned in the

Government's Response—provides further reason for the Court to reconsider its ruling that the constitutional presumption of access has no application to SCA search warrant material.

As discussed in Petitioners' Motion, the Opinion's approach to SCA warrants—namely, to treat SCA warrants as "akin to subpoenas," Op. at 35—was rejected by the Second Circuit in *Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.* ("*Microsoft I*"), 829 F.3d 197 (2d Cir. 2016), *reh'g denied*, 855 F.3d 53 (2d Cir. 2017) ("*Microsoft II*"), *vacated and remanded as moot*, 138 S. Ct. 1186 (2018).  In that case, the Second Circuit concluded that "[w]arrants and subpoenas are, and have long been, distinct legal instruments."  829 F.3d at 214.  The Second Circuit's opinion was vacated as moot in response to the Clarifying Lawful Overseas Use of Data ("CLOUD") Act, H.R. 1625, Div. V, 115th Cong., 2d Sess. (2018).  *See United States v. Microsoft Corp.*, 138 S. Ct. 1186 (2018).  Yet, for the reasons stated below, its reasoning remains sound and is bolstered by the new legislation.

In its response, the USAO attempts to distinguish *Microsoft I* on the ground that it did not concern the public's right of access to judicial records.  To be sure, *Microsoft I* dealt with the extraterritorial application of SCA warrants, not the public's right of access to SCA warrant material, but in both *Microsoft I* and in this case, "the subpoena-warrant distinction [wa]s significant"—indeed, central—to the dispute.  *Microsoft I*, 829 F.3d at 214.  In reaching its conclusion that SCA warrants could not be used to obtain data stored overseas, the Second Circuit left no doubt that SCA warrants should be treated like conventional search warrants.  *See id*.  Its holding was based on the historical use of subpoenas and warrants, as well as the legislative history, structure, and plain language of the SCA.  *See id*. at 211–14.  In short, though the Second Circuit was addressing a legal question different from the one presented here, it was interpreting the definition of the precise term of art in the precise statute at issue.  *Id*. at 211–12;

214–15; *see also In re Search of Information Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc*., ("*Google*"), 2017 WL 3445634, at *9 (D.D.C. 2017) (this Court recognizing that "the Second Circuit [in *Microsoft I*] engaged in a discussion of the use of the word 'warrant' in § 2703, reasoning that this term carried with it all the 'traditional, domestic connotations' of ordinary warrants authorizing searches and seizures of physical items") (citation omitted).  The Second Circuit's interpretation in *Microsoft I* of the term "warrant" in the SCA is thus, at a minimum, instructive.

The Government's Response notes, as Petitioners' Motion acknowledges, that this Court in *Google* rejected the reasoning of *Microsoft I*.  2017 WL 3445634, at *22 (concluding that the "text, structure, and history of the SCA show that Congress meant to create a distinct procedural mechanism with some substantive and procedural requirements of a warrant and the reach of a subpoena"); Pet'rs' Mot. at 10; Gov't's Resp. at 9–10.  However, for the reasons set forth in their Motion and in light of Congress's passage of the CLOUD Act, Petitioners urge the Court to reevaluate that approach.  In *Google*, the Court acknowledged that the Supreme Court has stated that "when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Google*, 2017 WL 3445634, at *17 (quoting *F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012)) (internal quotations omitted).  Though the Court in *Google* rejected the notion that "warrant" was used as a term of art in the SCA, finding instead that Congress used the term "warrant" only to import the probable cause standard, *id*. at *17–22, the CLOUD Act makes clear that Congress used "warrant" in the SCA as a term of art.

On March 23, 2018, the same day that Petitioners filed their Motion, the President signed the CLOUD Act into law as part of the Consolidated Appropriations Act, 2018, Pub. L. 115-141.

The CLOUD Act amended the SCA to expressly allow federal law enforcement to compel service providers via search warrant to provide subscriber data stored on servers, regardless of where the data is physically stored.[2]  This statute was enacted while *Microsoft I* was pending before the U.S. Supreme Court.[3]  In response to the legislation, the Government moved the Supreme Court to vacate the judgment of the Second Circuit and remand the case with directions to dismiss it as moot on March 30, 2018.  On April 3, 2018, Microsoft filed a response stating that it did not oppose the Government's request provided that the Supreme Court similarly order vacatur of the opinion of the magistrate judge that had been reversed by the Second Circuit.  *See* Motion to Vacate and Remand filed by petitioner United States, *United States v. Microsoft Corp.*, Case No. 17-2 (U.S. filed Mar. 30, 2018); Response to the United States' Motion to Vacate and Remand filed by respondent Microsoft Corporation, *United States v. Microsoft Corp.*, Case No. 17-2 (U.S. filed Apr. 3, 2018).  On April 17, 2018—one day before the USAO filed its response to Petitioners' Motion—the Supreme Court found that as a result of the CLOUD Act's passage, "[n]o live dispute remains between the parties over the issue with respect to which certiorari was granted."  *Microsoft Corp.*, 138 S. Ct. at 1188.  Thus, in accordance with its "established practice in such cases," the Court vacated *Microsoft I* and remanded the case to the Second Circuit with instructions first to vacate the lower court's contempt finding and denial

