**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS. | Misc. Action No. 13-mc-00712<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Following issuance, on September 1, 2020, of the D.C. Circuit's remand mandate, which directed this Court to "determine . . . how and when greater access can be provided" to certain sealed investigative applications and related judicial records, in accordance with guidance set out in *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders* ("*Leopold*"), 964 F.3d 1121, 1135 (D.C. Cir. 2020), the parties were directed to submit jointly their proposals for doing so.  Minute Order (Sept. 1, 2020).  The parties then submitted separate responses, *see* Gov't's Response to Court's September 1, 2020 Minute Order Following Remand from the D.C. Circuit ("Gov't's Resp."), ECF No. 67; Pet'rs' Response to September 1, 2020 Minute Order ("Pet'rs' Resp."), ECF No. 68, which largely focus on what they describe as "prospective relief," that is, on new procedures to enable expeditious unsealing of future applications for warrants issued pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(a), SCA § 2703(d) orders, pen registers and trap and trace ("PR/TT") devices, *see id.* § 3123, and foreign requests for use of these investigative authorities, pursuant to Mutual Legal Assistance Treaties ("MLATs"), *see id.* § 3512(a)(2)(B)–(C), once those matters are closed.  *See* Gov't's Resp. at 5–13.[1]  Thus far, the parties have been "unable to propose a workable solution for historical records."  *Id.* at 13.

---

[1]    Petitioners' request for unsealing did not originally include MLAT requests, but the government has

1

Although repeatedly expressing opposition to "efforts to grant relief that the petitioners did not seek," *id*. at 2; *see also id*. at 3–4 (identifying "concessions or limitations made [by petitioners] during litigation" that should govern the scope of relief on remand); *id.* at 5 ("urg[ing]" that relief be formulated only "in the context of what petitioners have requested in this litigation"); *id.* at 13 (arguing that "[t]he burden of resolving the mandated public disclosure of historical surveillance orders is lessened by the concessions made by the petitioners during appeal, during oral argument, and through discussions with the U.S. Attorney[']s Office"); *id.* at 19–20 ("The Government will seek to satisfy the demands made by petitioner[s] that were preserved on appeal as to the historical records together with concessions they made at oral argument . . . ."), the government simultaneously acknowledges, as it must, that "the [*Leopold*] remand appears to be more expansive than what petitioners requested," *id.* at 3; *see also id.* at 10–12 (suggesting that the logic of the *Leopold* opinion requires historical unsealing of MLAT requests, even though "petitioner's request may not have specifically contemplated access to these records").  Indeed; but the government opted not to seek rehearing or clarification, nor appealed the Circuit panel's decision, meaning that the panel's mandate must be implemented as is.

The parties' separate submissions on implementation are unhelpful in several respects. First, in focusing their responses on "prospective" relief and ignoring, for now, "retrospective" relief, the parties disregard the bulk of the work, post-*Leopold*, confronting the parties and the Court, since "historical" investigative applications are being filed daily and the most recently filed applications are in ongoing, rather than closed, criminal investigations and thus are not even

---

indicated that, going forward, they should be unsealed along with SCA warrants, SCA § 2703(d) orders, and PR/TTs, because "arguably they are among the judicial [records] which the D.C. Circuit decision in *Leopold* intended for eventual public access."  Gov't's Resp. at 10.

currently subject to unsealing. Further, the prospective process outlined inappropriately shifts some tasks from the government to this District's Clerk's Office, including, for example, proposing that the Clerk's Office should shoulder the burden of notifying the government when an unsealing deadline for a sealed investigative application is coming due so that further extensions may be sought, if necessary. Second, in at least two respects, the government's proposal for unsealing historical investigative records is not compliant with the D.C. Circuit's mandate, by suggesting: first, that the panel's *Leopold* decision requires that unredacted records be released; and, second, that disclosure of some historical records will take the form of an "extraction" of information instead of the records themselves. Finally, the parties fail to propose specific operational details or any timeline for conducting the massive task of unsealing historical judicial records at issue. These defects are explained in turn to provide guidance to the parties in preparing their next joint status report proposing a plan for implementation of the *Leopold* mandate in a manner that comports with that mandate.

