UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS. | Misc. Action No. 13-mc-00712<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

On December 17, 2020, the parties in this long-running litigation were directed to provide a status report answering specific questions about the anticipated timeline and necessary staffing to redact and unseal the judicial records at issue in the instant case and the priority order in which the government would conduct redactions for eight distinct categories of judicial records to implement the D.C. Circuit's mandate in *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders* ("*Leopold*"), 964 F.3d 1121 (D.C. Cir. 2020). *In re Leopold* ("2020 Order"), Misc. Action No. 13-mc-00712, 2020 WL 7481037, at *5–7 (D.D.C. Dec. 17, 2020). The parties were also directed to identify "any other matters that the parties believe should be addressed," *id.* at *7, before the government begins redacting and unsealing these judicial records. The parties have jointly submitted a status report responding to the Court's queries and requesting a determination of what personally identifiable information ("PII") should be redacted from these judicial records, "so that thereafter the Government can proceed with redaction of what categories the Court rules as redactable PII." Joint Status Report, dated January 29, 2021 ("JSR") at 10, ECF No. 70.[1]

---

[1] Although this is the only disputed issue, the parties elsewhere request further action from the Court on two points: (1) petitioners propose that the government be required to periodically file a status report updating the Court on its progress in redacting and unsealing the judicial records at issue, JSR at 7; and (2) the parties "seek leave of the Court to proceed with the review and unsealing of the most recently filed [judicial] records and work backwards" toward 2008, *id.* at 6. The Court agrees that that is an acceptable way to proceed.

1

The parties have differing views of the information to be redacted from the judicial records before public release.  Petitioners, Jason Leopold and Buzzfeed, Inc., propose "that categorical redactions applied by the Government to the judicial records at issue in this case should be limited to [PII] as defined in" a local civil procedural rule of this Court: "Social Security numbers, names of minor children, month and day of birth, and financial account numbers."  *Id.* at 8–9 (citing D.D.C. LCvR 5.4(f)).  Further, petitioners ask "that limited redactions to the underlying materials should be made by the Government only where it has determined, on a case-by-case basis, that such redaction is necessary to protect a legitimate law enforcement or other interest sufficient to overcome the public's right of access, or to shield PII as defined by Local Rule 5.4(f)."  *Id.* at 9.  The government, on the other hand, seeks "to redact the relevant [judicial records] in accordance with the Court's definition of personally identifiable information: 'such as email account, telephone number, or subscriber name,'" as well as information that would reveal "the identity of any particular person under investigation."  *Id.* at 10 (misquoting 2020 Order, 2020 WL 7481037, at *2).  While the government does not clarify this point, the Court views the government's proposed definition of PII to be considered as an addition to, rather than in lieu of, petitioners' proposed definition.

For the reasons explained below, the definition of PII to be used in redacting for public access the originally sealed criminal investigative records at issue here includes both the information proposed by petitioners and the information proposed by the government.  In other words, in the course of unsealing these judicial records, the government should redact: individuals' names, except for the name of a judicial officer who has issued an order; dates of birth; Social Security numbers; financial account numbers; telephone numbers; street addresses; email account addresses; and other information that identifies, directly or indirectly, a target,

witness, informant, investigator, or any other person involved in a criminal investigation, including closed investigations, and regardless of whether the investigation ultimately resulted in criminal charges or a criminal conviction.  Close examination of the text of relevant procedural rules and the policies animating privacy protections in court filings, as well as guidance from the five-decade governmental transparency regime under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, support the broader definition of PII urged by the government.

> A. **Procedural Rules Governing Privacy Protection for Filings Made with the Court**

Petitioners would prefer a narrower definition of PII, limiting redactions from the judicial records to the information set out in this Court's Local Civil Rule 5.4, which requires that "[e]very unsealed document . . . be filed electronically," D.D.C. LCvR 5.4(e)(1), and, in a subsection titled "Privacy Requirements," further requires that Social Security numbers, names of minor children, dates of birth, and financial account numbers "shall be excluded, or redacted where inclusion is necessary, from all electronically filed documents unless otherwise ordered by the Court," D.D.C. LCvR 5.4(f).  In petitioners' view, "[t]he Government should neither be permitted nor required to categorically redact the names of individual adults, including individual adults who have been charged and convicted of a crime, when it unseals these underlying records." JSR at 9.  Their position and proposed definition of PII, however, are insufficiently protective of the privacy and law enforcement interests implicated by the unsealing of the judicial records at issue here, and petitioners' recommendation is therefore rejected.

