UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF JASON LEOPOLD TO UNSEAL CERTAIN ELECTRONIC SURVEILLANCE APPLICATIONS AND ORDERS. | Misc. Action No. 13-mc-00712<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM AND ORDER**

With this case pending for almost nine years to grapple with the legal and logistical issues posed by the unsealing of thousands of historical government investigative applications and related materials that have been sealed for decades, petitioners now seek to modify Standing Order 22-05, *see* Pet'rs' Motion to Modify ("Pet'rs' Mot."), ECF No. 79, issued on January 25, 2022, to "establish[] uniform procedures for the public docketing of unsealed, redacted applications for warrants and orders filed by the U.S. Attorney's Office for the District of Columbia and components of the U.S. Department of Justice, pursuant to the Stored Communications Act ('SCA'), the Pen Register Act ('PRA'), and such SCA and PRA records prompted by the request of foreign governments under Mutual Legal Assistance Treaties and agreements ('MLATs'), and related materials, to comply with the directives of this Court and the D.C. Circuit," Standing Order 22-05 ("SO 22-05") at 1, *In re Process for Public Docketing of Unsealed, Redacted Government Investigative Applications and Related Orders and Material* (Jan. 25, 2022) (citations and abbreviations omitted). Specifically, petitioners suggest modifications to the docketing mechanism set forth in SO 22-05. Petitioners' proposals reflect design choices with some benefits, but after consideration, are rejected because the flaws associated with these suggestions confirm the superiority of the methodology already adopted.

1

I.      DISCUSSION

Briefly, SO 22-05 provides that each covered application (and related materials) will, upon unsealing, be filed into one of three "master dockets" to be created for each calendar year beginning in 2022, labeled in the format "22-sc-9999" for SCA matters, "22-pr-9999" for PRA matters, and "22-ml-9999" for MLAT matters. SO 22-05 ¶¶ II.2–3. These dockets are to be organized according to the year of unsealing, not the year the application was docketed. *See id.* ¶ II.1. Petitioners propose three modifications to SO 22-05 to "better facilitate public access to" the records at issue "without increasing the burden of compliance." Pet'rs' Mot. at 6. These three proposals are addressed *seriatim*.

A.      **Petitioners' Proposed Modification to Post List on Court's Website**

Petitioners "propose that a list of the entries on each master docket be made available on the Court's website." Pet'rs' Mot. at 8. In other words, petitioners ask that the thousands of unsealed, redacted government surveillance applications not only be made publicly accessible in the master dockets, but also that a list be prepared of these filings and posted on the Court's website. This proposal, according to petitioners, is based on a concern of users incurring "significant PACER fees" because the docket reports for the master dockets established by SO 22-05 "will almost certainly be much larger than the docket of a typical case," *id.* Whatever the size of the master dockets, petitioners' concern regarding PACER fees is unfounded because of the way such fees are calculated and assessed.

The information necessary to track utilization numbers over time for the types of applications at issue here is available through the "docket reports" for the annual master dockets. A "docket report" on PACER lists every filing made on a given docket, with titles. As SO 22-05 makes clear, the naming convention for each docket entry includes the underlying sealed case

2

docket number in the title of each document.  SO 22-05 at 9; Gov't's Resp. Pet'rs' Mot. Modify SO 22-05 ("Gov't's Resp.") at 2, ECF No. 80.  That naming convention for each underlying sealed case contains—and thereby identifies—the year that an application was originally docketed.  Thus, the "docket report" for, say, 22-sc-9999 is alone sufficient to allow tabulation of utilization data over time.

To be sure, PACER fees to retrieve a document scale with the length of the document at issue, so the size of the annual master dockets directed by SO 22-05 is a relevant consideration.  Critically, however, the current PACER fee schedule sets a ceiling of $3.00 ("$0.10 per page, not to exceed the fee for thirty pages") for "electronic access to any case document, *docket sheet*, or case-specific report."  *Electronic Public Access Fee Schedule* ("PACER Fee Schedule") ¶ 1, U.S. COURTS (Dec. 31, 2019), https://www.uscourts.gov/services-forms/fees/electronic-public-access-fee-schedule (emphasis added).  Notably, "[n]o fee is owed for electronic access to . . . PACER until an account holder accrues charges of more than $30.00 in a quarterly billing cycle."  *Id.* ¶ 8.  As a result, an interested member of the public (who does not otherwise use PACER) could download on a monthly basis all three docket reports for the current year totally *free of charge*, and by so doing keep up to date with the *entire* data set concerning the frequency of usage of these applications.[1]  As such, PACER fees provide no substantial barrier, if any, to public accessibility and transparency in this instance.[2]

---

[1] The three master docket sheets, each downloaded thrice over the course of a quarter (*i.e.*, monthly), can be monitored with only nine downloads per quarter.  At a rate of $3 per download, the total cost—$27 quarterly—falls below the threshold at which PACER fees are waived altogether.  This fortuitous result is, admittedly, coincidental, but the transparency benefit is real.