---

[2] The relevant part of the CLOUD Act amended the SCA by adding Section 2713, which states:  "A provider of electronic communication service or remote computing service shall comply with the obligations of this chapter to preserve, backup, or disclose the contents of a wire or electronic communication and any record or other information pertaining to a customer or subscriber within such provider's possession, custody, or control, regardless of whether such communication, record, or other information is located within or outside of the United States."  CLOUD Act § 103(a)(1).

[3] Indeed, as discussed in Petitioners' Motion, the case had already been argued before the Supreme Court. Questions about the proper interpretation of "warrant" under the SCA were posed during oral argument. Justice Gorsuch, for example, pointed out that "the statute uses the word 'warrant,'" and "elsewhere in the statute Congress used the word 'subpoenas' . . . [s]o we know it knew the difference."  *See* Pet'rs' Mot. at 10 n.5 (quoting *United States v. Microsoft Corp.*, Case No. 17-2, Tr. at 17 l. 13, 19–23 (Feb. 27, 2018)).

of Microsoft's motion to quash, and then to direct the lower court to dismiss the case as moot.
*Id.*

If Congress intended SCA warrants to be a type of subpoena, there would be no need to

pass the CLOUD Act.  There is "considerable case law" establishing that subpoenas apply to

information stored abroad, *see Microsoft I*, 829 at 228 n.5; conventional warrants, on the other

hand, do not apply abroad unless a statute expressly permits it, *see id.* at 214–15.  The fact that

Congress found it necessary to amend the SCA to clarify that SCA search warrants apply to data

stored abroad indicates that Congress understood SCA search warrants to be the same as other

search warrants—for which extraterritorial application cannot be presumed.  Courts must assume

that "[w]hen Congress acts to amend a statute," it "intends its amendment to have real and

substantial effect."  *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).  If SCA search warrants are

indeed a form of subpoena, the CLOUD Act would have been superfluous.[4]

In passing the CLOUD Act, Congress was given the opportunity to clarify that SCA

warrants are subpoena-like hybrids.  It did not.  Instead, it passed legislation making clear that, in

fact, SCA search warrants are akin to conventional search warrants.  Congress is presumed to

legislate with knowledge of existing law, including existing judicial interpretations.  *See*

*Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) (in a

bankruptcy matter, noting that "[t]he normal rule of statutory construction is that if Congress

---

[4] The Justice Department submitted a statement to Congress requesting that the SCA be amended in
response to the Second Circuit's decision in *Microsoft I*, but did not urge Congress to declare that SCA
search warrants are not warrants.  *See generally* Richard W. Downing, Acting Deputy Assistant Attorney
General, Department of Justice, Statement Before the Committee on the Judiciary, U.S. House of
Representatives (Jun. 15, 2017), https://bit.ly/2JeTiVy.  Instead, recognizing that the Second Circuit's
decision in *Microsoft I* "fundamentally rests on statutory interpretation," the Justice Department proposed
"a simple legislative amendment . . . that would make clear that SCA warrants can be used to obtain data
under a provider's custody or control, even if it is located abroad."  *Id.* at 10–11.

intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific").  Similarly, when Congress re-enacts a statute that has been judicially interpreted without changing that judicial interpretation, it is presumed that Congress knows and "adopt[s] that interpretation . . . ." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) (citations omitted), and Congress enacted the CLOUD Act against the backdrop of the *Microsoft I* case. Accordingly, upon reconsideration this Court should presume that Congress was aware of competing judicial interpretations of the term "warrant" in the SCA when it enacted the CLOUD Act, and that it implicitly affirmed the Second Circuit's interpretation from *Microsoft I*—the only Court of Appeals' decision interpreting the term.