### 1. *Parties' Proposed "Prospective Relief"*

With respect to "prospective" relief, the parties propose the following. First, the government will standardize its case captions to exclude personally identifiable information. *See* Gov't's Resp. at 5–6, 11. This change to case captions has already been accomplished, however, pursuant to a Memorandum of Understanding entered into by the Clerk's Office and the U.S. Attorney's Office for the District of Columbia ("USAO"), which ensures that standardized case captions for sealed applications contain no personally identifying information, such as the target email account, telephone number, or subscriber name. Instead, standardized case captions reflect some relevant information about the investigative application submitted, including the number of target telephone lines or email accounts, the types of targets, the service provider that is the

recipient of the order, and the statutory violation being investigated.  *See* CLERK'S OFFICE, U.S. DIST. COURT, D.C. & CRIM. DIV., U.S. ATT'Y'S OFFICE, D.C., MEM. OF UNDERSTANDING: ELECTRONIC FILING OF CERTAIN SEALED APPLICATIONS AND ORDERS 2 (Aug. 15, 2017), https://www.dcd.uscourts.gov/sites/dcd/files/MOU_Electronic_Filing_Pen_Registers.pdf; *see also In re Leopold to Unseal Certain Electronic Surveillance Applications & Orders*, 300 F. Supp. 3d 61, 104–05 (D.D.C. 2018).[2]

The only new proposal for case captions is that the standardized caption information already in effect would be supplemented to include an indication that an application contains grand jury material and so must remain sealed.  *See* Gov't's Resp. at 5–6.  This supplemental information will likely be little used, as the government concedes that "[o]rdinarily, the Government makes application for electronic surveillance orders without explicit reference to information obtained by the Grand Jury," *id.* at 5, and "such applications do not always have to rely upon grand jury materials to establish a basis for issuing the requested order," *id.* at 6.  This procedure may very well "ease[] the burden upon the Government when trying to identify electronic surveillance orders applicable to ordinary unsealing."  *Id.* at 6.  The government goes on, however, to suggest, inexplicably, that "[t]his effort will ease the burden on the [C]lerk's [O]ffice," *id.*, evidently contemplating, incorrectly, that the Clerk's Office will play some role in

---

[2]  Petitioners acknowledge that they did not appeal this Court's earlier determination that they had waived their request for real-time public access to docket information in SCA warrant, SCA § 2703(d), and PR/TT matters, *see* Pet'rs' Resp. at 3 n.1, and expressly "do not renew their earlier request to the Court for 'real-time docket information,'" *id.* at 11 (quoting *Leopold*, 964 F.3d at 1126).  Nevertheless, they cite favorably programs in other district courts that make available some limited real-time docket information, *see id.* at 12–13 & n.8, and their proposed order on remand requests that, going forward, case numbers and docket information be made available to the public in real time.  *See id.*, Ex, A, Proposed Order at 2, 5, 7, ECF No. 68-1.  Perhaps this is an oversight, as the proposed order includes a 2016 date, *see id.* at 9, suggesting it has been recycled from much earlier in this litigation, when petitioners were still actively seeking real-time docket information.  For the sake of clarity, however, until the cessation of the biannual reports of docket information, which the parties agree is appropriate in light of the Circuit panel's *Leopold* decision, *see* Pet'rs' Resp. at 11; Gov't's Resp. at 18, petitioners and the public were receiving docket "information . . . far more robust than that seemingly sought by petitioners" in requesting real-time information akin to that available in some other districts, albeit on a six-month delay in order to "reduce[] the risk to an ongoing criminal investigation."  *In re Leopold*, 300 F. Supp. 3d at 106.

determining when a matter is closed, *see id.* ("This notation will aid the Clerk's Office in ready identification of electronic surveillance orders . . . exempted from public disclosure . . . ."); *id.* at 16 (suggesting that "identification of 'closed' cases" will be "made in conjunction with the Clerk's Office and the government, [and] will allow the Clerk's [O]ffice to identify closed cases and thereby[] provide public access to such judicial records"); *id.* at 18 ("The burden will be upon the [C]lerk's [O]ffice to correctly identify closed cases . . . ."). The point must be made amply clear: The Clerk's Office does not bear the burden of deciding which matters require unsealing or to remain sealed, but has only the ministerial task of implementing orders to seal or unseal. The burden rests on the government alone to determine when a matter is closed and may be unsealed, including when a matter contains grand jury material that should remain sealed, and requesting the appropriate order to that effect from the Court.