Petitioners cite to and rely only on Local Civil Rule 5.4(f), a local court rule corresponding to Federal Rule of Civil Procedure 5.2, which similarly requires that the same four categories of information— Social Security numbers, names of minor children, dates of birth, and financial account numbers—not be included "in an electronic or paper filing with the court,"

3

FED. R. CIV. P. 5.2(a), absent a court order otherwise.  Instead, the following abbreviations for such information are required to be used: the last four digits of a Social Security number instead of the entire number, the year of a person's birth rather than the full date of birth, a minor's initials instead of the full name, and the last four digits of a financial account number instead of the whole number, *id*.  The Committee Notes to Rule 5.2 explain that the Rule was adopted to comply with "the privacy and security concerns addressed in the E-Government Act" of 2002, 44 U.S.C. §§ 101 *et seq.*, in recognition of "the privacy concerns resulting from public access to electronic case files," and, in particular, the fact that personal information included in electronic case filings would "be made available over the internet."  FED. R. CIV. P. 5.2, 2007 Committee Notes.[2]

    Like the local and federal procedural rules applicable in civil cases, Federal Rule of Criminal Procedure 49.1 imposes similar restrictions on the inclusion of PII "in an electronic or paper filing with the court" in criminal cases, requiring that Security numbers, taxpayer identification numbers, financial account numbers, dates of birth, names of minor children, and home addresses be excluded from such filings, with abbreviated versions or redactions used instead.  *See* FED. R. CRIM. P. 49.1(a).  The Committee Notes to Rule 49.1 likewise explain that the Rule was adopted to comply with the E-Government Act, motivated in particular by concerns that personal information would be broadly available online as federal courts increasingly transitioned from paper filings to electronic filings.  *See* FED. R. CRIM. P. 49.1, 2007 Committee Notes.  Several exemptions from the redaction requirement for PII are provided, including, as

---

[2]    Federal Rule of Civil Procedure 5.2 and the corresponding Local Civil Rule 5.4(f), by restricting the naming of minor children as parties to use of initials, reflect a privacy-motivated exception to Federal Rule of Civil Procedure 10, which ordinarily dictates that "[t]he title of the complaint must name all the parties."  FED. R. CIV. P. 10(a); *see also* D.D.C. LCvR 11.1 (titled "Names and Addresses of Parties and Attorneys," requiring that "[t]he first filing by or on behalf of a party shall have in the caption the name and full residence address of the party").

pertinent here, for "a court filing that is related to a criminal matter or investigation and that is prepared before the filing of a criminal charge or is not filed as part of any docketed criminal case." FED. R. CRIM. P. 49.1(b)(7).  While such criminal investigative matters are exempt from the redaction requirement, this exemption must be understood in context that the court "may order that a filing be made under seal without redaction," FED. R. CRIM. P. 49.1(d), and that such sealed filings may be later unsealed, including with an order to "the person who made the filing to file a redacted version for the public record," *id*., the precise process occurring here.[3]

Rule 49.1 does not define the full parameters of PII or "personal data identifiers," FED. R. CRIM. P. 49.1, 2007 Committee Notes, that should be redacted in the public file, expressly authorizing, in subdivision (e), the court, "[f]or good cause" to "require redaction of additional information." FED. R. CIV. P. 49.1(e).  As the Committee Notes explain, "the Rule does not affect the protection available under other rules . . . or under other sources of protective authority." FED. R. CRIM. P. 49.1, 2007 Committee Notes.  Thus, "the court can order in a particular case more extensive redaction than otherwise required by the Rule, where necessary to protect against disclosure to nonparties of sensitive or private information.  Nothing in this subdivision [(e)] is intended to affect the limitations on sealing that are otherwise applicable to the court." *Id*.