[2] Additionally, various types of persons, such as academicians conducting research, may apply for temporary exemptions from PACER fees, *see* PACER Fee Schedule ¶ 9, which exemptions this Court regularly grants.  *See, e.g.*, Order, *In re Request for Exemption from Elec. Pub. Access Fees*, No. 22-mc-3 (D.D.C. Jan. 21, 2022), ECF No. 2; Order, *In re Request for Exemption from Elec. Pub. Access Fees*, No. 21-mc-163 (D.D.C. Dec. 22, 2021), ECF

The existence of PACER fees also does not demand that a duplicative parallel report be posted on the Court's website, with all of the attendant challenges that would be created by the need to keep such report up to date. Nothing about *this* set of judicial records demands special treatment relative to the mine run of judicial records from workaday litigation. While a robust policy and legal debate may be had over PACER fees generally, this is not the right forum, given pending class action litigation regarding PACER fees. *See generally Nat'l Veterans Legal Servs. Prog. v. United States*, 968 F.3d 1340 (Fed. Cir. 2020); *Nat'l Veterans Legal Servs. Prog. v. United States*, No. 16-cv-745 (PLF), 2021 WL 5332029 (D.D.C. Nov. 16, 2021), *appeal filed*, No. 21-5291 (D.C. Cir. docketed Dec. 21, 2021).[3]

Somewhat ironically, petitioners' proposal appears to be seeking the public posting on the Court's website of docket entries akin to those that this Court undertook to produce and post on the Court's website for over 2 years, beginning in 2018, *see Standing Orders Regarding Unsealing of Limited Docket Information for Sealed Applications*, U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, https://www.dcd.uscourts.gov/news/standing-orders-regarding-unsealing-limited-docket-information-sealed-applications (last visited Mar. 21, 2022), until the D.C. Circuit criticized such postings as inadequate and made this burdensome process obsolete, *see In re Leopold*, 964 F.3d 1121, 1123 (D.C. Cir. 2020). On remand from the Circuit, the parties, including petitioners, advised the Court that such postings should cease, with petitioners expressing the view that "the continued generation of semiannual reports listing certain docket information . . . will be unnecessary, and [the reports] may be discontinued in lieu of public

---

No. 2; *see also* D.D.C. LOCAL CIV. R. 40.7(g) ("The Chief Judge shall consider requests for exemptions by academicians, researchers and other non-litigants from the user access fees for the [PACER] service.").

[3] Moreover, bipartisan proposed legislation regarding PACER fees is under consideration in the Congress. *See* S. 2614, 117th Cong. (as reported by S. Comm on the Judiciary, Mar. 15, 2022).

access to docket sheets themselves." Pet'rs' Resp. Sept. 1, 2020 Min. Order at 11, ECF No. 68; *accord* Gov't's Resp. Court's Sept. 1, 2020 Min. Order Following Remand from the D.C. Circuit at 18, ECF No. 67. Now that SO 22-05 has provided a mechanism to deliver public access to the relevant docket contents upon their unsealing, nothing about that implementation warrants reinstatement of what the petitioners have described as an "unnecessary" posting similar to that which prompted petitioners' successful appeal and ultimate rejection of that process.

### B. Proposed Reorganization of Master Dockets

Related to the first proposed modification, petitioners propose that instead of creating annual master dockets starting in 2022, corresponding to the year of unsealing, master dockets should be created back to 2008 and records filed "on the master docket corresponding to the year in which [the] sealed docket was created." Pet'rs' Mot. at 6–7. Such reorganization, petitioners posit, "will make it easier for members of the public both to locate unsealed records from particular matters filed in particular years and to understand how, in general, the Government's use of electronic surveillance authorities has evolved over time." *Id.* at 7.[4] The government counters that by "us[ing] master dockets tied to the year of unsealing, rather than having to log into master dockets for each year dating back to 2008 to ascertain whether specific dockets have been unsealed, the public will be able to assess whether the relevant docket number has been unsealed by accessing a single master docket." Gov't's Resp. at 2.