The CLOUD Act offers *further* support for Petitioners' position that Congress intended "warrant" under the SCA to mean warrant.  As discussed in Petitioners' Motion, however, that conclusion is also supported by the plain meaning of the statutory language and prior legislative history.  *See* Pet'rs' Mot. at 6–9.  In 2001, for instance, the SCA was amended to allow courts to issue SCA search warrants that could apply to service providers in different districts.  *See* United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act"), Pub. L. 107-56, 115 Stat. 272, 291–92.  The House Judiciary Committee report accompanying the bill clearly stated that the amendment "attempt[ed] to address the investigative delays caused by the cross-jurisdictional nature of the Internet," but did "*not affect the requirement for a search warrant . . . .*"  H.R. Rep. No. 107-236, at 57 (Oct. 11, 2001) (emphasis in original), https://bit.ly/2kHt1RM.  Like the CLOUD Act, the 2001 amendment was necessary because SCA search warrants are warrants and, thus, jurisdictional exceptions must be expressly provided for by Congress.

The USAO urges the Court not to reconsider its approach, but it does not mention—let alone discuss—the CLOUD Act, or provide any contrary authorities indicating that Congress intended "warrant" in the SCA to mean subpoena.  Instead, the USAO argues generally that because this Court found that the public has a common law right of access to the requested materials, "petitioners have not suffered 'manifest injustice' . . ."  Gov't's Resp. at 7; *see also* Gov't's Resp. at 13–14 (arguing that because the Court found a common law right of access to dockets, it was not manifest injustice for the Court to neglect to address the First Amendment right of access to dockets).  The constitutional right of access is, however, stronger than the common law right of access.  *See Matter of the Application of WP Company LLC*, 201 F. Supp. 3d 109, 118 (D.D.C. 2016) (this Court stating that in addition to the constitutional right of access, "the D.C. Circuit has recognized a 'broader, but weaker, common law right' of access to public records") (citation omitted).  And, indeed, the Court found that the common law right of access to the judicial records at issue, including SCA warrant material, was largely overcome in the context of the relief sought by Petitioners.

In light of the CLOUD Act, and for the reasons set forth in their Motion, Petitioners respectfully request that the Court reconsider its ruling on the application of the First Amendment presumption of access by looking at the history of public access to conventional search warrant material, *see* Pet'rs' Mot. at 6–11, 15–16.  At a minimum, the Court should find that, in light of Congress's recent enactment of the CLOUD Act, SCA warrants are at least analogous to Rule 41 warrants for purposes of the Constitution's strong presumption of public access.  *See* Pet'rs' Supp. Mem. In Support of App. To Unseal ("Pet'rs' Supp. Mem."), at 33–34 (Aug. 25, 2017), Dkt. 47 (quoting *United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997)).

**II.     The USAO concedes that the Opinion was based on issues "not raised through the adversarial process"; the USAO does not substantively advance those issues even now.**

Reconsideration is also warranted to prevent manifest error or injustice because the Court's Opinion was based on arguments that the USAO concedes it did not advance.  Numerous courts have found that reconsideration should be granted where an order is based on arguments that were not advanced by either party, because "[b]asing a ruling on issues not raised through the adversarial process . . . would most likely qualify as a manifest error of law." *Yacobo v. Achim*, No. 06-C-1425, 2008 WL 907444, at *1 (N.D. Ill. Mar. 31, 2008); *see also DirecTV, Inc. v. Hart*, 366 F. Supp. 2d 315, 318 (E.D.N.C. 2004) (granting reconsideration where "the parties were not able to brief and argue the issues upon which the order . . . ultimately was decided"); *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (observing that reconsideration is appropriate when a court "has made a decision outside the adversarial issues presented to the Court by the parties . . ."). Indeed, the USAO apparently agrees that reconsideration "is appropriate" where, as here, "the Court . . . has made a decision outside the adversarial issues presented to the Court by the parties . . . ." Gov't's Resp. at 4.

The USAO concedes that it did not raise several of the arguments that were ultimately relied upon in the Court's Opinion as a basis to deny relief sought by Petitioners.  For example, though the Court's analysis of the public's rights of access to SCA search warrant material formed a core part of the Opinion, the USAO concedes that it "did not analyze SCA warrants under either the First Amendment or common law right of access." Gov't's Resp. at 7 n.2.[5]  The

---

[5] The USAO admits that its only argument to the Court regarding public access to SCA warrant material was a "mootness" argument:  "Because petitioners only sought prospective relief as to these matters, with respect to retrospective relief, the government observed that the recently-entered-into MOU essentially would provide petitioners with the information sought and that, therefore, their request was moot." Gov't's Resp. at 7 n.2.  Petitioners, however, sought access to dockets and docket information, as well as the unsealing of warrant applications and other judicial documents in future SCA warrant matters on a

USAO also "does not dispute that it did not make th[e] argument" that "PR/TT matters, SCA warrants and § 2703(d) orders were 'more analogous' or 'more akin' to subpoenas than traditional search warrants . . . ."  Gov't's Resp. at 6-7 n.2 (quoting Pet'rs' Mot. at 2–3).  And with respect to the common law right of access, the USAO acknowledges that the Court "consider[ed] an additional factor" when applying the test established in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), and concedes that "[n]either party argued this additional *Hubbard* factor in their briefs."  Gov't's Resp. at 15.  In short, there appears to be no dispute that the Court's ruling was based on arguments not made by the Government.