Second, at the next step of the prospective unsealing process, the government proposes that no later than 180 days (or two years, in an MLAT matter) after an application has been filed, the government will file either a "Notice to Unseal," which will prompt the Clerk's Office to unseal the entire docket, including all the documents filed therein, or a motion requesting that the case remain under seal for another 180 days. *Id.* at 7–8. The original applications and associated proposed orders will contain language reflecting the request and determination that the matter is sealed for only 180 days, subject to extension in 180-day intervals. *Id.* at 8.

The government apparently contemplates that a key trigger for the 180-day filing by the government of either a "Notice to Unseal" or motion for a sealing extension is an advance notification from the Clerk's Office through use of a "DDL" tag available in the federal judiciary's Case Management/Electronic Case Filing ("CM/ECF") system that can be used to identify the expiration of a sealing period in a court order. *Id.* at 7; *see also id.* at 18 (proposing a

5

"periodic review" of 180-day deadlines by the Clerk's Office).  Such notifications cannot be automatically sent to the government; instead, such an advance notice procedure would require the Clerk's Office to run a CM/ECF report, which would then have to be formatted and sent via email to the government.  Tasking the Clerk's Office to provide such regular and routine advance notice, on a daily, weekly or monthly basis, that a 180-day sealing deadline is imminent would undoubtedly be a convenient reminder for individual prosecutors, but this is a burden that rests with the government.  Moreover, it would be duplicative for the Clerk's Office to perform this function even if it could readily do so, as the government notes that it has a calendar system in place that will allow tracking of these deadlines itself.  *See id.* at 8–10.  Accordingly, as the government at times acknowledges in its response, *see, e.g.*, *id.* at 9 ("It will be incumbent upon the U.S. Attorney's Office to track electronic surveillance orders . . . in 180[-]day intervals."), the government is responsible for keeping track of impending 180-day deadlines and filing a motion to unseal or motion for the application to remain under seal for another 180 days, as appropriate.[3]

Moreover, minor operational differences between "prospective" unsealing and "retrospective" unsealing do not warrant treating them entirely separately, as the parties have done by proposing a plan only for the former while, for now, ignoring the latter.  Implementation of a process for unsealing applications for SCA warrants, SCA § 2703(d) orders, PR/TTs, and

---

[3] Of course, *Leopold* made clear that the Court is responsible for ensuring that sealed judicial records in closed matters as unsealed as expeditiously as possible.  *See Leopold*, 964 F.3d at 1143 ("Providing public access to judicial records is the duty and responsibility of the Judicial Branch.").  So, should the Court discover, on its own initiative, that a matter remains sealed past the 180-day deadline of the sealing order, the government will likely be subject to an order to show cause why the documents filed in that matter should not be unsealed, with a full explanation as to why the government failed to fulfill its responsibilities under the sealing order, and ordered promptly to prepare properly redacted documents to ensure that the matter could be unsealed.  Further, should such oversight as to expiring 180-day deadlines become an egregious or widespread problem, the Court would need to take additional steps to ensure that judicial records in closed matters are being timely unsealed.

MLAT requests, once those matters become closed, will generally follow the same process whether characterized as "retrospective" or "prospective." In either case, as explained in more detail below, unsealing will require the government to file redacted versions of any documents containing personally identifiable information filed on a given docket, and then to file a motion to unseal the case docket indicating the matter is closed and identifying, by filed document number, the unredacted versions of the government-redacted documents to remain under seal. Once the motion is filed, the Clerk's Office will unseal the matter, thereby revealing for public access the docket entries with redacted versions of the sealed documents and keeping sealed only the specified unredacted original documents. In other words, that is the outline of the plan for all such judicial records.