---

3   The Committee Notes describe the operation of the Rule with respect to certain enumerated documents, which though not expressly addressed in a redaction exemption are not to "be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access," including "sealed documents," stating that, "[t]o the extent that the Rule does not exempt these materials from disclosure, the privacy and law enforcement concerns implicated by the above documents in criminal cases can be accommodated under the rule through the sealing provisions of subdivision (d) or a protective order provision of subdivision (e)." FED. R. CRIM. P. 49.1, 2007 Committee Notes.  The sealed criminal investigative filings of the sort at issue in this case are subject to an express exemption from redaction in Rule 49.1(b)(7), and the process of sealing or unsealing, with redaction, provided in subdivision (d).

Another source of "protective authority" is, of course, Federal Rule of Criminal Procedure 6, which directs that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." FED. R. CRIM. P. 6(e)(6). Although the judicial records at issue are not grand jury materials *per se*, the privacy considerations undergirding Rule 6(e)'s grand jury secrecy directive have applicability here. Rule 6(e) concerns the privacy interests that arise in the context of a criminal investigation and, in this way, is more relevant to the scope of appropriate redactions in the criminal investigative judicial records at issue than the limited categories of redactions generally called for, under Rule 49.1, in public criminal matters. Grand jury secrecy serves a range of crucial functions, including protecting the integrity of the grand jury's investigation, by guarding against "the risk that those about to be indicted would flee" and by frustrating attempts by an outside party, including the target of an investigation, "to influence individual grand jurors to vote against indictment." *United States v. Sells Eng'g*, 463 U.S. 418, 424 (1983) (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 442 U.S. 211, 218–19 (1979)). Moreover, "by preserving the secrecy of the proceedings, [courts] assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Id.* (quoting *Douglas Oil*, 442 U.S. at 219); *see also, e.g.*, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958) (identifying one of the reasons for grand jury secrecy as "protect[ing] innocent accused who is exonerated from disclosure of the fact that he has been under investigation" (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954))); *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019) (summarizing the interests protected by grand jury secrecy as "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation

who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated"). "Grand jury secrecy, then, is 'as important for the protection of the innocent as for the pursuit of the guilty.'" *Sells Eng'g*, 463 U.S. at 424 (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)).

These considerations provide a helpful guide in determining what information must be redacted from the criminal investigative judicial records at issue. Redacting information that could identify the target of an investigation or a witness or other person with information potentially relevant to the investigation—particularly when that target is not ultimately charged with a crime and the investigation ends without public charges—protects such individuals from the opprobrium that could be incurred from the mere fact of having been named as part of a federal criminal investigation. Redacting such information may also serve to protect law enforcement investigative methods, widespread knowledge and awareness of which could compromise their efficacy. Furthermore, although the government will work diligently to determine whether a criminal investigation is closed, and thus whether the judicial records associated with that investigation may be unsealed, in light of the passage of time and personnel turnover within prosecuting offices and law enforcement agencies, redacting any information that could identify the target, witness, cooperator, or other person of interest in an investigation will serve as a backstop against inadvertent disclosure of an ongoing criminal investigation.

> **B.      The Freedom of Information Act Is More Protective of Privacy and Law Enforcement Interests Than Petitioners' Proposed PII Definition**

The exemptions from public disclosure set out in FOIA, *see* 5 U.S.C. § 552(b), also inform the proper scope of redaction of the sealed judicial records at issue and counsel against petitioners' proposed definition of PII. Notwithstanding that the Court is not an "agency" subject to FOIA, *id.* § 552(a), petitioners have conducted the instant litigation with aspects of

7

their proposals seemingly treating the Court as subject to a FOIA-like regime. *See In re Leopold*, Miscellaneous Action No. 20-95 (BAH), 2020 WL 7264050, at *5 (D.D.C. Dec. 10, 2020) (noting this phenomenon). As the Court has already explained, "[t]he Court and its Clerk's Office, unlike an agency subject to FOIA, is not equipped with electronic search tools . . . nor staffed to process and respond to 'case-by-case' requests for unsealing." *Id.* Petitioners' expectation that they would litigate, under the balancing test of *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), the government's redactions to particular unsealed judicial records on a redaction-by-redaction, case-by-case basis, *see* JSR at 8, requiring judicial search and collection of requested records, along with resolution of disputed redactions of law enforcement investigative records, *see generally* Appl. ¶ 3, ECF No. 1, *Application of Jason Leopold and Buzzfeed, Inc. for Access to Certain Sealed Court Records*, No. 20-mc-95-BAH (seeking unsealing of criminal investigative applications filed by the Drug Enforcement Agency during a two-week period in May and June, 2020), are exemplars of this mindset.