Both parties are correct. Whether to organize dockets by the year of unsealing versus by the year of application is a design choice, and both methods have advantages and disadvantages.

---

[4] Again, ironically, the discontinued docket list postings by year of filing on the Court's website, discussed in Part I.A, *supra*, had the feature of allowing ready analysis of "the Government's use of electronic surveillance authorities . . . over time."

On balance, the currently ordered method of organizing by year of unsealing is marginally superior for several inter-related reasons.

First, the naming convention for each docket entry includes the underlying sealed case docket number in the title of each document. SO 22-05 at 9; Gov't's Resp. at 2. Since the latter docket number itself identifies the year in which a sealed application was docketed, the docket sheet for each master docket is, alone, sufficient to allow tabulation by year of application, should the user so choose. Given that the process of posting over a decade of historical records will, presumably, take far less than a decade to complete, organizing by year of unsealing will make this information available to the public in a much smaller number of dockets, simplifying access—and reducing cost—by requiring users to access far fewer docket sheets.

Second, organizing by year of unsealing allows users to know with certainty when a particular master docket is "closed," namely, at the end of each calendar year, whereas organizing by year of application would cause all of the master dockets to remain perpetually "open" and potentially growing while the government makes steady progress in review, redaction and unsealing the investigative records at issue. At the end of each year, a user no longer needs to reload that year's docket sheet again and again. Indeed, to stay "current" with the entire data set, a user wishing to analyze data and monitor unsealing progress need only periodically refresh the *current* year's three master dockets as opposed to dozens. Indeed, petitioners' concern regarding PACER fees, *see supra* Part I.A, strongly militates in favor of retaining SO 22-05's organization of the master dockets by year of unsealing, since the alternative of organizing by year of application would require a user to load far more docket sheets than is otherwise necessary, negating the benefit of the $3-per-docket-sheet maximum charge already discussed.

C.      **Petitioners' Proposal Regarding Applications Invoking Multiple Statutes**

Petitioners initially expressed a concern that because pre-2018 dockets for the applications at issue were differently categorized on the Court's Case Management/Electronic Case Filing system ("CM/ECF")—*i.e.*, designated as "mc" or "mj" matters, as opposed to the current, more specific trifecta of "sc," "pr," or "ml"—when docketing unsealed materials from an older application docket, the government "will be required to make a judgment call" as to which current category applies.  Pet'rs' Mot. at 7.  Petitioners therefore proposed creating "mc" and "mj" master dockets to accommodate those older records.  *Id.* at 8.  This proposal was withdrawn, however, based on the government's representation that any ambiguity is removed by the applications' identification of which statutory authority is invoked.  *See* Gov't's Resp. at 3; Pet'rs' Reply Supp. Mot. Modify SO 22-05 ("Pet'rs' Reply") at 1–2, ECF No. 81.  Indeed, petitioners' withdrawn modification would have *reduced* transparency relative to SO 22-05.  By recategorizing "old" applications and dockets into the "sc," "pr," and "ml" buckets, the government is implicitly furnishing information about former "mc" and "mj" cases that would otherwise only have been available by accessing the unsealed documents themselves, as opposed to simply viewing the master docket sheet.

Petitioners identified a valid question, however, as to how the government intends to recategorize pre-2018 applications into the current three categories in the case of applications involving "multiple statutory bases."  Pet'rs' Reply at 2.  To that end, the Court directed the government to file a limited sur-reply discussing this potential ambiguity, *see* Min. Order (Mar. 14, 2022), which sur-reply was filed on March 16, 2022, *see* Gov't's Sur-Reply to Pet'rs' Reply Supp. Mot. Modify SO 22-05, ECF No. 83.  The government represented that: (1) if an application involves an MLAT, that application will be filed under the "ml" docket regardless of

the "type of application at issue being requested by the foreign government," *id.* at 1; and (2) in the rare event of applications that are based on both the SCA and the PRA, "the SCA categorization takes precedence over the PRA designation," *id.* at 1–2, and therefore "will be categorized under the sc docket," *id.* at 2. These rules should, together, remove all possible ambiguity in the categorization, fully addressing petitioners' concern.

## II.     ORDER

Accordingly, it is hereby

**ORDERED** that Petitioners' Motion to Modify Standing Order 22-05, ECF No. 79, is **DENIED**.

**SO ORDERED.**

Date: March 22, 2022

_____
BERYL A. HOWELL
Chief Judge