Though it is clear that the USAO agrees with the result of the Court's Opinion—which adopts the MOU that was agreed to by the USAO—the USAO, even now, does not offer a substantive defense of the basis for that Opinion, nor does it respond to the merits of Petitioners' arguments for reconsideration.  The USAO response summarizes the Court's findings, *see, e.g.,* Gov't's Resp. at 6, 10; states that the Court "certainly was permitted" to reject the Second Circuit's reasoning in *Microsoft I*, Gov't's Resp. at 9; and urges the Court not to revisit its rulings.  But the USAO does not offer a substantive rebuttal to the merits of Petitioners' arguments—such as the argument that the SCA's legislative history demonstrates that Congress intended "warrant" in the SCA to mean warrant, or the argument that the First Amendment right of access undisputedly applies to court dockets.  The USAO's silence on these and other issues core to the Opinion is further indication that reconsideration is warranted.

---

moving forward basis.  The MOU contemplates only periodic public reporting of caption information. For the reasons detailed in Petitioners' prior briefing to the Court and their pending Motion, the MOU did not moot Petitioners' request for prospective relief as to SCA search warrant material.

### III.   The USAO's response underscores that the Opinion was based in part on factual errors.

In its response, the USAO repeatedly asserts that Petitioners "largely prevailed" by virtue of the Court's Opinion adopting the MOU.  Gov't Resp. at 13.  Yet the limited prospective relief afforded by the MOU falls far short of what Petitioners sought from the Court.  Petitioners sought contemporaneous access to court dockets for all PR/TT, Section 2703(d), and SCA search warrant matters; the MOU provides delayed access to limited docket and associated information in the form of reports generated by the Clerk's office on a biannual basis.  *See* MOU at 2–3.  In addition, Petitioners sought unsealing of closed PR/TT, Section 2703(d), and SCA warrant matters on a moving forward basis; the Opinion denied that requested relief.  Petitioners also sought case numbers and certain associated docket information for all Section 2703(d) matters filed from 2008 to the present; that too was denied.  And Petitioners sought certain categories of information for all PR/TT matters initiated by the USAO from 2008 to the present; that too was denied.  In sum, Petitioners received only a fraction of the relief they sought.

The USAO attempts to make much of the Opinion's statement that Petitioners' request for "real-time docket information" was a "significant shift in the petitioners' position."  Gov't Resp. at 13 n.4 (quoting Op. at 65).  The USAO also notes that the biannual docket reports contemplated by the MOU will include information relating to open investigations.  Gov't Resp. at 13 n.4.  To be clear, however, as stated in Petitioners' Motion, the Reporters Committee from the outset sought access to court dockets for all matters; it sought access to other judicial records—such as applications and court orders—only for matters associated with closed investigations.  *See* Mem. Supp. Pet. Unseal of the Reporters Comm. for Freedom of the Press ("RCFP Pet. Unseal"), at 13–15 (Aug. 17, 2016), Dkt. 16-1; Application of the Reporters Comm. for Freedom of the Press to Unseal and for Other Appropriate Relief ("RCFP App."), ¶¶ 1, 21

(Aug. 18, 2016), Dkt. 18.  The specific prospective relief requested by Petitioners reflects that.
*See* Pet'rs' Supp. Mem., at 40–42, Dkt. 47.  Petitioners' request that PR/TT, Section 2703(d),
and SCA search warrant matters be contemporaneously reflected on public dockets on a moving-
forward basis was thus not a shift in Petitioners' position; nor did the Government ever argue to
the Court that it was.[6]

     In short, despite the USAO's assertion that reconsideration is not warranted because
Petitioners "will gain access to docket information that includes open investigations, just not on a
'real-time' basis," Gov't Resp. at 13 n.4, contemporaneous—*i.e.*, real-time—access to court
dockets for electronic surveillance matters pending in this District was always central to
Petitioners' requested relief.   Pet'rs' Mot. at 18 (explaining that the Court erred "as a factual
matter" when it found that Petitioners did not initially seek access to "real-time docket
information").