        2.      *Misreading of* **Leopold** *Mandate*

Setting aside the major omission in the parties' proposals in largely disregarding the unsealing of historical records, at least three additional flaws are apparent with the parties' skeletal "prospective" plan. The chief problem is that the government evidently contemplates unsealing a docket in its entirety, rather than unsealing only documents that have been appropriately redacted to remove personally identifiable information. This plan is unsatisfactory and contrary to the Circuit's mandate in *Leopold*. As the government notes, ordinarily, "[u]nless there has been a public arrest, the Government does not and should not make public disclosures of ongoing criminal investigations," Gov't's Resp. at 20, and its suggestion that the Circuit panel's *Leopold* decision "ends that practice with regard to electronic surveillance orders," *id.*, is unpersuasive.

Nothing in *Leopold* anticipates, much less *requires*, that the judicial records at issue be unsealed without regard to protecting personally identifiable information therein. To the

7

contrary, this decision suggests that unsealing involves making public appropriately redacted documents, noting, for example, that petitioners "acknowledged that the government and court must be able to redact documents in order to protect privacy and law enforcement interests" and "cannot and do not expect the U.S. Attorney's and Clerk's Offices *to disclose records without redactions* or to drop everything and make unsealing their top priority." *Leopold*, 964 F.3d at 1133 (emphasis added); *see also id.* ("[T]he Clerk's Office cannot simply press 'print' and unseal docket information *that might jeopardize personal privacy* or ongoing investigations." (emphasis added)); *id.* at 1134 n.14 ("Redaction, for example, is a task best undertaken (or at least proposed) by the governmental entity that submitted the surveillance application in the first place.").

Nor do petitioners seek the wholesale release of unredacted documents. *See* Pet'rs' Resp. at 13–14 (observing that, to the extent unsealing of historical judicial records would "implicate the disclosure of personally identifiable information[,] . . . redaction is available"). Finally, other district courts that have begun unsealing investigative records do not appear to have done so by releasing unredacted records. *See* Pet'rs' Resp., Ex. B, Brief of *Amici Curiae* Former United States Magistrate Judges in Support of Petitioners and Reversal at 13–15, ECF No. 68-2 (noting that magistrate judges in other districts responsible for unsealing judicial records like those at issue here have required the government to periodically "review applications and orders to determine whether they could be unsealed and, if so, *with what redactions*," and suggesting that "courts could require that unsealed, redacted versions of [government filings] could be filed contemporaneously with the sealed copies" in order "to minimize downstream redaction costs" (emphasis added)).

8

In support of its position that *Leopold* requires the release of unredacted documents, the government argues that the six-factor test of *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), applies only *after* disclosure "when an aggrieved party litigates for *resealing*," and that, under *Hubbard* and *Leopold*, the government lacks "the authority or the obligation to redact closed electronic surveillance records in advance of disclosure."  Gov't's Resp. at 22 (emphasis added).  This contention, too, is unpersuasive and is founded on a misreading of both *Leopold* and *Hubbard*.  In the instant case, this Court applied *Hubbard* to determine whether then-sealed materials should be unsealed.  *See generally In re Leopold*, 300 F. Supp. 3d 61.  The Circuit panel expressly countenanced the application of *Hubbard* in this context, *see Leopold*, 964 F.3d at 1129 ("The Hubbard factors govern this analysis." (quoting *In re Leopold*, 300 F. Supp. 3d at 92)), namely, to determine in the first instance whether sealed materials should be unsealed, and, tellingly, also noted that "[t]he government does not dispute this conclusion," *id.*  There is thus no basis for the government's sudden about-face in insisting that *Hubbard* applies only to the question of whether records that have already been released in unredacted form should be resealed, redacted, and then re-released.  To be sure, the privacy interests considered in *Hubbard* were advanced by a party who would be aggrieved by the disclosure of the documents at issue in that case, rather than by the government, *see* 650 F.2d at 301–06, but that was due only to the particular procedural posture in that case.  Specifically, the third-party nondefendant objecting to disclosure happened to have knowledge of the documents' contents because the documents were originally in that nondefendant's possession.  *See id.* at 295–96.  That is obviously not the case here, where any individual with a privacy interest potentially implicated by the release of unredacted investigative records has no knowledge that such records even exist, much less that

9

they contain his or her personally identifiable information, and thus is in no position to object to the release of unredacted records.