Petitioners have overreached in proposing a definition of PII that would result in public disclosure of broad swaths of information that would be plainly exempt from disclosure if requested from federal agencies under FOIA. To put this bluntly, the Court does not construe the D.C. Circuit's mandate in *Leopold* as directing the development of a federal common law of FOIA-like exemptions for sealed criminal investigative judicial records, to be assessed on a document-by-document basis, nor as requiring public access to sealed law enforcement information that Congress has declined to require an agency to disclose under FOIA. For example, FOIA exempts from disclosure "records or information complied for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C.

§ 552(b)(7)(A), "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C), or "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," *id.* § 552(b)(7)(E).  The rationales undergirding each of these three exemptions have applicability here and, by analogy, corroborate the conclusion that the broader definition of PII now adopted is both appropriate and warranted.

Exemptions 7(A) and 7(E) are directed at protecting law enforcement investigations. Exemption 7(A), which permits an agency to withhold information that "could reasonably be expected to interfere with . . . enforcement proceedings that are . . . pending or reasonably anticipated," *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014), is motivated by "Congress's concern that inadvertent disclosure of criminal investigations, information sources, or enforcement techniques might cause serious harm to the legitimate interests of law enforcement agencies," *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982).  As explained, although there are safeguards in place to ensure that unsealing the judicial records at issue does not begin until the investigation that generated those records is closed, redacting information that could identify an individual ensures that unsealing does not inadvertently reveal an ongoing investigation, which would clearly be frustrated by its premature disclosure and substantially harm the government's law enforcement efforts, *see Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003) (holding that government records identifying names of individuals detained during the investigation of the September 11, 2011 attacks "'could reveal much about the focus and scope of the [agency's]

investigation, and are thus precisely the sort of information exemption 7(A) allows an agency to keep secret" (alteration in original) (quoting *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996))).

Exemption 7(E) is directed at protecting not only ongoing investigations but also law enforcement techniques and procedures whose disclosure could compromise both pending and future investigations. The exemption insulates from disclosure law enforcement records whose publication "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As mentioned, over-disclosure of the judicial records at issue could potentially reveal the government's techniques for conducting electronic surveillance pursuant to the authorities provided under the Stored Communication Act ("SCA"), *see* 18 U.S.C. §§ 2703(a), (d), and the Pen Register Act, *see id.* § 3123, and for integrating such surveillance with other investigative strategies and procedures, which might in turn undermine the efficacy of those investigative tools in the future. *See Morley v. CIA*, 508 F.3d 1108, 1128–29 (D.C. Cir. 2007) (holding that Exemption 7(E) applied to documents that "could 'provide insight' into the [CIA's] security clearance procedure").

Although the information that would be revealed from these judicial records if they were redacted pursuant to petitioners' definition of PII might seem insignificant when considered in isolation, in the aggregate, significant patterns and insights into law enforcement investigative techniques might be divined, *see CIA v. Sims*, 471 U.S. 159, 178 (1985) ("[B]its and pieces of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." (quoting *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980))); *see also, e.g.*, *Halperin*, 629 F.2d at 150 (denying request for disclosure of CIA legal fees

10

because such disclosure "could reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods . . . because trained foreign personnel could gain useful insights from such information"). That is particularly true here, given that the judicial records at issue comprise *every* application for SCA warrants, SCA orders, and pen register and trap and trace devices ("PR/TTs") submitted by the government in this District over more than ten years. *See Sims*, 471 U.S. at 178 ("[W]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978))).