**IV.    Reconsideration is necessary for the Court to state the factual findings underlying its common law right of access ruling.**

     Finally, contrary to the arguments made in the Government's Response, reconsideration
is needed for the Court to clarify the factual findings upon which it based its conclusion that

---

[6] In the conferences and hearings that preceded the parties' supplemental briefing, the parties' discussions were focused on *retrospective* relief—primarily the unsealing of previously-filed PR/TT applications and orders.  *See, e.g.*, Seventh Joint Status Report, ¶ 3, Dkt. 41; Op. at 7 (recognizing that the parties' "efforts to narrow the issues" proceeded in three phases, each of which addressed different aspects of retrospective relief).  Accordingly, specific aspects of Petitioners' request for *prospective* relief— including public docketing of matters on a moving forward basis—were not prominent in discussions before Court.  Yet in both the Reporters Committee's initial and supplemental briefing to the Court it made clear it was seeking public access to court dockets for all PR/TT, Section 2703(d), and SCA Warrant matters—relief that went beyond that being sought by Petitioner Leopold.  RCFP Pet. Unseal, at 13–15, Dkt. 16-1; RCFP App., ¶¶ 1, 21, Dkt. 18; Pet'rs' Supp. Mem., at 40–42, Dkt. 47.  The USAO in its supplemental briefing did not claim this was a shift in Petitioners' position; to the contrary, the Government recognized that Petitioners sought implementation of procedures for public docketing.  *See, e.g.,* Gov't Resp. to Pet'rs' Supp. Mem. in Support of Their Application to Unseal, at 16 (Oct. 26, 2017), Dkt. 51 (stating that the parties "continued to work on prospective relief, including . . . devising a system of uniform captioning that could be released publicly, similar to the 'EC docket' used by the United States District Court for the Eastern District of Virginia").

administrative burden to the government outweighs the public's common law right of access. The Opinion does not provide the factual findings underlying the Court's common law analysis as to the prospective relief sought by Petitioners.  In its response, the Government reiterates the Court's conclusion that the burden in "providing extracted and docket information relating to *historical* PR/TT and § 2703(d) materials would be 'enormous.'"  Gov't's Resp. at 19 (emphasis added) (quoting Op. at 52), but that argument does not address the purported burden of making changes to unsealing and docketing procedures on a moving-forward basis.  For example, making the same information reflected in the MOU's contemplated biannual disclosures available to the public in real-time would appear to be minimally burdensome, and the USAO provided no evidence to the Court demonstrating otherwise.

It is necessary that the factual findings underlying the Court's ruling as to the common law right of access be clearly set forth, particularly given that the Court's ruling turned on the introduction of administrative burden as a new factor in the common law analysis, *see* Pet'rs' Mot. at 24–25.  As discussed in Petitioners' Motion, the Court's consideration of administrative burden under *Hubbard*, and the dispositive weight given that new factor by the Court, themselves warrant reconsideration of the Opinion.  Pet'rs' Mot. at 23–24.  Particularly here, where Petitioners submitted affidavits establishing that access to the judicial records at issue was of great value to the press and the public, the Court's factual basis for finding that a single competing interest in continued secrecy—administrative burden—is so great as to be dispositive should, at a minimum, be clearly set forth in the Opinion.

## CONCLUSION

For the reasons stated herein and in Petitioners' opening brief, Petitioners urge the Court to reconsider the Opinion.

Respectfully submitted,

_/s/ Katie Townsend_
Katie Townsend
D.C. Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

_Counsel for the Reporters Committee for_
_Freedom of the Press_

Jeffrey Light
D.C. Bar No. 485360
1712 Eye St. NW, Suite 915
Washington, DC 20006
jeffrey@lawofficeofjeffreylight.com

_Counsel for Jason Leopold_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing reply in support of Petitioners' motion for reconsideration was filed with the Clerk of Court using the CM/ECF system, and courtesy copies served on counsel for the following via email:

**Margaret J. Chriss**
United States Attorney's Office
Special Proceedings Section
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7555
Fax: (202) 514-8784
Email: margaret.chriss@usdoj.gov

**Pamela Stever Satterfield**
United States Attorney's Office for the
District of Columbia
Special Proceedings Division
555 4th Street, NW
Washington, DC 20530
(202) 252-7578
Email: pamela.satterfield@usdoj.gov

This the 1st day of June, 2018.

*/s Katie Townsend*
Katie Townsend