Further, the parties' suggestion that "unsealing" PR/TTs from 2015 to 2016, and potentially from 2011 to 2015 as well, will take the form of "extractions" of information from sealed records rather than the unsealing of those records themselves, *see* Gov't's Resp. at 15–16, does not comport with the *Leopold* mandate, for the reasons explained in the Court's December 10, 2020 Memorandum Opinion & Order in *In re Application of Jason Leopold and Buzzfeed, Inc. for Access to Certain Sealed Court Records* ("*Leopold/Buzzfeed*"), No. 20-mc-95, ECF No. 7. The same reasoning used by the government with respect to MLATs applies here. Specifically, as to MLATs, the government reasoned, "[a]rguably, the *Leopold* decision contemplated these be included as among the electronic surveillance orders that eventually become 'closed' and thus publicly [disclosable]," and therefore they should be unsealed going forward because if these records are "ignore[d]… now, [they] await future litigation that will eventually force resolution of the issue, presumably relying upon the decision in *Leopold*." Gov't's Resp. at 12. This same reason dictates that all the historical records petitioners seek here be released by unsealing redacted documents, notwithstanding the petitioners' earlier agreement to accept extractions of some historical materials in lieu of actual documents, because a subsequent petitioner could, reasonably relying on the breadth of the language used by the panel in *Leopold*, later request unsealing of documents for which an extraction had already been provided. Indeed, in a telling example, petitioners in *Leopold/Buzzfeed* seek certain sealed investigative records, not extractions from the records. *See* Appl. ¶ 3, *Leopold/Buzzfeed*, No. 20-mc-95, ECF No. 1. This circumstance would effectively require unsealing of the same set of records to be undertaken twice. That possibility poses an unacceptable demand on the

parties' and the Court's resources and, accordingly, historical records must be redacted and unsealed, not "extracted."

Thus, at a minimum, the following additions to the government's "prospective" proposal are necessary. First, in the future, whenever the government files an application for an SCA warrant, SCA § 2703(d) order, PR/TT, or MLAT request for use of these investigative authorities, the government must adopt a method for unsealing while protecting personally identifiable information. That method may take the form, for example, of simultaneously filing both the full application to remain sealed and redacted application to be unsealed at the unsealing deadline, but may still require future redaction of any order issued. Another method may be to put all personally identifiable or sensitive information in an attachment, to which the application and order refer, such that the attachment may remain sealed while the other investigative records are unsealed. This method is already used for investigative applications resting on classified information, which is relayed only in a separate attachment that may be handled appropriately to its classification.

Second, the government's motion to unseal, indicating that a case is closed and signaling to the Clerk's Office to unseal the case, will need to identify each docket entry, *i.e.*, ECF number, containing personally identifiable information that must remain sealed when the matter is unsealed. For example, the unsealing motion may identify the attachment containing personally identifiable information as ECF No. 1-1, which will remain sealed. Then, when the Clerk's Office unseals the docket, all of the documents filed therein except for the attachment containing personally identifiable information will be publicly accessible.

### 3. *The Parties Must Focus on Operational Details and Timeline for Unsealing Judicial Records at Issue*

Finally, the parties have neglected to provide any concrete, specific plan to unseal the daily-growing volume of judicial records at issue, or a timeline for undertaking the massive redaction of these records so that the sealed dockets may be unsealed, making impossible any serious evaluation of the parties' proposals. At a minimum, the government must specifically identify a procedure and timeline for unsealing the following eight categories of judicial records, including the order in which it plans to begin redacting and unsealing them, as well as the number of staff devoted to redacting and unsealing these records as required by *Leopold*:

(1) PR/TT applications filed from 2008 through 2011, for which the government has already received case numbers and some docket information, *see* Order and Notice (Apr. 24, 2017), ECF No. 37;

(2) PR/TT applications filed from 2011 through 2016, for which the government has already received case numbers and docket access, *see* Order (Feb. 22, 2017), ECF No. 33;

(3) PR/TT applications filed from January 1, 2017 through March 31, 2020, for which the government has already received case numbers and some docket information, *see* Order and Notice (Apr. 30, 2018), *Disclosure of Pen Registers from January 1, 2017 Through September 30, 2017*, No. 18-mc-61, ECF No. 1; Standing Order 18-46 (Oct. 2, 2018), Attach. A (PR/TT applications filed by USAO from October 1, 2017 to March 31, 2018); Standing Order 19-15 (Apr. 3, 2019), Attach. A (PR/TT applications filed by USAO from April 1, 2018 to September 30, 2018); Standing Order 19-52 (Nov. 12, 2019), Attach. A (PR/TT applications filed by USAO from October 1, 2018 to March 31, 2019); Standing Order 19-53 (Nov. 12, 2019), Attach.