FOIA's Exemption 7 not only protects law enforcement interests, but also, in Exemption 7(C), protects the "cognizable privacy interest" that "investigators, witnesses, informants, and suspects" all have in their "private information" that may be included in agency records. *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (citing *Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)). "Moreover, . . . private citizens—such as witnesses, informants, and suspects—have particularly strong privacy interests." *Id.* at 580–81 (citing *Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007)); *see also Martin*, 488 F.3d at 457 ("'[T]hird parties who may be mentioned in investigatory files' and 'witnesses and informants who provide information during the course of an investigation' have an 'obvious' and 'substantial' privacy interest in their information." (alteration in original) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995))). Indeed, the D.C. Circuit has "h[e]ld categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). In other words, the "disclosure of

records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." *U.S. Dep't of Justice v. Reporters' Comm. For Freedom of the Press*, 489 U.S. 749, 765 (1989). These considerations weigh strongly against petitioners' proposed definition of PII, which would reveal not only names but also phone numbers, email addresses, street addresses, and dates of birth, all information that would be unobtainable under FOIA.

That the information potentially revealed by adoption of petitioners' definition of PII, including that certain individuals were targets of or actual or potential witnesses, informants, or investigators in a criminal investigation, may never before have been public increases the strength of the privacy interest counselling against disclosure. *See Reporters' Comm.*, 489 U.S. at 762–63 ("reject[ing] respondents' cramped notion of personal privacy" under which an individual has virtually no FOIA Exemption 7(C) privacy interest in the nondisclosure of his "rap sheet," even though "events summarized in a rap sheet have been previously disclosed to the public"); *see also Martin*, 488 F.3d at 457 (observing that "[i]n *Reporters Committee*, the Court ruled that a person's privacy interest in law enforcement records that name him is not diminished by the fact that the events they describe were once a matter of public record"). Merely because some information in the sealed criminal investigative judicial records may be revealed in public proceedings, including trials, for individuals who are ultimately publicly charged with a crime, it does not follow that such public disclosure must occur at any other time or in the course of implementation of the *Leopold* mandate.

Furthermore, that the investigations for which these judicial records were generated are now closed, and that some of those investigations were conducted more than ten years ago, does not diminish the strength of the privacy interests at stake. To the contrary, the D.C. Circuit has noted, in the grand jury context, that a person's "privacy interests can persist even after [that]

person's death." *McKeever*, 920 F.3d at 849 (citing *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1009–10 (D.C. Cir. 1990)); *see also Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 168–70 (2004) (recognizing decedent's family's privacy interest under exemption 7(C) in certain information about decedent).

In sum, then, the privacy and law enforcement concerns animating three FOIA exemptions carefully crafted by the Congress independently indicate that petitioners' proposed definition of PII would result in disclosure of far more information than obtainable from agencies under FOIA and would undermine the balancing of interests set out in that statutory regime. Though generally serving as a transparency law shedding light on the operations of federal agencies, FOIA also operates as a "protective authority," FED. R. CRIM. P. 49.1, 2007 Committee Notes, and therefore provides useful guidance about what information "[t]he court may later unseal" in a court filing and what information must be redacted in a "version for the public record," FED. R. CRIM. P. 49.1(d).

C. **Other Factors Favoring a Broad Definition of PII**

This statutory analysis accords with both the D.C. Circuit's mandate and with the parties' expectations during the multiple years of this litigation. The D.C. Circuit cautioned that redacting and unsealing must be conducted in a manner that avoids "unseal[ing] docket information that might jeopardize personal privacy or ongoing investigations." *Leopold*, 964 F.3d at 1133. Petitioners' narrow proposed definition of PII is only minimally sensitive to the privacy interests that the Circuit has directed must inform redaction, effectively limiting privacy protection to nondisclosure of names of minor children, and others individuals' Social Security numbers, dates of birth, and bank account numbers, and pays no heed at all to law enforcement interests that, as explained, counsel a broader conception of PII.