      D (PR/TT applications filed by the Criminal Division of the Department of Justice ("DOJ") from October 1, 2018 to March 31, 2019); Standing Order 20-21 (Apr. 7, 2020), Attach. D (PR/TT applications filed by USAO from April 1, 2019 to September 30, 2019); Standing Order 20-22 (Apr. 7, 2020), Attach. D (PR/TT applications filed by DOJ from April 1, 2019 to September 30, 2019); Standing Order 20-79 (Oct. 8, 2020), Attach. D (PR/TT applications filed by USAO from October 1, 2019 to March 31, 2020); Standing Order 20-80 (Oct. 8, 2020), Attach. D (PR/TT applications filed by DOJ from October 1, 2019 to March 31, 2020);

(4) SCA § 2703(d) applications filed from 2008 through 2016, for which the government has already received the number of applications filed in each year, but no docket numbers or other case information, *see* Notice (July 7, 2017), ECF No. 43;[4]

(5) SCA warrant applications filed from 2008 through 2016, for which the government has already received the number of applications filed in each year, but no docket numbers or other case information, *see* Notice (July 21, 2017), ECF No. 45;

(6) SCA § 2703(d) applications filed from October 1, 2017 through March 31, 2020, *see* Standing Order 18-46 (Oct. 2, 2018), Attach. B (§ 2703(d) applications filed by USAO from October 1, 2017 to March 31, 2018); Standing Order 19-15 (Apr. 3,

---

[4]     The parties' earlier request for disclosure of a list of case numbers and docket information for this category of cases was denied "due to the myriad challenges, and resultant burden, of compiling such a list," Order and Notice at 2, ECF No. 40, including (1) a "lack of uniform captions or textual form used for these records," which contributed to inconsistent docketing, making it difficult for the Clerk's Office to identify these cases, *id.*; (2) the difficulty in determining which governmental entity filed a given § 2703(d) application, which "require[d] review of the individual . . . docket, which [was] a time-consuming task," *id.;* and (3) determining whether a § 2703(d) order was issued pursuant to a grand jury subpoena, and therefore was protected by Federal Rule of Criminal Procedure 6(e), "require[d] review of individual records," *id.* at 3. Post-*Leopold*, these administrative burdens and challenges are insufficient to deny unsealing of these likely closed investigations. *See* 964 F.3d at 1133–34. Thus, to the extent the Clerk's Office is able to identify docket numbers for SCA § 2703(d) applications filed from 2008 through 2016, these dockets will be made accessible to the government for review and appropriate redaction of documents in preparation for unsealing of the docket. Should USAO find, upon review, that the application was filed by a component of DOJ, USAO will necessarily have to consult with that component as part of the unsealing process.

2019), Attach. B (§ 2703(d) applications filed by USAO from April 1, 2018 to September 30, 2018); Standing Order 19-52 (Nov. 12, 2019), Attach. B (§ 2703(d) applications filed by USAO from October 1, 2018 to March 31, 2019); Standing Order 19-53 (Nov. 12, 2019), Attach. A (§ 2703(d) applications filed by DOJ from October 1, 2018 to March 31, 2019); Standing Order 20-21 (Apr. 7, 2020), Attach. A (§ 2703(d) applications filed by USAO from April 1, 2019 to September 30, 2019); Standing Order 20-22 (Apr. 7, 2020), Attach. A (§ 2703(d) applications filed by DOJ from April 1, 2019 to September 30, 2019); Standing Order 20-79 (Oct. 8, 2020), Attach. A (§ 2703(d) applications filed by USAO from October 1, 2019 to March 31, 2020); Standing Order 20-80 (Oct. 8, 2020), Attach. A (§ 2703(d) applications filed by DOJ from October 1, 2019 to March 31, 2020);