Furthermore, notably, petitioners have never previously sought or received the personal information they now attempt to obtain from the criminal investigative judicial records at issue. Neither the "extractions" of certain information from the sealed judicial records proposed at earlier stages of this litigation nor the now-discontinued biannual docket information reports included information that could identify the target of, or witness or other person of interest in, a criminal investigation. *See In re Leopold to Unseal Certain Electronic Surveillance Applications & Ords.* ("*In re Leopold/Buzzfeed*"), 300 F. Supp. 3d 61, 78 (D.D.C. 2018) (describing parties' agreement to extract from judicial records fifteen categories of information, none of which could identify, directly or indirectly, the target of, or witness or other person of interest in, a criminal investigation); *id.* at 106 (describing information contained in biannual docket reports produced by Clerk's Office, none of which could identify, directly or indirectly, the target of, or witness or other person of interest in, a criminal investigation); *see also* CLERK'S OFFICE, U.S. DIST. COURT, D.C. & CRIM. DIV., U.S. ATT'Y'S OFFICE, D.C., MEM. OF UNDERSTANDING: ELECTRONIC FILING OF CERTAIN SEALED APPLICATIONS & ORDERS 2–3 (Aug. 15, 2017).[4] Additionally, at oral argument before the D.C. Circuit, petitioners "acknowledged that the government and court must be able to redact documents in order to protect privacy and law enforcement interests." *Leopold*,

---

[4] Previously, petitioners also sought "real-time unsealing and public posting on PACER, upon initial filing of sealed PR/TT, § 2703(d), and SCA warrant materials, of each matter's 'case number and certain associated docket information,' including 'case name, date of application, and magistrate judge to whom the matter is assigned.'" *In re Leopold/Buzzfeed*, 300 F. Supp. 3d at 105 (quoting Pet'rs' Suppl. Mem. Supp. Pet. at 33, 39, 41, ECF No. 47). This request was denied on the grounds that it "represent[ed] a significant shift in the petitioners' position," given that "[o]ver the course of this five-year litigation, the petitioners have insisted that they do not seek access to pending, open and active criminal investigations, which this real-time reporting would necessarily provide." *Id.* Petitioners did not appeal that ruling to the D.C. Circuit, instead "acknowledg[ing] that they forfeited their request for real-time docket information," *Leopold*, 964 F.3d at 1126, and following remand from the D.C. Circuit to this Court likewise acknowledged that they "do not renew their earlier request to the Court for 'real-time docket information,'" Pet'rs' Resp. to Sept. 1, 2020 Minute Order at 11, ECF No. 68 (quoting *Leopold*, 964 F.3d at 1126); *see also* 2020 Order, 2020 WL 7481037, at *2 n.2.

964 F.3d at 1133. As explained, petitioners' proposed definition of PII is woefully inadequate for this purpose.

### D. ORDER

Accordingly, it is hereby

**ORDERED** that the government shall begin redacting and unsealing the eight categories of judicial records identified in the 2020 Order, 2020 WL 7481037, at *5–6, by starting with applications filed in 2020 for SCA warrants, SCA § 2703(d) orders, PR/TTs, and foreign requests for use of these investigative authorities pursuant to Mutual Legal Assistance Treaties, *see* 18 U.S.C. § 3512(a)(2)(B)–(C); and then proceeding in reverse chronological order through 2008, not proceeding to 2019 applications until all 2020 applications are unsealed, not proceeding to 2018 applications until all 2019 applications are unsealed, and so on; and it is further

**ORDERED** that the government redact the following information from the eight categories of judicial records to be unsealed, *see* 2020 Order, 2020 WL 7481037, at *5–6:

(1) individuals' names, except for the name of a judicial officer who has issued an order;

(2) dates of birth;

(3) Social Security numbers;

(4) financial account numbers;

(5) telephone numbers;

(6) street addresses;

(7) email account addresses;

(8) and any other information that directly or indirectly identifies the target of, or witness, investigator, informant, or other person of interest in, a criminal

investigation, and regardless of whether the investigation ultimately resulted in criminal charges or a criminal conviction; and it is further

**ORDERED** that the government submit a status report by April 12, 2021, and every 60 days thereafter, informing the Court of its progress in unsealing the judicial records at issue.

**SO ORDERED.**

Date: February 9, 2021

_____
BERYL A. HOWELL
Chief Judge