(7) SCA warrant applications filed from October 1, 2017 through March 31, 2020, *see* Standing Order 18-46 (Oct. 2, 2018), Attach. C (SCA warrant applications filed by USAO from October 1, 2017 to March 31, 2018); Standing Order 19-15 (Apr. 3, 2019), Attach. C (SCA warrant applications filed by USAO from April 1, 2018 to September 30, 2018); Standing Order 19-52 (Nov. 12, 2019), Attach. C (SCA warrant applications filed by USAO from October 1, 2018 to March 31, 2019); Standing Order 19-53 (Nov. 12, 2019), Attach. B (SCA warrant applications filed by DOJ from October 1, 2018 to March 31, 2019); Standing Order 20-21 (Apr. 7, 2020), Attach. B (SCA warrant applications filed by USAO from April 1, 2019 to September 30, 2019); Standing Order 20-22 (Apr. 7, 2020), Attach. B (SCA warrant applications filed by DOJ from April 1, 2019 to September 30, 2019); Standing Order 20-79 (Oct. 8, 2020), Attach. B (SCA warrant applications filed by USAO from October 1, 2019

to March 31, 2020); Standing Order 20-80 (Oct. 8, 2020), Attach. B (SCA warrant applications filed by DOJ from October 1, 2019 to March 31, 2020); and

(8) MLAT applications for use of the investigative authorities at issue filed from October 1, 2017 through March 31, 2020, *see* Standing Order (Oct. 16, 2018), Attach. A (MLAT-related applications filed by DOJ from October 1, 2017 to March 31, 2018); Standing Order 19-17 (Apr. 17, 2019), Attach. A (MLAT-related applications filed by DOJ from April 1, 2018 to September 30, 2018); Standing Order 19-53 (Nov. 12, 2019), Attach. C (MLAT-related applications filed by DOJ from October 1, 2018 to March 31, 2019); Standing Order 20-21 (Apr. 7, 2020), Attach. C (MLAT-related applications filed by USAO from April 1, 2019 to September 30, 2019); Standing Order 20-22 (Apr. 7, 2020), Attach. C (MLAT-related applications filed by DOJ from April 1, 2019 to September 30, 2019); Standing Order 20-79 (Oct. 8, 2020), Attach. C (MLAT-related applications filed by USAO from October 1, 2019 to March 31, 2020); Standing Order 20-80 (Oct. 8, 2020), Attach. C (MLAT-related applications filed by DOJ from October 1, 2019 to March 31, 2020).

Accordingly, having identified these deficiencies in the parties' responses and established these guidelines for implementing the *Leopold* mandate, it is hereby

**ORDERED** that the parties jointly submit, by January 29, 2021, a status report that includes a specific proposal for implementing the *Leopold* mandate as to both "prospective" and "retrospective" relief, consistent with this Memorandum Opinion and Order, and addresses the following:

(1) for each of the eight categories of judicial records listed above, an estimate of how long the government requires to perform the necessary redactions of personally identifiable information so that the matters may be unsealed;

(2) whether the government has begun conducting the review, redaction and unsealing in any of the eight categories of judicial records listed above, or, if not, the date that such processing is expected to begin; and, in particular, why the government has not begun such processing for category (2) records, *i.e.*, PR/TT matters filed by USAO from 2011 through 2016, *see* Order (Feb. 22, 2017), ECF No. 33, for which both docket lists and access has already been provided to the USAO by the Clerk's Office;

(3) the sequence in which the parties agree the government should conduct the review, redaction and unsealing of the eight categories of judicial records listed above, and, if no agreement is reached, the government's reasons for the sequence it plans;

(4) the number of staff USAO plans to assign to conduct the review, redaction and unsealing of the judicial records listed above and whether DOJ is assisting in this process; the number of hours per week these assigned employees are expected to devote to the review, redaction and unsealing process; and whether USAO intends to hire additional staff or contractors to carry out this process, in full compliance with *Leopold*;

(5) what assistance the parties expect is necessary from the Clerk's Office to conduct the review, redaction and unsealing of the eight categories of judicial records listed above; and

(6) any other matters that the parties believe should be addressed with respect to unsealing the sealed investigative applications at issue and related judicial records from 2008 to the present.

**SO ORDERED.**

Date: December 17, 2020

_____
BERYL A. HOWELL
Chief Judge